# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

HASELECT MEDICAL RECEIVABLES
LITIGATION FINANCE FUND
INTERNATIONAL S.P.,
and GRIFFIN ASSET MANAGEMENT, LLC,

      Plaintiffs,

v.

SIMON HENRY CLARK, an Individual,

      Defendant.

Case No. _____

## VERIFIED COMPLAINT

NOW COME Plaintiffs HASelect Medical Receivables Litigation Finance Fund International, SP ("HASelect"), and Griffin Asset Management, LLC ("GAM"), by their undersigned counsel, and for their complaint against Defendant Simon Henry Clark, respectfully state as follows:

### NATURE OF THE CASE

1. This case concerns Defendant Clark's breaches of fiduciary duty and fraud practiced upon Plaintiffs in connection with Defendant's management of HASelect on behalf of GAM.

2. Generally, at all relevant times, GAM served as investment manager for HASelect.

3. Generally, at all relevant times, HASelect engaged in a financing business through which it made loans to entities that purchase accounts receivable from medical providers at a discount and hold such accounts receivable for collection.

4. These accounts receivable generally arose from medical treatment provided to individuals who were injured in accidents and had asserted personal injury claims. These accounts receivable are generally secured by liens against these personal injury claims and are typically paid out at the time the personal injury claims settle.

5. HASelect's borrowers benefitted the medical providers and others from whom it purchased these accounts receivable by providing them current cash flow while the borrowers would hold the accounts receivable for the longer time period until they were ultimately paid.

6. As collateral for such loans, HASelect obtained perfected, first-priority security interests in substantially all of its borrowers' assets, including all accounts receivable purchased by such borrowers.

7. At all relevant times, HASelect required, as a condition of advancing loan funds, that its borrowers accurately report the cost and value of all accounts receivable purchased.

8. At all relevant times, it was critical to HASelect's business that the cost and value of the accounts receivable purchased by its borrowers was accurately reported to HASelect to ensure that HASelect's loans remained properly collateralized.

9. At all relevant times, it was critical to HASelect's business that it received a legally perfected, first-priority security interest in each of the accounts receivable that its borrowers purchased.

10. From 2017 through February 20, 2020, Defendant was employed by Plaintiff GAM (the "Employment Period"). In this role, one of Defendant's key duties was to manage the lending and other business operations of Plaintiff HASelect. In this capacity, Defendant was HASelect's primary point of contact with its borrowers.

11. During the Employment Period, Defendant owed fiduciary duties to both GAM and HASelect.

12. In or around August 2019, a former GAM employee, Chadwick Meyer, and others including Defendant Clark, established Tecumseh Alternatives, LLC ("Tecumseh"), which was modeled after and designed to compete directly with GAM and HASelect in the same medical receivables financing business then engaged in by HASelect.

13. As a direct or proximate result of Defendant's breaches of his fiduciary duties, HASelect was misled regarding the cost and value of accounts receivable purchased by its borrowers.

14. As a direct or proximate result of Defendant's breaches of his fiduciary duties, loan funds advanced by HASelect to its borrowers, which should have been used to purchase accounts receivable, were used for other improper purposes that impaired the collateral base for HASelect's loans.

15. At all relevant times, Defendant Clark has attempted to and did effectively conceal his misconduct from Plaintiffs.

16. None of Defendant Clark's wrongdoings were known to GAM or others until after Clark left their employment.

**PARTIES**

17. Plaintiff HASelect Medical Receivables Litigation Finance Fund International, SP, is a Cayman Islands corporation with its principal place of business in LaGrange, Illinois.

18. Plaintiff Griffin Asset Management, LLC, is an Illinois Limited Liability Company with its principal place of business in LaGrange, Illinois.

19. GAM has four members, three of whom are citizens of Illinois and one of whom is a citizen of Iowa.

20. Defendant Simon Clark is an individual who, on information and belief, resides in Charlotte, North Carolina.

### JURISDICTION AND VENUE

21. This Court has diversity jurisdiction under 28 U.S.C., § 1332(a)(2) and (c)(1) because (i) Plaintiff HASelect is a both a subject of a foreign state (the Cayman Islands) where it is incorporated and a citizen of Illinois, where it maintains its principle place of business, (ii) Plaintiff GAM is a citizen of Illinois where it maintains its principle place of business, (iii) Plaintiff GAM has no member who is a citizen of North Carolina, (iv) Defendant Clark is a citizen of North Carolina and (v) the amount in controversy exceeds $75,000.

22. Venue is proper in this district under 28 U.S.C., § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here by reason, *inter alia*, of Clark engaging in portions of the wrongful conduct alleged herein within this district.

### MATERIAL FACTS

### I. INFINITY CAPITAL MANAGEMENT, INC.

23. Beginning in or about February 2019, HASelect began loaning funds to Infinity Capital Management, Inc. ("Infinity").

24. Beginning in or about February 2019, HASelect entered into a Sub-Advisory Agreement ("SAA") with FTM Investments, LLC ("FTM") who would serve as a sub-advisor to HASelect and to assist HASelect with its business relationship with Infinity.

25. FTM represented that it will act in a professional manner and in the best interest of GAM and HASelect.

4

26. Operating under a Master Loan Agreement ("MLA"), HASelect advanced funds to Infinity which Infinity agreed to use to purchase medical accounts receivable.

27. HASelect would hold a perfected security interest in all of the accounts receivable purchased by Infinity for its benefit.

28. Under the MLA, Infinity was obligated to comply with certain covenants, including but not limited to:

    a. Using funds advanced exclusively for the purchase of accounts receivable; and

    b. Representing that the value of the accounts receivable purchased was at least 200 percent of purchase cost.

29. Defendant Clark was directly responsible for HASelect's due diligence regarding Infinity prior to entering into the MLA and was personally involved in the negotiation of the terms of the MLA with Infinity.

30. Defendant Clark was directly responsible for HASelect's due diligence regarding FTM prior to entering into the SAA and was personally involved in negotiation of the terms of the SAA with FTM.

31. From February 2019 through April 2020, HASelect advanced approximately $13.7 million to Infinity.

32. In June of 2020, FTM resigned as HASelect's sub-advisor.

33. In May of 2021, Infinity began exhibiting a pattern of willful noncompliance with its reporting requirements under the MLA.

34. Ultimately, HASelect placed Infinity in default under the MLA and initiated legal proceedings in the Northern District of Illinois.

35. On September 14, 2021, Infinity filed Chapter 7 bankruptcy in the Bankruptcy Court for the District of Nevada.

36. In its bankruptcy schedules, Infinity identified the value of the outstanding accounts receivable purchased with monies borrowed from HASelect as only $5.7 million.

37. At the time of its bankruptcy filing, Infinity had received and still owed in excess of $13 million in principal under the MLA.

38. Following Infinity's bankruptcy filing, HASelect learned that, instead of using loan funds received from HASelect to purchase accounts receivable, Infinity's principals, Anne Pantelas and Oliver Hemmers, diverted loan funds for their own personal use and benefit.

39. These diverted funds were used by Infinity to fund shareholder loans to Hemmers and Pantelas, to pay bonuses to Hemmers and Pantelas, to pay personal expenses of Hemmers and Pantelas, as well as to pay debts owed by Infinity to third parties, including Coastal Investments, PLC ("Coastal"), an offshore entity organized by Hemmers and Pantelas in the Cook Islands.

40. On information and belief, FTM, Hemmers and Pantelas also caused Infinity to intentionally misrepresent and overstate the cost and value of accounts receivable purchased by Infinity with funds advanced by HASelect under the MLA.

41. On information and belief, Infinity and FTM wrongfully diverted in excess of $3 million in loan proceeds received under the MLA for improper purposes, including payments to Pantelas, Hemmers, Coastal, and other parties.

42. For example, in or around December 2019, Infinity, with assistance from FTM, requested that HASelect advance funds in the amount of $3,400,000 to Infinity and misrepresented that such funds would be used by Infinity solely to purchase accounts receivable pursuant to a

6

contract entered into between Infinity and HealthPlus Imaging of Texas, LLC ("HealthPlus Imaging").

43. In making this request, Infinity represented to HASelect that the value of the accounts receivable to be purchased by Infinity was at least $6,800,000. FTM represented that it verified the accuracy of these amounts. At the time the request was made, Infinity and FTM knew the actual purchase price due and payable under Infinity's contract with HealthPlus Imaging was only $2,500,000 and that the actual value of such accounts receivable was less than $5,000,000.

44. Moreover, upon receipt of the loan funds requested from HASelect for the purchase of accounts receivable from HealthPlus Imaging, Hemmers and Pantelas caused Infinity to pay only $1,750,000 of the $2,500,000 purchase price to HealthPlus Imaging. Hemmers and Pantelas then used the remaining proceeds advanced by HASelect to pay bonuses to themselves, to fund loans made by Infinity to Pantelas, and to pay over $600,000 in unsecured debts owed by Infinity to third parties, including Coastal.

45. At all relevant times, Defendant Clark was charged by Plaintiff GAM with the responsibility of managing and maintaining HASelect's business with Infinity and with protecting HASelect's rights and interests under the MLA by, among other things, monitoring Infinity's use of loan proceeds and requiring that Infinity comply with all material terms of the MLA.

46. At all relevant times, Defendant Clark was charged by Plaintiff GAM with the responsibility of managing and maintaining HASelect's business with FTM and with protecting HASelect's rights and interests under the SAA by, among other things, ensuring that FTM continues to act in HASelect's best interest.

47. At all relevant times, Defendant Clark was similarly charged with the responsibility to monitor and maintain the collateral base for HASelect's loans to Infinity and to ensure that such

loans remained fully collateralized to protect HASelect against risk of loss in the event that Infinity defaulted on its obligations under the MLA.

48. During the Employment Period while Defendant Clark managed HASelect, Clark knowingly allowed HASelect to advance funding to Infinity for the purchase of accounts receivable based on false representations by Infinity concerning the purchase cost and value of such accounts receivable.

49. As a direct or proximate result of Defendant Clark's actions, HASelect was caused to fund the acquisition of accounts receivable by Infinity based on intentionally overstated and artificially inflated purchase costs and values, which resulted in the diversion and misuse of loan proceeds and the severe impairment of the collateral base for HASelect's loan to Infinity.

50. On information and belief, Defendant Clark knew or, through the exercise of reasonable care, should have known, of these wrongful acts by Infinity and FTM in overstating the cost and value of collateral for HASelect's loan and either permitted this misconduct or failed to take appropriate action to stop it.

51. On information and belief, Defendant Clark aided, abetted, and colluded with Infinity, FTM and their affiliates to cause HASelect to fund the purchase of accounts receivable by Infinity based on intentionally overstated and artificially inflated purchase costs and values with the intent to allow Infinity to receive excess loan funds that HASelect would not have advanced to Infinity based on the true cost and value of such accounts receivable.

## II. Tecumseh

52. During the Employment Period, Defendant Clark received certain confidential and proprietary information concerning Plaintiffs' business operations, including GAM and HASelect's internal and confidential books, records, documents, client and investor lists,

agreements with third parties and other reports concerning the HASelect and GAM (collectively "Confidential Information"), and was entrusted with maintaining the confidentiality of such information.

53. During the Employment Period, Defendant Clark was also entrusted with maintaining certain confidential investor relations on behalf of GAM as well as overseeing its offshore division, which included HASelect.

54. As a condition of his employment, Defendant Clark agreed to protect and maintain the confidentiality of GAM and HASelect's business operations and investor information and to not disclose such information.

55. Defendant Clark knew or should have known that the release of such Confidential Information concerning Plaintiffs' business operations and investor relations to third parties, including competitors of GAM and HASelect, would cause substantial harm to GAM and HASelect.

56. At all relevant times, Defendant Clark owed fiduciary duties of loyalty and care to both Plaintiffs HASelect and GAM.

57. These fiduciary duties included an obligation of due care to make business decisions concerning the management of HASelect that reflected the best interests of HASelect.

58. These fiduciary duties included an obligation to remain loyal to HASelect and GAM and to not engage in actions contrary to the interests of either of them.

59. These fiduciary duties included an obligation to not directly or indirectly compete with either GAM or HASelect.

60. These fiduciary duties included the obligations to maintain the confidentiality of certain information belonging to HASelect and GAM and to not usurp that information for Defendant Clark's own benefit.

61. These fiduciary duties included an obligation not to take confidential information belonging to one of the Plaintiffs on or before Defendant Clark's employment with GAM ceased and to not thereafter usurp that information for Defendant Clark's own benefit.

62. In or about August 2019, former GAM employee Chadwick Meyer and others organized Tecumseh to directly compete with GAM.

63. On or about April 4, 2022, Tecumseh filed a form ADV with the United States Securities and Exchange Commission. A true and correct copy of that form is attached hereto as ***EXHIBIT A***.

64. Form ADV is a required disclosure document used by investment advisors to register with the SEC.

65. Schedule A of Form ADV requires disclosure of the registered advisor's Direct Owners and Executive Officers.

66. Page 26 of the Form ADV filed by Tecumseh on April 4, 2022, contains a table listing the three principal owners of Tecumseh as (i) Chadwick M. Meyer, (ii) Michael Scott Belotz and (iii) Simon Henry Clark.

67. This table shows Defendant Clark as a "control person" of Tecumseh owning an interest of between 10 and 25 percent in Tecumseh.

68. This table shows Defendant Clark obtained his ownership position in Tecumseh in August 2019, six months before he resigned his positions with GAM and HASelect in February 2020.

69. In the weeks prior to his resignation, Clark forwarded Confidential Information to his own private email account for his own private use.

70. Almost immediately after Clark's resignation from GAM in February 2020, Tecumseh used Confidential Information obtained by Clark during the course of his employment with GAM to begin to compete with GAM for Infinity's business by soliciting Infinity to terminate its business relationship with HASelect and to enter into a new financing arrangement with Tecumseh.

71. As a direct and proximate cause of this wrongful competition, HASelect's relationship with Infinity was wrongfully impaired and eventually terminated, resulting in substantial harm to HASelect.

72. Following Defendant Clark's resignation in February 2020, he materially assisted Tecumseh in negotiating to purchase a substantial portion of Infinity's accounts receivable, which had previously been pledged as collateral for HASelect's loan to Infinity, without HASelect's knowledge or consent, which caused further harm to HASelect by reducing the collateral base that secured repayment of HASelect's loan to Infinity.

73. At or around the time of Clark's resignation from GAM in February 2020, Tecumseh used Confidential Information obtained by Clark during the course of his employment by GAM to compete with GAM by soliciting GAM's investors to fund a new financing arrangement between Tecumseh and Infinity.

74. As a direct and proximate cause of Defendant Clark's wrongful disclosure and misuse of GAM's Confidential Information, Tecumseh was allowed to usurp business opportunities from GAM.

75. On information and belief, one of the reasons that Defendant Clark permitted or assisted Infinity and its affiliates in misappropriating and diverting loan funds and in selling accounts receivables included within HASelect's collateral base to Tecumseh was to use HASelect's resources to improve Infinity's financial condition with the plan that Tecumseh would replace HASelect as Infinity's funding source.

## COUNT I

### BREACH OF FIDUCIARY DUTIES

76. Plaintiffs repeat and reallege the above paragraphs and incorporate them by reference as though fully stated herein as part of Count I of this Complaint.

77. By reason of the right and ability to manage HASelect which was entrusted to him, Defendant Clark owed fiduciary duties of loyalty and care to HASelect.

78. By reason of GAM's employment of him, Defendant Clark owed fiduciary duties of loyalty and care to GAM.

79. Defendant Clark, by engaging in the conduct described above, directly or indirectly:

   a. Breached his fiduciary duties to HASelect by engaging in management decisions that were disloyal to HASelect because they were not in HASelect's best interests but instead in Defendant Clark's interests;

   b. Usurped HASelect's and GAM's confidential information, including, *inter alia*, information about HASelect's relationship with Infinity, in breach of his duty of loyalty to HASelect; or

   c. Breached his fiduciary duties to HASelect by engaging in management decisions that lacked due care.

80. Defendant Clark, by engaging in the conduct described above, directly or indirectly

    a.  breached his fiduciary duties to GAM by engaging in conduct that was disloyal to GAM's interests, including, *inter alia*, usurping information about HASelect's relationship with Infinity, in breach of his duty of loyalty to GAM;

    b.  breached his fiduciary duties to GAM by managing HASelect contrary to GAM's stated business plan; or

    c.  breached his fiduciary duties to GAM by becoming an owner, principal and control person of Tecumseh for the purposes of competing with GAM in the medical accounts receivable financing business and by mismanaging HASelect in a manner calculated to benefit Tecumseh and Defendant Clark.

81.    As a direct or proximate cause of Defendant Clark's fraud, Plaintiffs have suffered significant damages in an amount to be shown at trial, but in any event, are greater than one million dollars.

## COUNT II

### FRAUD

82.    Plaintiffs repeat and reallege the above paragraphs and incorporate them by reference as though fully stated herein as part of Count II of this Complaint.

83.    Defendant Clark, by engaging in the conduct described above, directly or indirectly and with scienter:

    a.  made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    b.  engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

84. By reason of GAM's trust in Defendant Clark to manage HASelect, Defendant Clark had a duty to disclose all material facts to GAM about the operations of HASelect in a timely manner.

85. By concealing his aforesaid misconduct, Defendant Clark defrauded GAM by lulling it into a false sense of security when GAM, had it known the truth, would have immediately terminated Clark's management role at HASelect.

86. Had Plaintiffs GAM and HASelect not been lulled into inaction by Defendant Clark's fraud, Plaintiffs would have acted earlier to protect themselves from the losses that they suffered through the misconduct of Infinity that Defendant Clark aided or permitted.

87. As a direct or proximate cause of Defendant Clark's fraud, Plaintiffs have suffered significant damages in an amount to be shown at trial, but in any event, are greater than one million dollars.

*Wherefore*, Plaintiffs HASelect Medical Receivables Litigation Finance International, SP, and Griffin Asset Management, LLC, respectfully request that this Court find in their favor and against Defendant Simon Clark, as follows:

A. Award Plaintiffs all compensatory damages;

B. Award Plaintiffs punitive damages, including the costs of this action as well as attorneys' fees, expert fees, and any other expenses reasonably incurred in the litigation of this matter as a result of Defendant's wrongful conduct;

C. Award Plaintiffs prejudgment interest; and

D. Award Plaintiffs such other relief as this Court deems just and proper.

### JURY DEMAND

Plaintiffs HASelect and GAM each request trial by jury of all claims that may so be tried.

Dated: August 12, 2022.

        Respectfully submitted,
**HASelect Medical Receivables Litigation Finance Fund International, SP** and **Griffin Asset Management, LLC**, *Plaintiffs*

By: /s/ *Thomas C. Cronin*
      *One of Their Attorneys*

Thomas C. Cronin
*tcc@cronincoltd.com*
Leland W. Hutchinson
*lwhutch@gmail.com*
Cronin & Co., Ltd.
120 North La Salle Street, 20th Floor
Chicago, IL 60602
312.500.2100

### Verification by Certification

Pursuant to 28 U.S.C.§1746, the undersigned certifies under penalty of perjury that the foregoing is true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated: August 12, 2022

                                        Michael E. Griffin