UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **HASELECT MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL, SP and GRIFFIN ASSET MANAGEMENT, LLC,** | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 22-cv-4269 |
| v. | ) ) ) | Judge Blakey |
| **SIMON HENRY CLARK,** an Individual | ) ) ) ) | Magistrate Judge Fuentes |
| **Defendant.** | ) | |

**DEFENDANT SIMON HENRY CLARK'S
MEMORANDUM OF LAW IN SUPPORT OF HIS
<u>RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

I. **INTRODUCTION**

This is the third time Griffin Asset Management, LLC ("GAM") and HASelect Medical Receivables Litigation Finance Fund International, SP ("HASelect") (collectively "Plaintiffs") have filed pleadings against a former employee alleging misappropriation of confidential information to start Tecumseh Alternatives, LLC ("Tecumseh").[1] Unable to sustain the prior allegations, GAM and HASelect took voluntary dismissals of those matters and now recycle their claims against a new target, Simon H. Clark.

Considering this is the third attempt to harass Tecumseh or its employees, it is unsurprising that the claims alleged here are particularly weak. Plaintiffs allege that while Mr. Clark was employed by GAM, Mr. Clark negotiated a contract for HASelect with Infinity. During Mr. Clark's tenure at GAM, there are no allegations that either Plaintiffs or Mr. Clark had any inkling that Infinity was not fulfilling its end of the bargain. In fact, Mr. Clark had a third party verify to HASelect the accuracy of Infinity's representations. As alleged in the Complaint, Mr. Clark trusted Infinity so much that he referred Infinity to provide services to his new employer after he left GAM. Unfortunately, unbeknownst to both Plaintiffs and Mr. Clark, Infinity was misrepresenting material facts. But Mr. Clark is not legally responsible for Infinity's breach of contract or the third party's failure to report these misrepresentations. Thus, these facts do not lend themselves to a claim against Mr. Clark for a breach of his fiduciary duty or fraud. This case should be dismissed.

II. **FACTUAL BACKGROUND**

Mr. Clark worked for GAM from 2017 to February 20, 2020. (Dkt. 1 ¶ 10). During that time he negotiated HASelect's Master Loan Agreement ("MLA") with Infinity. (Dkt. 1 ¶ 30).

---

[1] *See Griffin Asset Management, LLC et. al. v. Chadwick Meyer, Tecumseh-Infinity Medical Receivables Fund, LP et. al*, 2020-CH-4427, Chancery Div., Cook County, Ill.; Defendants Counterclaims filed in *Meyer v. Hedgeact*, 2019-CH-14290, Chancery Div., Cook County, Ill.

1

Under the terms of the MLA, HASelect loaned money to Infinity and Infinity would exclusively invest that money in medical accounts receivable. (Dkt. 1 ¶¶ 26, 28). As additional protection for HASelect, Mr. Clark also forced Infinity to covenant that the value of the accounts receivable purchased with the funds were at least 200 percent of the purchase cost. (Dkt. 1 ¶ 28). Mr. Clark also made sure HASelect would hold a perfected security interest in the accounts receivable. (Dkt. 1 ¶ 29).

To further protect HASelect, under Mr. Clark's watch, HASelect entered into a Sub-Advisory Agreement with FTM Investments ("FTM"). (Dkt. 1 ¶ 24). The purpose of the SAA was to have FTM serve as a sub-advisor to HASelect and assist HASelect in its relationship with Infinity. (Dkt. 1 ¶ 24). In the SAA, FTM represented both that it would act in a professional manner and in the best interest of GAM and HASelect. (Dkt. 1 ¶ 25). FTM then verified Infinity's representations to HASelect. (Dkt. 1 ¶ 43).

Plaintiffs do not allege that during Mr. Clark's tenure he ever learned, had a reason to know, or even an opportunity to discover Infinity's misconduct. As the Complaint itself makes clear, while Mr. Clark worked for GAM, Infinity represented the value of its accounts receivable and FTM verified the accuracy of HASelect's statements. (Dkt. 1 ¶ 43). Instead, Plaintiffs allege that the first signs of a problem did not occur until fifteen months *after* Mr. Clark left GAM. (Dkt. 1 ¶ 33). HASelect then enforced the contractual protections Mr. Clark put in place. First HASelect placed Infinity in default and then sued Infinity for breach of contract here in the Northern District of Illinois. (Dkt. 1 ¶ 34).

Instead of asserting that Mr. Clark had cause for concern about the relationship with Infinity, Plaintiffs allege that <u>after he left GAM</u>, he helped negotiate a deal with Infinity for his new company, Tecumseh. (Dkt. 1 ¶ 70). Pretending this allegation is true (Mr. Clark did not begin

2

working for Tecumseh until nearly a year after he left GAM), it simply demonstrates that Mr. Clark had no knowledge, belief or suspicion that something was wrong at Infinity.

Somehow from this fact pattern,[2] Plaintiffs assert that Mr. Clark committed a breach of fiduciary duty (Count 1) and fraud (Count 2).

### III.  LEGAL STANDARD

The Court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to adequately state a claim, it must meet two requirements. *E.E.O.C. v. Concentra Health Servs.*, Inc., 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)). Second, the allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Id.* at 776-77 (citing *Bell Atlantic*, 127 S.Ct. at 1965); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950-51 (2009). Moreover, a court is not required "to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *City Nat'l Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir. 1994) (citations omitted).

Allegations of fraud and breach of a fiduciary duty are subject to a heightened pleading standard under Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *see also, Ferenc v. Brenner*, 927 F. Supp. 2d 537, 547-48 (N.D. Ill. 2013) (applying Rule 9(b) to breach of fiduciary duty); *Bank of Am., N.A v. Knight*, 875 F. Supp. 2d 837, 851-52 (N.D.

---

[2] As Plaintiffs' counsel has known since before this Complaint was served, the allegation that Mr. Clark received equity in Tecumseh prior to his departure from GAM is inaccurate. The mistake is a result of a typo on an ADV, and the Amended ADV, which Plaintiffs purposefully omit, shows the accurate date Mr. Clark joined Tecumseh: January 1, 2021. (Securities and Exchange Commission: Investment Adviser Firm Summary, Tecumseh Alternatives LLC, Form ADV, Schedule A(7),  https://reports.adviserinfo.sec.gov/reports/ADV/316680/PDF/316680.pdf, attached as Exhibit 1.) As discussed below, this issue is a red-herring.

3

Ill. 2012) (applying Rule 9(b) to breach of fiduciary duty). Plaintiffs claiming fraud must do more pre-complaint investigation to assure responsible and supported claims, rather than defamatory and extortionate ones. *Borsellino*, 477 F.3d at 507. Claims sounding in fraud must include the identity of the person who committed the fraud, the time, the place, and content of the fraud, and the method the fraud was communicated—who, what, when, where, and how. *Desmond v. Taxi Affiliation Services, LLC*, 344 F. Supp. 3d 915, 921-22 (N.D. Ill. 2018).

## IV. ARGUMENT

There is no basis for the legal conclusion that Mr. Clark knew during his employment with GAM that Infinity was in breach of the MLA. Nor is there any basis to conclude that Mr. Clark knew that FTM falsely verified Infinity's misstatements of fact. Therefore, Mr. Clark is not personally liable for HASelect's losses. Neither a theory of breach of a fiduciary duty against Clark nor a theory of fraud is cognizable under this fact pattern because he owed HASelect no such duty by the time Infinity's breach was discoverable – fifteen months after he left GAM. And there is no factual basis to conclude Mr. Clark had any knowledge of Infinity's conduct that would support a theory he misled Plaintiffs. Therefore, the Complaint should be dismissed.

### A. Plaintiffs Fail to Plead a Breach of Fiduciary Duty.

To properly plead a breach of a fiduciary duty, the plaintiff must establish (1) a fiduciary duty existing on defendant's part; (2) the defendant breaching that fiduciary duty; and (3) damages proximately resulting from the breach. *Autotech Technology Ltd. Partnership v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006); *Lucini Italia Co. v. Grappolini*, 231 F. Supp. 2d 764, 770 (N.D. Ill. 2002). Here, Plaintiffs cannot establish that Mr. Clark breached any fiduciary duty during his employment period, and therefore this claim should be dismissed.

4

1. <u>Plaintiffs Fail to Plead any Breach of a Fiduciary Duty During the Employment Period.</u>

Under settled Illinois law, a duty of fidelity and loyalty is only owed while acting as an agent or employee of another. *ABC Trans Nat. Transport, Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 683, 379 N.E.2d 1228, 1237 (1st Dist. 1978). Once an employee leaves, there is no more duty of loyalty and they are free to compete with their former employer provided there is no demonstrable business activity before termination of employment. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160 (1st Dist. 1993); *Jostens, Inc. v. Kauffman*, 842 F.Supp. 352, 354 (C.D. Ill. 1994). Here, Plaintiffs do not allege any cognizable misconduct prior to Mr. Clark's departure on February 20, 2020.

Assuming *arguendo* that it were factually accurate that Mr. Clark's role was to assure the funds were properly used, even Plaintiffs' complaint acknowledges that Mr. Clark fulfilled that role. Mr. Clark put in place a contract with Infinity where Infinity covenanted that it would use the funds exclusively for the purchase of accounts receivable and would represent that the value of the accounts receivable purchased was at least 200 percent of purchase cost. (Complaint ¶28). He also put in place a contract with FTM that required FTM to verify Infinity's statements and act in HASelect's best interests. (Dkt. 1 ¶ 25).

Plaintiffs concede that only in May of 2021, fifteen months after Mr. Clark's departure, did Infinity begin exhibiting a pattern of willful noncompliance with its reporting requirements under the MLA. (Dkt 1 ¶ 33). The Complaint further concedes that HASelect only learned the full extent of Infinity's misdeeds in a September 2021 bankruptcy filing. (Dkt. 1 ¶¶ 35, 38-39, 42). Although there are no allegations that any party had any concern about Infinity at the time of Mr. Clark's tenure, he further protected HASelect by entering into the SAA with FTM. (Dkt. 1 ¶ 24). Under that Agreement, FTM verified Infinity's representations and had a duty to act in HASelect's best

5

interests. (Dkt. 1 ¶¶ 24, 43). Thus, the Complaint shows that Mr. Clark entered HASelect into an enforceable agreement should Infinity engage in misconduct, (Dkt. 1 ¶ 34), and that Mr. Clark entered into a SAA with FTM to assure that Infinity's representations were truthful. (Dkt. 1 ¶ 24). The Complaint thus establishes that Mr. Clark fulfilled his obligations to protect Plaintiffs while he was an employee of GAM.

Finally, the allegation that Clark gained some equity in a competitor while employed by GAM is a red herring. Under well-established Illinois law, it is not a breach of a fiduciary duty for one to start a competitor company while employed so long as the employee does not compete with his employer until after his employment ended. *ABC Trans Nat. Transport, Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 683 (1st Dist.1978). Here, Plaintiffs allegations of competition are limited to conduct that occurred after Clark left. (*See* Dkt 1 ¶ 70 (claiming Clark took actions "almost immediately after"); Dkt. 1 ¶ 72 (claiming Clark took actions "Following Defendant Clark's resignation…"). These claims do not give rise to a breach of fiduciary duty claims because Mr. Clark's obligations terminated with his employment. *Veco Corp.*, 243 Ill. App. 3d at 160.

2. <u>Plaintiff's Breach of Fiduciary Duty Claims are Not Saved by Invoking the Words "Confidential Information".</u>

Plaintiffs repeatedly allege that Mr. Clark had access to confidential information, but the sole allegation that Mr. Clark used any confidential information is a general statement that he solicited Infinity after he left GAM. (Dkt. 1 ¶ 70). Knowledge of business relationships, however, is considered general skills and knowledge which an employee is free to take with them when employment is terminated. *ABC Trans*, 62 Ill. App. 3d at 683, 379 N.E.2d at 1237 (citing *Professional Service Corp. v. Johnson*, 316 Ill. App. 431, 45 N.E.2d 191 (1st Dist. 1978)). Notably, neither HASelect nor Infinity considered the existence of that relationship confidential, and the

6

MLA itself was not marked as confidential. (*See MLA*, attached as Exhibit 1)[3]. Although the pleadings conclude the relationship was confidential, no facts support that conclusion.

### B. Plaintiffs Failed to State a Claim for Fraud.

Plaintiffs cannot establish fraud because there are no alleged false statements of fact and no knowledge by Mr. Clark that Infinity would breach the MLA over a year after he left GAM. Under Illinois law, the elements of fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860 (N.D. Ill. 2010). A plaintiff must describe the "who, what, when, where, and how" of the fraud which is the first paragraph of any newspaper story." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). Mr. Clark's inability to discover that Infinity was misrepresenting material facts and FTM was inaccurately verifying those facts is not fraud.

1. Plaintiffs Do Not Identify a Single False Statement of Fact.

In *Cohn v. Guaranteed Rate Inc.*, plaintiff filed a fraud claim against defendants and defendants moved to dismiss. 130 F. Supp. 3d 1198 (N.D. Ill. 2015). The district court granted the motion to dismiss because the claims were not pled with sufficient particularity setting forth the circumstances constituting fraud. *Id.* at 1211. The district court ruled that to plead fraud, a plaintiff must set forth "with particularity the circumstances constituting fraud" and that the "'circumstances constituting fraud" include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which

---

[3] Plaintiffs repeatedly reference the MLA, and documents referenced in a Complaint may be considered in a Rule 12(b)(6) motion. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (documents referenced in a Complaint may be considered in a Rule 12(b)(6) Motion to Dismiss)

7

the misrepresentation was communicated to the plaintiff.'" *Id.* (citations omitted.)

Here, Plaintiffs have not asserted that Mr. Clark made any specific false statement of material fact. Plaintiffs have not provided the circumstances regarding the alleged fraud. Plaintiffs have not set forth the time, place, or content of any misrepresentation. Plaintiffs certainly have not set forth the first paragraph of a newspaper story regarding the alleged fraud. Plaintiffs, accordingly, have not alleged that Mr. Clark knew any such statement was false. Plaintiffs have similarly not alleged that Mr. Clark intended for any statement to induce Plaintiffs to act. Plaintiffs have not alleged that they relied upon the truth of any statement made by Mr. Clark. Finally, Plaintiffs have not alleged that they suffered any damages from Plaintiff's reliance upon any particular statement made by Mr. Clark.

Plaintiffs provide no detail as to the "who, what, when, where, and how" of any statement or omission. In fact, Paragraph 83 of the Complaint is the only place in which Plaintiffs attempt to address the first element of fraud. There, Plaintiffs conclude without factual support that Mr. Clark made an unspecified statement of material fact or omitted to state a material fact. (Dkt. 1, ¶ 83(a)). Plaintiffs do not provide any details about what was said or what was omitted.

As a result, Plaintiffs have not met the first, second, third, fourth, or fifth elements of establishing a fraud claim. Plaintiffs' fraud claim does not meet the pleading requirements of Rule 9(b). Count II of Plaintiffs' complaint fails to state a claim under Rule 12(b)(6). Plaintiffs' claim for fraud should be dismissed.

    2. <u>Plaintiffs Do Not Establish That Clark Knew The Infinity Relationship Was Problematic.</u>

Even if we guess that Mr. Clark's fraudulent omission was his failure to communicate the issues with Infinity, there are no allegations that Mr. Clark even knew of Infinity's misconduct. Thus, Plaintiffs do not sufficiently allege that Mr. Clark knew he was misrepresenting a fact – a

8

required element of fraud.

As noted above, Mr. Clark was reasonably reliant upon Infinity's representations as verified by FTM. When Mr. Clark left, per the Complaint, he thought so highly of Infinity he helped Tecumseh enter an agreement with them. There is absolutely no factual support for any conclusion that Mr. Clark knew of the misconduct and did nothing.

3. <u>Plaintiffs' Allegations Regarding Mr. Clark's Equity Interest in Tecumseh is Inaccurate and Immaterial.</u>

Mr. Clark resigned from GAM and HASelect in February 2020. [Dkt. 1, ¶¶ 68, 70.] Mr. Clark acquired ownership in Tecumseh in January 2021.[4] (Securities and Exchange Commission: Investment Adviser Firm Summary, Tecumseh Alternatives LLC, Form ADV, Schedule A(7), https://reports.adviserinfo.sec.gov/reports/ADV/316680/PDF/316680.pdf, attached as Exhibit 2.)

An excerpt from the updated Form ADV for Tecumseh is set forth below:

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Title or Status | Date Title or Status Acquired MM/YYYY | Ownership Code | Control Person | PR | CRD No. If None: S.S. No. and Date of Birth, IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|---|
| Meyer, Chadwick, M | I | PRINCIPAL | 08/2019 | C | Y | N | 6974718 |
| BELOTZ, MICHAEL, SCOTT | I | PRINCIPAL | 08/2019 | C | Y | N | 5138137 |
| CLARK, SIMON, HENRY | I | PRINCIPAL | 01/2021 | B | Y | N | 4364845 |

*Id.* The Form ADV referenced in and attached to the Complaint, differs from the publicly available and up-to-date Form ADV. (Dkt 1, ¶ 12; Dkt. 1-1). Specifically, the outdated Form ADV attached to the complaint incorrectly listed Mr. Clark's ownership in Tecumseh beginning in August 2019. *Id.* Thus, considering the full ADV filing, including the relevant amendments, Plaintiffs cannot sustain a claim based on the inaccurate ADV.

To the extent Plaintiffs' claim for fraud is based on an alleged overlap of (1) Mr. Clark's

---

[4] Among other information, Form ADVs set forth the date in which an individual becomes an owner of a given entity. Form ADVs are publicly available on the portion of the SEC's website regarding Investment Adviser Firm Summary. In addition, Plaintiffs reference the outdated ADV and Courts may consider pertinent documents that Plaintiff does not provide if they are central to the claims. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

employment with GAM and HASelect and (2) his ownership in Tecumseh, no overlap exists. There is an eleven months span between the two events. But even if they did overlap, Plaintiffs utterly fail to allege any misconduct during his employment with GAM or explain how Mr. Clark's equity interest in one company constitutes fraud against another.

## V.  CONCLUSION

WHEREFORE, Defendant SIMON HENRY CLARK respectfully requests that this Honorable Court dismiss Plaintiffs HASelect Medical Receivables Litigation Finance Fund International, SP and Griffin Asset Management, LLC's Complaint with prejudice, and for any such further relief as this Court deems just and appropriate.

Respectfully submitted,

By: /s/*William D. Patterson*
Counsel for Defendant Simon Henry Clark

William Patterson—ARDC No.  6294533
Emily J. Fitzgerald—ARDC No. 6305923
SWANSON, MARTIN & BELL, LLP
330 North Wabash Ave. Suite 3400
Chicago, Illinois 60611
wpatterson@smbtrials.com
efitzgerald@smbtrials.com
Office: (312) 321-9100
Fax:    (312) 321-0990

## **CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that a copy of the foregoing Defendant Simon Henry Clark's Memorandum of Law in Support of His Motion to Dismiss Plaintiffs' Complaint and his corresponding Notice of Motion was served upon all counsel of record via the Court ECF system, this 20th day of October, 2022.

[✓] Under penalties as provided by law, the undersigned certifies that the statements set forth in this Certificate of Service are true and correct.

              _/s/William D. Patterson_