## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

HASELECT MEDICAL RECEIVABLES
LITIGATION FINANCE FUND
INTERNATIONAL S.P.,
and GRIFFIN ASSET MANAGEMENT, LLC,

      Plaintiffs,

v.

SIMON HENRY CLARK, an Individual,

      Defendant.

Case No. 22-cv-4269

Hon. Judge Blakey

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S
### RULE 12(B)(6) MOTION TO DISMISS

Defendant's motion to dismiss should be denied because it fails to credit some of Plaintiffs' factual allegations, is dependent on drawing inferences in Defendant's favor rather than in Plaintiffs' and asks the Court to adjudicate facts which only the jury may determine. Under federal notice pleading standards of Rule 12(b)(6), F.R.Civ.P., Plaintiffs are not required to plead evidence or even detailed facts. All that is required is a plain and short statement of claims for relief that are supported by factual allegations showing that the claim for relief is more than speculative. Plaintiffs are required only to give the Defendant fair notice of the claim and the grounds for it. As shown below, they have met that standard. Plaintiffs have also satisfied the more specific standards of Rule 9(b), F.R.Civ.P., because they have clearly alleged the who, what, when and how of the fraud.

<div style="text-align:center">**ARGUMENT**</div>

**I.    PLAINTIFFS HAVE ADEQUATELY ALLEGED CLARK'S BREACHES OF FIDUCIARY DUTY.**

Fiduciaries owe three independent duties: due care, loyalty and good faith.  Plaintiffs have alleged facts showing the Defendant Clark breached each of these fiduciary duties.  Allegations, taken as true, showing the violation of any one of these independent duties are sufficient for Count I to withstand dismissal at this juncture.  Plaintiffs are not required to provide detailed factual allegations in their complaint.  *Bell AtlanticCorp. v. Twombley*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  The allegations of the complaint need not prove a claim, they only "must be enough to raise a right to relief above the speculative level." *Id*. These Plaintiffs have alleged far more detailed facts concerning Clark's breaches of fiduciary duties than is required by *Twombley's* more than "labels and conclusions" standard.  They have also alleged facts which, taken as true, show a right to relief that is far more than merely speculative.

Perhaps Plaintiffs' clearest allegations are their claim that Defendant Clark breached his fiduciary duty of care with regard to his mismanagement of Plaintiffs' business relationship with Infinity Capital Management, Inc. ("Infinity").  This claim is quite similar to the fiduciary duty claim in *F.D.I.C. ex. re. Wheatland Bank v. Spangler*, 836 F.Supp.2d 778 (N.D., Ill. 2011) where directors of a failed bank were sued for breach of fiduciary duty in approving improvident loans which damaged the bank:

> The amended complaint sets forth each Defendant's position and tenure at Wheatland, the loans that each Defendant personally approved, the reasons why those loans were imprudent at the time of approval, and the loss suffered by Wheatland from the decision to make the loan. In sum, allegations as to the Loan

<div style="text-align:center">2</div>

> Committee Defendants' repeated approval of risky loans without obtaining sufficient personal guarantees to protect Wheatland, without investigating the borrowers or guarantors' financial condition and ability to repay the loans, and without ensuring the basic underwriting required by the Bank's loan policy, are sufficient to state claims for negligence, gross negligence, and breach [of fiduciary duty] found in Counts I through III.

*Id.* at 788. *Accord*, *F.D.I.C. v. Hanson*, 2013 WL 12074982, *4 (W.D. Wash. Sep. 16, 2013) (denying motion to dismiss fiduciary duty claims against directors who approved improvident loans, *citing Spangler*).

Plaintiffs' complaint follows the same pattern. It alleges that Defendant Clark was entrusted with managing the Infinity business relationship for Plaintiffs while he was employed by them. Comp., ¶¶ 10, 29-30 and 45-46. There is no question that Clark was Plaintiff's fiduciary with regard to that relationship because Plaintiffs entrusted him such that he was the "primary point of contact" with Infinity. *In re: Frain*, 230 F.3rd 1014, 1017 (7th Cir. 2000) (a fiduciary relationship exists if there is "a difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter."); *In re: Hearthside Baking Co., Inc.*, 402 B.R. 233, (N.D. Ill. BK 2009) (Defendants entrusted with managing plaintiff's business owed fiduciary duties as a matter of law even though "they were neither shareholders, directors, officers, nor employees of [the business].") In this case, Clark's fiduciary duties arise both from Plaintiffs' decision to trust him with management of this key business relationship and from duties imposed by law. Notably, Clark does not deny that he was Plaintiffs' fiduciary with regard to the Infinity relationship he managed while he was employed by Plaintiffs.

The complaint alleges Clark's knowing approval of Plaintiffs' funding of receivable purchases by Infinity on unfavorable terms on his watch. Comp., ¶¶ 48-49. Clark's motion completely ignores this allegation. Plaintiffs have alleged that it was critical to their business model that receivables be acquired be "properly collateralized and secured." Comp., ¶¶ 7-9.

Plaintiffs have also alleged that, when Infinity filed bankruptcy in September 2021 (19 months after Clark's employment ended), Infinity's bankruptcy schedules showed that the receivables purchased with Plaintiff HASelect-Medical Receivables Litigation Finance Fund Intern'l., S.P.'s ("HASelect") funds were valued at only $5.7 million while Infinity owed HASelect over $13 million in principal under the loan agreement. Comp., ¶¶ 36-37. Those figures show massive loans by HASelect to Infinity for collateral with artificially inflated values. The favorable inference that Plaintiffs are entitled to enjoy at this juncture is that a good part of these receivables were purchased on Clark's watch at prices that were well outside Plaintiff's business model and highly detrimental to it. Moreover, it was Clark's business to investigate, detect and stop such misconduct by Infinity and FTM by exercising due care.

These factual allegations must be taken as true at this juncture. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). In making this determination, Plaintiffs are entitled to enjoy all favorable inferences from the facts alleged. *Killingworth v. HSBC Bank Nevada, N.A.*, 507 F.3rd 614, 618 (7th Cir. 2007) ("We review the court's dismissal order de novo, accepting the complaint's well-pleaded allegations as true and drawing all favorable inferences for the plaintiff."). As shown in *Spangler*, whether Clark's actions breached his duty of care is measured by a nearly identical standard (due care) as in a negligence claim. The directors in *Spangler* were required to answer fiduciary duty claims based on their approval of loans on improvident terms (lack of guarantees, inadequate investigation). That is what Plaintiffs now ask Clark to do.

Clark may claim that Infinity and FTM defrauded him, but it was his responsibility to investigate Infinity and FTM and to make sure that he was not approving loans to Infinity for collateral that was purchased at artificially inflated prices. Comp., ¶¶ 49-51. In fact, Clark begins his argument by claiming that Plaintiffs have alleged no basis for suggesting that he should have known about Infinity and FTM's wrongdoing. Mem. Supp. MTD, Doc 14 at 5. Again, there is no requirement to allege specific facts here. All Plaintiffs need do is allege facts sufficient to "to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555. The vast difference in the values of the receivables funded by Plaintiff HASelect during Clark's watch later revealed by Infinity's bankruptcy schedules and what should have appeared raises a reasonable inference that Infinity's and FTM's wrongdoing should have been obvious to any competent manager in Clark's position who would have acted to prevent it. Comp., ¶¶ 36-37 (Receivables purchased with Plaintiffs' funds were worth less than half of what they should have been worth). In any event, even if Clark disagrees that he should have done more to investigate and should have prevented Infinity's wrongdoing, those are questions for the jury at trial, not meritorious arguments for dismissal. *See Spangler*, 836 F.Supp.2d at 788 ("Defendants challenge the FDIC's conclusion that their actions … constituted a breach of fiduciary duty, but they cannot plausibly suggest that they do not understand the allegations against them.").

Clark's duty of care argument is essentially that he owed no fiduciary duty when "Infinity's breach was discoverable – fifteen months after he left GAM." Mem. Supp. MTD, Doc 14 at 5. Plaintiffs, however, have not alleged or admitted that Infinity's conduct was not "discoverable" until later. That reading takes inferences in Defendant's favor when they must be taken in Plaintiff's favor. *Killingworth, N.A.*, 507 F.3rd at 618. Plaintiffs have only alleged that the misconduct wasn't actually discovered until later. Were Clark's argument accepted, it would

provide a defense for every fiduciary who permitted a loss to be suffered because he or she was asleep at the switch at the relevant time.

The key question here is whether Clark could have discovered Infinity's wrongdoing at the time he permitted it to happen had he acted with more care. Plaintiffs allege that Clark was responsible for monitoring and maintaining the collateral base while he was entrusted with managing the Infinity relationship. Comp., ¶ 47. Plaintiffs also allege that Clark "knowingly allowed HASelect to advance funding to Infinity for the purchase of accounts receivable based on false representations by Infinity concerning the purchase cost and value of such accounts receivable." Comp., ¶ 48. Plaintiffs also allege that:

> Defendant Clark aided, abetted, and colluded with Infinity, FTM and their affiliates to cause HASelect to fund the purchase of accounts receivable by Infinity based on intentionally overstated and artificially inflated purchase costs and values with the intent to allow Infinity to receive excess loan funds that HASelect would not have advanced to Infinity based on the true cost and value of such accounts receivable.

Comp., ¶ 51. These allegations assert the fact that Clark actually knew of Infinity's wrongdoing and let it happen. That factual assertion must be taken as true at this juncture. Defendant's motion is defective because it totally ignores these inconvenient allegations.

Clark also argues that he acted with due care because of certain steps he did take to protect Plaintiffs. Mem. Supp. MTD, Doc 14 at 7 ("Thus, the Complaint shows that Mr. Clark entered HASelect into an enforceable agreement should Infinity engage in misconduct, (Dkt. 1 ¶ 34), and that Mr. Clark entered into a SAA with FTM to assure that Infinity's representations were truthful."). This argument – whatever else I may have done wrong, I did these two things right – is not worthy of consideration on a motion to dismiss, for at least two reasons. First, it is a question for the jury whether Clark's overall conduct satisfied the due care standard. Plaintiff's due care claim can be dismissed only if no allegations raise a due care question "beyond the speculative level." *Twombley*, 550 U.S. at 555. *See also*, *id*. at 556 ("a well-pleaded complaint may proceed

6

even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely"). If some allegations pass that test, the claim may not be defeated by other allegations suggesting isolated instances of careful conduct.

Second, Clark's argument is really a form of affirmative defense. *Compare* Rule 8(a), F.R.Civ.P. (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief") *with* Rule 8(c), F.R.Civ.P. (pertaining to affirmative defenses). An affirmative defense admits that underlying claim and alleges other conduct which negates it. *Devine v. Volunteers of America of Illinois*, 315 F.Supp.3d 994, 1003 (N.D. Ill. 2018) ("An affirmative defense is one that admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification or other negating matters."). Affirmative defenses must be pleaded in answers and may not be adjudicated by way of a pre-answer Rule 12(b)(6) motion, as this Defendant is attempting to do.

Plaintiffs also allege a separate claim for Defendant's breach of fiduciary duty of loyalty arising from his actions during his employment to benefit a competitor, Tecumseh. If the Court accepts Plaintiffs' argument that the duty of care claim supports Plaintiffs' fiduciary duty claim under *Spengler*, that is sufficient to withstand a motion to dismiss Count I because at least one non-speculative claim has been pleaded. *See Sojka v. Bovis Land Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (summary judgment for defendant reversed: "Sojka's complaint contains one count and one claim, construction negligence, committed in a variety of ways. A 'claim is "the aggregate of operative facts which give rise to a right enforceable in the courts."' [Citation omitted]. One claim supported by multiple theories does not somehow become multiple claims.").

Plaintiffs' duty of loyalty argument separately presents a cognizable claim for breach of the fiduciary duty of loyalty. Defendant claims that his fiduciary duty to Plaintiffs ended

when he left their employ and that all that occurred before that was mere planning to compete, which Illinois law allows. Mem. Supp. MTD, Doc 14 at 7. This is not a question that may be resolved on a motion to dismiss. One of Defendants key cases recognizes that "[t]he resignation of an officer, however, will not sever liability for transactions completed after the termination of the party's association with the corporation of transactions which began during the existence of the relationship or were founded on information acquired during the relationship." *Veco Corp. v. Babcock*, 243 Ill.App.3d 153, 161 (1st Dist. 1993) (*citing Comedy Cottage, Inc. v. Berk* (1st Dist. 1986), 145 Ill.App.3d 355, 360 (1st Dist. 1986)).

Plaintiffs have alleged that Clark became a control person with a competitive entity, Tecumseh, six months before he left Plaintiffs' employ. Comp., ¶¶ 62-68 and Exhibit A.[1] A reasonable inference in Plaintiffs' favor arising from that fact is that Clark had dual loyalties at least during that six-month period. Plaintiffs specifically allege that, due to Plaintiffs' trust in him, Clark gained access to Plaintiffs' confidential information. Comp., ¶¶ 60. *See also id.*, ¶ 53 (Clark entrusted with confidential investor relations) and ¶ 54 (agreement to maintain confidentiality). Plaintiffs also allege that, during the last weeks of his employment, Clark forwarded Plaintiffs' confidential information to his private email account which Tecumseh began using to compete with Plaintiffs "almost immediately after Clark's resignation." Comp., ¶¶ 69-70. The complaint

---

[1] Clark argues that a more recent version of the Form ADV has been amended to show that Clark became a control person of Tecumseh only in January, 2021, after he left his employment. Mem. Supp. MTD, Doc 14 at 7. Even if this is true, it may not now be considered. An invitation to the Court to consider matters outside the four corners of the complaint is an invitation to convert the motion into one for summary judgment, because matters outside of the complaint may not be considered under Rule 12(b)(6). *See* Rule 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Plaintiffs ask the Court to exclude this extraneous matter at this time. The parties are not ready, without any discovery, for a summary judgement argument concerning when Clark became involved with Tecumseh and which of the dates on the two Forms ADV is accurate.

also alleges that Clark materially assisted Tecumseh in purchasing receivables that had been pledged to Plaintiff HASelect. Comp., ¶ 72.

These facts, taken as true, raise a reasonable inference in Plaintiffs' favor that more than mere planning to compete occurred while Clark was still employed as Plaintiffs' fiduciary. These facts also raise a reasonable inference of a transaction begun while Clark was still a fiduciary and consummated only immediately thereafter using "information acquired during the relationship," falling within the rule cited in *Veco* and *Comedy Cottage*. *See Veco*, 243 Ill.App.3d at 161 (liability can attach to a transaction consummated after the fiduciary relationship was ended using "information acquired during the relationship"). Plaintiffs' allegations of breach of the duty of loyalty are not rendered speculative and insufficient merely because the competitive transactions were consummated immediately after Clark's resignation. Discovery is required to see if the competitive acts misused Plaintiffs' confidential information entrusted to Clark during his employment.

Clark's answer to this is to argue that the confidential information alleged in the complaint only consisted of general "knowledge of business relationships" which "an employee is free to take with them when employment is terminated." Mem. Supp. MTD, Doc 14 at 7. This is not an argument that can be considered under Rule 12(b)(6), F.R.Civ.P., because it invites the Court to consider matters outside the four corners of the complaint (*i.e.*, Defendant's assertions of what the confidential information consisted of). *See* Note 1, *supra* and Rule 12(d), F.R.Civ.P. Again, under *Twombley* and *Iqbal*, Plaintiffs are not required to plead detailed facts (such as more specifically describing the nature of the confidential information). *Iqbal*, 556 U.S. at 678 ("the pleading standard Rule 8 announces does not require 'detailed factual allegations'" * * * "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."); *Twombley*, 550 U.S. at 555 ("a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"). Plaintiffs have alleged that Clark was entrusted with managing a confidential investor relationship as to which he agreed to maintain confidentiality. Comp., ¶¶ 53-54. These allegations must be taken as true. Defendant's argument that he was entitled to retain the information that he admits that he did take from Plaintiffs may only be resolved at trial or by motion for partial summary judgment after discovery shows the nature and detail of what happened. Such an argument is entirely premature here.

Plaintiffs' fiduciary duty claim is not subject to the heightened pleading standards of Rule 9(b), F.R.Civ.P., because it arises from Clark's lack of care at the critical time and also from his disloyalty in taking confidential information and not from any misrepresentation or omission in his communications with Plaintiffs. *Rogers v. Baxter Intern'l., Inc.* 417 F.Supp.2d 974, (N.D.Ill. 2006)*, aff'd*., 521 F. 3d 702 (7th Cir. 2008) ("While claims for breach of fiduciary duty under ERISA generally are not subject to heightened pleading standards, Rule 9(b) does apply where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act."). *See also Cohen v. Minneapolis Jewish Federation*, 2017 WL 3600451, *2 (W.D. Wis., Aug. 18, 2017) (*Citing Rogers*: "A claim for breach of fiduciary duty is not a claim for fraud. But the parties acknowledge that Rule 9(b) kicks in 'where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act.'"). Rule 9(b) only governs claims arising out of fraud. Plaintiffs' fiduciary duty claims described above do not arise from fraudulent activities.

## II.    PLAINTIFFS HAVE ADEQUATELY ALLEGED CLARK'S FRAUD.

Defendant argues that Plaintiffs' fraud claim fails because there are no allegations of misstatements. Mem. Supp. MTD, Doc 14 at 8 ("Plaintiffs cannot establish fraud because there

are no alleged false statements of fact…").  This argument turns entirely on Clarks' assertion that he was unable to discover Infinity's and FTM's misconduct.  *Id*. ("Mr. Clark's inability to discover that Infinity was misrepresenting material facts and FTM was inaccurately verifying those facts is not fraud.").  The complaint, however, alleges that Clark did discover wrongdoing and turned a blind eye towards it.  Comp, ¶¶ 48 ("Clark knowingly allowed" funds to be improperly advanced), 51 ("Clark aided, abetted, and colluded with Infinity and FTM").  These are factual allegations of Clark's state of mind.  A court should not disregard them and accept Clark's unsupported claim that he failed to discover Infinity's and FTM's wrongdoing to dismiss the fraud claim that he lacked knowledge without discovery.

As Plaintiffs' fiduciary entrusted with maintaining the Infinity business relationship, Clark had a duty to disclose to Plaintiffs any fact he became aware of that suggested Infinity's and FTM's misconduct.  Clark does not argue otherwise.  He also gave Plaintiffs no warning of any wrongdoing, a fact he also does not deny.  His claim to have legitimately been unaware of Infinity's and FTM's is belied by the massive nature of the shortfall in the value of the receivables revealed by Infinity's bankruptcy filings.  Comp., ¶¶ 36-37.  No competent manager in Clark's position, having available to him all of the remedies under the various loan agreements between Plaintiffs and Infinity, could have remained totally ignorant of a shortfall this large.  These allegations of the magnitude of the shortfall essentially describe a situation in which the wrongdoing was obvious to any skilled person willing to look.  Under such circumstances, the contention that Clark was aware is a reasonable inference that must be taken in Plaintiffs' favor at this juncture.  Clark's claim never to have discovered any wrongdoing may not be now entertained as a fraud defense.

Once the knowledge issue is resolved by crediting Plaintiffs' allegations and ignoring Clark's unsupported assertions, there is no Rule 9(b) issue.  Plaintiffs have alleged ***who*** committed

11

the fraud: Clark.  They have alleged **what** the fraud consisted of and **how** it was accomplished: by Clark concealing material facts from Plaintiffs that lulled them into inaction.  Comp., ¶¶ 83(a) (Clark "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading") and 85-86 (alleging lulling fraud).  Plaintiffs have alleged **when** the fraud occurred: the entire time that Plaintiffs were lending to Infinity prior to Clark's departure (2019 to February 2020).  Comp, ¶ 31.  The **where** element is not relevant here, but is obvious – the place where the parties did business.  Rule 9(b) has been satisfied.  Defendant's motion to dismiss Plaintiffs' fraud claim should be denied.

<div align="center">

CONCLUSION

</div>

Defendant has raised several arguments which may not be considered under Rule 12(b)(6), F.R.Civ.P.  Other of his arguments contradict well pleaded facts.  At bottom, the instant motion should be **DENIED** because Plaintiffs have alleged facts which, taken as true, show a more than a speculative basis for both their fiduciary duty and fraud claims.

Dated: November 17, 2022.

<div style="margin-left: 40%;">

Respectfully submitted,

**HASelect Medical Receivables Litigation Finance Fund International, SP** and **Griffin Asset Management, LLC**, *Plaintiffs*

By:      /s/*Thomas C. Cronin*
         *One of Their Attorneys*

</div>

Thomas C. Cronin
*tcc@cronincoltd.com*
Leland W. Hutchinson
*lwhutch@gmail.com*
Cronin & Co., Ltd.
120 North La Salle Street, 20th Floor
Chicago, IL 60602
312.500.2100