UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HASELECT MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL, SP and GRIFFIN ASSET MANAGEMENT, LLC, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 22-cv-4269 |
| v. | ) ) ) | Judge Blakey |
| SIMON HENRY CLARK, an Individual | ) ) ) ) | Magistrate Judge Fuentes |
| Defendant. | ) | |

**SIMON HENRY CLARK'S REPLY IN SUPPORT OF HIS
RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**INTRODUCTION**

Plaintiffs' Complaint alleges fraud, and that Mr. Clark broke his duty of care as an employee by "aiding and abetting" fraud. Therefore, the Federal Rules require Plaintiffs' pleadings to satisfy FRCP Rule 9(b)'s heightened pleading standards. Unlike the Rule 8 notice pleading standard and contrary to Plaintiffs' assertions throughout their brief, the heightened pleading standard of Rule 9(b) is not an issue of notice. Rule 9(b)'s heightened pleading standard is a response to the great reputational harm caused by allegations of fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (*quoting Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999)). Plaintiffs claiming fraud **must** do more pre-complaint investigation to assure the claim is responsible and supported, and not what it is here – defamatory and extortionate. *Id.* By failing to allege a claim that satisfies Rule 9(b), and because the claims rest on an implausible conclusion that Mr. Clark had any reason to believe Infinity and FTM were in breach of their agreements, this Court should grant this Motion to Dismiss.

Plaintiffs' pleadings[1] plainly state that Mr. Clark: (i) negotiated an enforceable contract with Infinity, wherein Infinity explicitly represented that the value of the accounts receivable purchased were at least 200 percent of the purchase cost; (ii) ensured HASelect had a perfected security interest in the accounts receivable; (iii) entered HASelect into a sub-advisory agreement with FTM, wherein FTM represented it would act in a professional manner and in the best interest of GAM and HASelect; and (iv) obtained verification from FTM of Infinity's representations. Mr. Clark is not liable for the subsequent breaches of these agreements by FTM and Infinity. Plaintiffs do not allege any facts to suggest that while employed by GAM, Mr. Clark had any inkling Infinity

---

[1] Although Plaintiffs repeatedly assert in their Response that Mr. Clark "admits" various allegations in their Complaint, this is a Rule 12(b)(6) motion and – obviously – allegations not challenged in this motion are not deemed admitted.

1

or FTM breached those agreements. Therefore, Plaintiffs fail to state a claim upon which relief can be granted for fraud or breach of fiduciary duty, and their Complaint must be dismissed.

## ARGUMENT

### I. The Claim for Fraud Must be Dismissed Because Mr. Clark Did Not Know about Infinity or FTM's Material Misrepresentations.

Prior to pleading fraud, a party must thoroughly investigate the facts and provide in its pleadings a thorough recital of facts that support the claim. *Borsellino,* 477 F.3d at 507. Plaintiffs fail to meet this standard because there is no plausible basis for the assertion that Mr. Clark knew that Infinity and FTM had lied to him. Instead, Plaintiffs assert that Mr. Clark entered into an enforceable contractual relationship with Infinity and a second enforceable contract that obligated a third party, FTM, to verify that Infinity's reported value of its accounts receivable was correct. (Dkt. 1 ¶¶ 26-28). Mr. Clark obtained those assurances for Plaintiffs' benefit. (Dkt. 1 ¶¶ 24-25, 49). Neither Mr. Clark nor Plaintiffs believed, or had reason to believe, during the relevant time that Infinity and FTM misrepresented the value of Infinity's accounts receivable. In fact, it would be over a year after Mr. Clark left before there was any reason to believe that the numbers were inadequate. (*Compare* Dkt. 1 ¶ 10 *with* Dkt. 1 ¶ 33). This does not meet any legal standard for pleading fraud, and thus the claim should be dismissed.

A properly pled claim for common-law fraud requires the plaintiff to establish that there was "knowledge by the defendant that a statement he has made is false." *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1165 (N.D. Ill. May 27, 2022) (*citing Ollivier v. Alden*, 262 Ill. App. 3d 190, 198 (2d Dist. 1994)). Indeed, for fraud, "[p]laintiffs must provide more than conclusory allegations to satisfy [R]ule 9(b)'s requirement that circumstances of the fraud be pleaded with particularity." *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990). In the context of pleading defendant's knowledge, plaintiff must plead "a basis for believing plaintiffs

could prove scienter." *Id.*

Not only do Plaintiffs fail to allege any basis for the idea that Mr. Clark knew of Infinity's misconduct and misrepresentations, Plaintiffs' own argument in response underscores the inadequacy of their own pleadings. Plaintiffs first argue that Mr. Clark's state of mind was adequately plead because they allege that "Clark knowingly allowed HASelect to advance funding to Infinity for the purchase of accounts receivable based on false representations by Infinity." (Dkt. 21, p. 11; citing Dkt. 1 ¶ 48). Read plainly, the allegation in paragraph 48 is that "Clark knowingly allowed HASelect to advance funding to Infinity" and that decision was "based on false representations by Infinity," **not** that Mr. Clark **knew** the representations were false. Even when adopting Plaintiffs' proposed revision – that Clark knowingly allowed HASelect to advance funding despite knowing of Infinity's false representations – the claim remains conclusory and insufficient to sustain a cause of action for fraud because there is no basis for concluding Mr. Clark actually knew the falsity of the representations. *See e.g. Robin*, 915 F.2d at 1127 ("assertions that Arthur Young had knowledge that the prospectus was false and misleading…are nothing more than rote conclusions."); *Rudy*, 583 F. Supp. 3d at 1165-66 (allegation that defendant knew the label on its own products was inaccurate is conclusory and inadequate to plead fraud).

The only other allegation that Plaintiffs cite to suggest they meet the pleading standard is the conclusory allegation that, "[o]n information and belief, Defendant Clark knew or, through the exercise or reasonable care, should have known, of these wrongful acts by Infinity and FTM…" (Dkt. 21, p. 11; citing Dkt. 1 ¶ 51). Yet fraud cannot be based on allegations made on information and belief, unless they are facts inaccessible to the plaintiff. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992). When such necessary facts are inaccessible to the plaintiff, the plaintiff must provide grounds for their suspicion. *Cincinnati Life Ins. Co. v. Beyrer*,

3

722 F.3d 939, 948 (7th Cir. 2013). Here, Plaintiffs do not allege any basis for Mr. Clark's knowledge, or any reason that his knowledge cannot be determined,[2] nor do Plaintiffs provide any grounds to suspect Mr. Clark knew of the fraud.

The pleadings fail to provide any basis for believing Plaintiffs could prove scienter, but also demonstrate that it is implausible that Mr. Clark had any knowledge that Infinity misrepresented material facts. Mr. Clark contracted with FTM to review the accuracy of Infinity's representations. (Dkt. 1 ¶ 43). FTM verified the accuracy of Infinity's statements. *Id.* Plaintiffs further allege that Mr. Clark began using Infinity at his new job with Tecumseh following his resignation at GAM. (Dkt. 1 ¶ 70). No one had any concerns about Infinity until, at the earliest, fifteen months **after** Mr. Clark left GAM (Dkt. 1 ¶ 33). This lack of concern extended to Mr. Clark who, according to Plaintiffs' allegations, negotiated another deal with Infinity after he left his employment with GAM. (Dkt. 1 ¶¶ 70-72). Further, Infinity's misrepresentations were only disclosed in bankruptcy proceedings. (Dkt. 1 ¶¶ 35-37). Here, the factual allegations make it implausible that Mr. Clark knew Infinity and FTM were lying to him, and there is no basis for the conclusion he knew of the misrepresentations. Plaintiffs' position otherwise is simply an invitation for this Court to permit claims of fraud against an employee anytime the employee is themselves defrauded. This massive expansion of common law fraud should not be permitted, and Count II should be dismissed with prejudice.

    II.    <u>**Plaintiffs Also Fail to State a Claim for Breach of Fiduciary Duty**</u>

Plaintiffs acknowledge that the "key question here is whether Clark could have discovered Infinity's wrongdoing." (Dkt. 21, p. 6). Instead of citing any factual allegations that provide a basis

---

[2] Notably, Plaintiffs have possession of both Mr. Clark's e-mails from his employment with them (Dkt. 1 ¶ 69) and Plaintiffs have all of Infinity's correspondence (See Order Approving Sale at 9, In re Infinity Capital Mgmt, Inc. d/b/a Infinity Health Connections, No. 21-14486 (D. Nev. Bankr. Feb. 11, 2022), ECF No. 184 (granting HASelect Infinity's books and records).

4

for the conclusion that Clark could have discovered the fraud, Plaintiffs simply conclude that Mr. Clark "knew of Infinity's wrongdoing and let it happen." *Id.* Conclusory statements, however, are not a basis for believing that Mr. Clark knew or had reason to know of Infinity's misconduct. While Rule 9(b) applies, under either Rule 9(b) or the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, Plaintiffs fail to support their assertion that Mr. Clark knew Infinity or FTM breached the contracts, and Count I should be dismissed.

### A. Rule 9(b) Applies and Count I Should be Dismissed.

**As set forth in detail hereinabove,** Plaintiffs have not properly pled a breach of a fiduciary duty arising from fraud. Accordingly, they argue that this Court should not apply the appropriate standard. Rule 9(b) applies to any breach of fiduciary duty claim arise out of an alleged fraud. *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966). Both the Complaint and Plaintiffs' Response to this Motion demonstrate that the breach of fiduciary duty claims are grounded in fraud and, therefore, Rule 9 applies. *See Kennedy v. Venrock Assoc.*, 348 F.3d 584, 594 (7th Cir. 2003) (arguments in opposing party's brief can further shed light on whether the complaint is grounded in fraud). Tellingly, Plaintiffs cite the same allegations to support both their fraud and breach of fiduciary duty claims. (*Compare* Dkt. 21 p. 3 *with* Dkt. 21 p. 11).

As Plaintiffs allege, "Defendant Clark aided, abetted, and colluded with Infinity, FTM and their affiliates to cause HASelect to fund the purchase of accounts receivable by Infinity." (Dkt. 21, p. 6; citing Dkt. 1 ¶ 51). To support their breach of fiduciary duty claim, Plaintiffs cite the allegations in paragraph 48 that Clark "knowingly allowed HASelect to advance funding to Infinity…based on false representations by Infinity." These are allegations that Mr. Clark committed fraud, and the fact that Plaintiffs rely on the identical allegations in their complaint to sustain their fraud claim is no coincidence. Plaintiffs' breach of fiduciary duty of care claim arises

5

from fraud and is subject to the heightened pleading standard of Rule 9(b). *See Ferenc v. Brenner*, 927 F. Supp. 2d 537, 547-48 (N.D. Ill. 2013) (breach of fiduciary duty claim was subject to Rule 9(b), as plaintiff was essentially alleging defendants had siphoned money from the company on the pretense that they were providing valuable services, which was in line with fraud and not simple mismanagement).

Subject to Rule 9(b), the allegations are conclusory and cannot support Count I (Breach of Fiduciary Duties). **Plaintiffs make no argument otherwise**. In addition to the lack of support for the conclusions regarding Mr. Clark's knowledge, discussed in Section II below, Plaintiffs fail to explain **how** Mr. Clark was supposed to discover the misconduct of a third party. *See Desmond v. Taxi Affiliation Serv., Inc.*, 344 F. Supp. 3d 915, 921-22 (N.D. Ill. 2018) (parties must plead who, what, when, where, and how to satisfy Rule 9(b)). Plaintiffs plead Mr. Clark contracted with a third party, FTM, to verify Infinity's representations of the value of the accounts receivable. (Dkt. 1 ¶¶ 24-25). FTM represented to Mr. Clark that Infinity's representations were accurate. (Dkt. 1 ¶ 43). According to the pleadings, "In May of 2021, Infinity **began** exhibiting a pattern of willful noncompliance with its reporting requirements." (Dkt. 1 ¶ 33). This factual allegation, fifteen months after Mr. Clark left GAM, is the first instance in the record of a fact that suggests something was amiss. Indeed, Plaintiffs plead that Infinity's fraud was not discovered until *after* Infinity filed for bankruptcy – fifteen months after Mr. Clark left GAM. (Dkt. 1 ¶¶ 35-38). Plaintiffs make no effort to explain what special powers of deduction Mr. Clark held which made him uniquely capable of discovering the fraud. *See Ferenc*, 927 F. Supp. 2d at 548 (dismissing breach of fiduciary duty claim because vague allegations of defendants' impropriety did not pass muster under Rule 9(b)).

### B. Plaintiffs' Claim is too Implausible to be Cognizable.

Even if Rule 9(b) did not apply, a claim for relief must be plausible. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Here, the allegations are implausible.

Plaintiffs rely heavily on *FDIC ex. Re. Wheatland Bank v. Spangler*, 836 F. Supp. 2d 778 (N.D. Ill. 2011), for the proposition that a bank director can be held liable for granting improvident loans. As the District Court reasoned in *Spangler*, the allegations "took place in the face of notice that trouble was brewing." *Id.* at 787. This is because the loans at issue were granted although the defendants had been put on notice of the potential pitfalls and had received frequent regulatory warnings regarding the loans. *Id.* at 787-88. As Plaintiffs plead, there were no warnings here until long after Mr. Clark left GAM. (Dkt. 1 ¶¶ 35-38). Absent any allegations that plausibly explain how Mr. Clark would have any inkling that FTM or Infinity were breaching their contracts, there is no plausible basis to conclude the law required him to do more.

### C. Plaintiffs' Allegations Show Mr. Clark Acted Diligently.

*Spangler* merely highlights the implausibility of Plaintiffs' claims. The applicable standard of care for an alleged breach of fiduciary duty is that which ordinarily prudent and diligent persons would exercise under similar circumstances, and the standard requires that the court review all of the circumstances of the case. *Id.* at 786 (*quoting FDIC v. Bierman*, 2 F.3d 1424, 1427 (7th Cir. 1993)). Here, Plaintiffs allege that Mr. Clark negotiated an enforceable contract with Infinity, wherein Infinity explicitly represented that the value of the accounts receivable purchased were at least 200 percent of the purchase cost. (Dkt. 1 ¶¶ 26, 28). Plaintiffs allege that Mr. Clark ensured HASelect had a perfected security interest in the accounts receivable. (Dkt. 1 ¶ 29). Plaintiffs also

7

allege that Mr. Clark entered HASelect into a sub-advisory agreement with FTM, wherein FTM represented it would act in a professional manner and in the best interest of GAM and HASelect (Dkt. 1 ¶ 25). Plaintiffs further allege that Mr. Clark obtained verification from FTM of Infinity's representations. (Dkt. 1 ¶ 43). Plaintiffs even plead that Mr. Clark was so happy with Infinity that he helped his new employer negotiate a deal with Infinity. (Dkt. 1 ¶ 70).

What Plaintiffs **do not** allege is any plausible basis for a prudent person to investigate whether or not Infinity and FTM were defrauding HASelect until the allegations that concerns arose fifteen months **after** Mr. Clark left his employment with HASelect. (Dkt. ¶ 33). In response, Plaintiffs merely argue that Mr. Clark was responsible for monitoring and maintaining the collateral base. (Dkt. 21, p. 6; citing Dkt. 1 ¶ 47). Assuming that is true – which we must for purposes of a Rule 12(b)(6) motion – the allegations do not provide a plausible basis for the claim that Mr. Clark needed to do more than obtain contractually binding representations from two different parties that Infinity's numbers were accurate.

Lacking any facts to support their contention, Plaintiffs argue that in hindsight, i.e. upon review of the bankruptcy filing, Mr. Clark must have known better. The ultimate outcome of the investment, however, is not the standard. *DeBruyne v. The Equitable Life Assurance Soc. of the US*, 920 F. 2d 457, 465 (7th Cir. 1990). "The fiduciary duty of care requires prudence, not prescience." *Id.* at 465. Here, Plaintiffs lack any allegations, except hindsight, to suggest Mr. Clark's actions were imprudent, and the claim should be dismissed.

### D.     Plaintiffs Fail to Allege a Viable Breach of the Duty of Loyalty

As Plaintiffs acknowledge repeatedly in their own response to this Motion, their claim for a breach of the duty of loyalty is even weaker than its claim for a breach of the duty of care. This is for good reason. Plaintiffs find no case law to rebut the simple fact that the duty of loyalty ends

8

with employment, and that each and every one of the alleged violations of that duty occurred after Mr. Clark's employment ended.

The resignation of an employee severs the duty of loyalty. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160 (1st Dist. 1993). Plaintiffs respond to this black letter law by observing that an <u>officer's</u> duty of loyalty does not necessarily terminate. *Id.* at 161. Mr. Clark was an employee, (Dkt. 1 ¶¶ 10, 11, 48, 52, 53, 54, 73, 78), not an officer, so this contention is irrelevant.

Despite knowing that Mr. Clark did not receive any ownership in Tecumseh until January 2021, Plaintiffs' counsel continues with the false allegation that Mr. Clark received equity in Tecumseh in August 2019. (*Compare* Dkt. 14-2 *with* Dkt. 21 at p. 8). Plaintiffs argue via footnote that the Amended ADV attached to Mr. Clark's Motion (Dkt. 21-2) should not be considered (Dkt. 21 p. 8). While courts disfavor raising arguments in footnotes and may deem them waived, *Perez v. Quicken Loans, Inc.*, No. 19-cv-2072, 2020 WL 1491145, at n. 1 (N.D. Ill. Mar. 27, 2020), the Amended ADV may be considered part of the pleadings because the ADV is attached to the Complaint, is central to the claims, and the Amended ADV is merely a corrected version of the same document. *See Venture Associates v. Zenith Data Systems*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the [p]laintiffs complaint and are central to her claim"). Plaintiffs reference and attach an outdated and incorrect ADV within their Complaint. (Dkt. 1 ¶¶ 63-68; Dkt. 1-1). Given the serious nature of the claims, Plaintiffs have an obligation under Rule 9 to conduct a thorough investigation and under Rule 11 not to advance arguments it knows are untrue. Therefore, instead of ignoring reality, it is appropriate to consider the accurate dates, to the extent those dates matter.

The issue, however, is largely a red herring. Plaintiffs argue that because of the overlap,

they are entitled to an assumption that he had dual loyalties for six months, and therefore breached his duty of loyalty to Plaintiffs. (Dkt. 21, p. 8). Legal precedent instructs otherwise. Illinois law is clear that one may start (and hold ownership in) a competitor company while employed, so long as the employee does not compete with his employer until the employment ends. *Veco Corp.*, 243 Ill App. 3d at 160; *ABC Trans Nat. Transport, Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 683 (1st Dist. 1978). As already noted, there are no allegations of disloyal conduct until after Mr. Clark departed. (*See e.g.* Dkt. 1 ¶ 70 (claiming Clark took actions "almost immediately after"); Dkt 1 ¶ 72 (claiming Mr. Clark acted "following Defendant Clark's resignation…"). Plaintiffs' only response is that *Veco Corp.* prohibits the use of information acquired during the relationship. (Dkt. 21, p. 9; citing *Veco Corp.*, 243 Ill. App. 3d at 161). This is true, but only for officers of a company. *See id.* As noted above, Mr. Clark was not an officer. Plaintiffs plead that Mr. Clark was an employee, none of the allegedly disloyal acts occurred during his employment, and well-established precedent prohibits claims regarding his conduct after his employment. As a result, Plaintiffs ask this Court to treat Mr. Clark as an officer, but they do not plead any facts to support such a conclusion, and therefore, Count I should be dismissed.

### E. There are No Allegations Mr. Clark Used Any Confidential Information.

Plaintiffs conclude that Mr. Clark used two types of information in his new job. Information about the relationship with Infinity and information about Plaintiffs investors. (Dkt. 1 ¶¶ 70, 72-73). As demonstrated in the opening brief, and not rebutted in the response, the relationship with Infinity was not confidential. (*See* Dkt. 14 p. 6-7; Dkt. 14-1). Nor does Infinity plead any basis for concluding that the identity of investors is not subject to the law's general rule that knowledge of business relationships is a general skill that an employee is free to take with them. *See ABC Trans Nat.*, 62 Ill. App. 3d at 683. Therefore, to the extent their allegations rest on

10

the use of confidential information, Count II should be dismissed.

## CONCLUSION

WHEREFORE, Defendant SIMON HENRY CLARK respectfully requests that this Honorable Court dismiss Plaintiffs HA Select Medical Receivables Litigation Finance Fund International, SP and Griffin Asset Management, LLC's Complaint with prejudice, and for any such further relief as this Court deems just and appropriate.

Respectfully submitted,

By: /s/*William D. Patterson*
Counsel for Defendant Simon Henry Clark

William D. Patterson (ARDC: 6294533)
Troy M. Sphar (ARDC: 6278497)
SWANSON, MARTIN & BELL, LLP
330 North Wabash Ave. Suite 3400
Chicago, Illinois 60611
wpatterson@smbtrials.com
tsphar@smbtrials.com
Office: (312) 321-9100
Fax:    (312) 321-0990

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing Defendant Simon Henry Clark's Reply in Support of His Motion to Dismiss Plaintiffs' Complaint was served upon all counsel of record via the Court ECF system, this 25th day of November, 2022.

[✓] Under penalties as provided by law, the undersigned certifies that the statements set forth in this Certificate of Service are true and correct.

                                  /s/*William D. Patterson*