## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HASELECT MEDICAL RECEIVABLES LITIGATION FINANCE INTERNATIONAL, S.P. and GRIFFIN ASSET MANAGEMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br><br><br>SIMON CLARK, an Individual,<br><br>Defendant. | Case No. 22-cv-04269<br><br>Hon. Judge Blakey |

**COUNTER AND THIRD PARTY DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS ALL COUNTER AND THIRD PARTY CLAIMS**

### INTRODUCTION

Each of the five Counterclaims and Third-Party Claims (collectively, the "Claims") brought by Simon Henry Clark ("Clark") must be dismissed for failure to state a viable claim under Fed.R.Civ.P. 8(a) and 12(b)(6).[1] Neither of Clark's fiduciary duty claims (Counts I and V) allege facts showing any fiduciary duty owed by Michael or Debra Griffin to Clark in his individual capacity. Moreover, he lacks standing to bring any fiduciary duty claim since he is now only a dissociated member. The Right of Publicity claim (Count II) fails both under the applicable one year statute of limitations and because facts sufficient to establish the elements of the Illinois Right of Publicity Act ("IRPA") have not been alleged. 765 ILCS 1075, *et. seq.* Clark's Defamation

---

[1] GAM and the Third-Party Defendants recognize that under Fed. R. Civ. P. 12(b)(6) the Court must accept as true all well-pleaded factual allegations. Nonetheless, nothing contained herein should be construed as an admission of any of the allegations contained in Clark's Counterclaim.

claim (Count IV) fails because Clark has not identified the allegedly defamatory statements with sufficient particularity such that Counter-Defendant Griffin Asset Management, LLC ("GAM") could provide a defense and also because Clark has not alleged defamatory conduct within the applicable one year limitations period. Clark's Tortious Interference claim (Count III) fails for lack of facts establishing any viable business expectancy. Each of these claims should be dismissed.

## ARGUMENT

**I. CLARK'S BREACH OF FIDUCIARY DUTY CLAIMS BOTH FAIL BECAUSE HE HAS ALLEGED NO FIDUCIARY DUTY OWED TO HIMSELF AND BECAUSE HE NO LONGER HAS STANDING AS A MEMBER TO BRING SUCH CLAIMS.**

Clark bases his fiduciary duty claim against Michael Griffin on duties allegedly arising from the GAM operating agreement ("GAM Agreement"), a copy of which is attached to the counter and third party claims.[2] The GAM Agreement expressly provides that the GAM Manager (Michael Griffin) owes no fiduciary duty of care to members, such as Clark:

> The Members hereby acknowledge and agree that the Managers and officers shall have no fiduciary duty of care except as to obligations expressly set forth in this Agreement.

CClaim Ex. B, Art. VIII, Sec. VIII.1. That agreement also describes the Manager's very limited duty to GAM:

> A Manager's and officers' duty of care in the discharge of his or her duties to the Company is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law which results or shall have resulted in material loss or injury to the Property or operations of the Company.

---

[2] This Court, of course, may fully consider the attachments to the Claims under Rule 12 without having to convert this motion to one for summary judgment. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) ("In deciding a Rule 12(b)(6) motion, the court may also consider documents attached to the pleading without converting the motion into one for summary judgment. *See* Fed.R.Civ.P. 10(c).).

*Ibid.* That sentence describes Michael Griffin's duty to GAM only. Any claim for breach of that duty must be brought derivatively on behalf of the company. No member may bring such a claim in his individual capacity.

Clark appears to base his fiduciary duty claims on the duties imposed by law on the officers and directors of corporations. GAM, however, is not a corporation. No such duties apply in the LLC context. Illinois law permits an LLC such as GAM "to direct themselves as they see fit" according to their Operating Agreements. *800 South Wells Commercial LLC v. Cadden*, 2018 IL App. (1st) 162882, ¶ 37 (common law corporate fiduciary duties have no application to a manager-managed LLC). The Illinois LLC Act (the "Act") specifically permits a manager-managed LLC, such as GAM, to limit fiduciary duties owed to members. 805 ILCS 180/15-5(a) ("an operating agreement may modify any provision or provisions of this Act governing relations among the members, managers, and company"). Fiduciary duties normally imposed on corporate officers and directors by common law are simply not relevant to LLCs such as GAM:

> Undoubtedly, the Act governs here, not any common-law considerations, since the Act speaks directly to who, and who does not, owe fiduciary duties in the particular and specific context of manager-managed limited liability companies. [Citation omitted.] While an officer of a corporation may well be tagged with fiduciary duties, our legislature has created limited liability companies and given them the power, through the Act and in conjunction with an operating agreement and other documents, to direct themselves as they see fit.

*Cadden*, ¶ 37.

Clark has failed to allege facts showing that he was owed fiduciary duties under the rules set forth in the GAM Agreement that he signed either by Michael Griffin (be reason of being GAM's Manager) or by Debra Griffin (as a mere GAM employee). This is especially true of claims against Debra Griffin, who is not alleged to have ever acted as a Manager or officer of GAM. *See Cadden*, ¶ 41 ("it is obvious that plaintiff's claim that defendant owed it fiduciary duties by virtue of his title as vice president inherently fails").

Moreover, Clark cannot allege any set of facts that would sustain a fiduciary duty claim because he is no longer a member of GAM. The GAM Agreement provides for automatic dissociation of a Class B and Class C member, such as Clark, when that member's relationship with GAM ceases for any reason:

> (b) A Class B or Class C Member shall be involuntarily Disassociated from the Company upon the occurrence of any of the following events:
>
> * * *
>
> (5) the Class B or C Member ceases to be employed or engaged by the Company, for any reason;
>
> * * *
>
> (c) Upon a Class B/C Member's Dissociation from the Company as set forth in Section 10.6(b), the Dissociated Member shall only hold the Economic Rights with respect to his or her Class B Interest or Class C Interest, as applicable.

CClaim, Ex. B, Article X.6(b)(5) and (c). Because Clark has judicially admitted that he "resigned his position" with GAM "on February 20, 2020", as a matter of law, he is no longer a GAM member. CClaim, ¶ 64.

The Illinois Courts have held that, under section 15-20 of the Act, only members have standing to assert a claim for breach of fiduciary duty (or any other legal or equitable claim) against an LLC, its managers, or its other members. *Doherty v. Country Faire Conversion, LLC*, 2020 IL App. (1st) 192385, ¶¶ 42-47 (only LLC member could bring fiduciary duty claim; transferee of interest in LLC lacked standing). *Accord*, *Baghdadi v. General Mediterranean Holding S.A, Spf.*, 2023 WL 1779773, 8 (N.D. Ill. Feb. 6, 2023) ("Illinois law forecloses a non-member distributional interest holder from pursuing a breach of fiduciary duty claim under the LLC Act").

The plaintiff in *Doherty*, who had purchased an LLC interest without the consent of the other members, owned only an economic and not a membership interest because the other members had not consented to the plaintiff's admission as a member. Clark is in the same position

– the owner of only an economic interest – because the GAM Agreement limits membership to those whose actively working for GAM and he has ceased to do so. The Illinois legislature passed the LLC Act to permit Illinois business the freedom to do things like requiring that only active employees may be members. Because Clark lost his rights as a member of GAM when he chose to sever his relationship in February, 2020, he now has no standing to assert either of his fiduciary duty claims.

As such, both Counts I and V should be dismissed under Fed.R.Civ.P. 12(b)(6). Because there is no possibility that repleading could remedy the defects set forth above, that dismissal should be with prejudice.

## II. CLARK'S RIGHT OF PUBLICITY CLAIM FAILS ON BOTH TIMELINESS AND SUBSTANTIVE GROUNDS.

Count II appears to allege a common law "right of publicity" claim. Illinois has not recognized such a claim in over 24 years since the IRPA supplanted such tort claims with a statutory action. *Trannel v. Prarie Ridge Media, Inc.*, 2013 IL App (2d) 120725, ¶ 14 ("Effective January 1, 1999, the common-law tort of appropriation of one's likeness, also sometimes referred to as the right of publicity, ceased to exist in Illinois, because the Act completely replaced it."). Count II fails for the simple reason that Clark has not even attempted to allege facts establishing the necessary elements of an IRPA claim.

In addition, Illinois courts recognize that an IRPA claim is governed by the one year statute of limitations for privacy actions. 735 ILCS 5/13-201 ("Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued."); *Blair v. Nevada Landing Partnership*, 369 Ill.App.3d 318, 323 (2d Dist. 2006) (because "the Right of Publicity Act completely supplanted the common-law tort of appropriation of likeness (765 ILCS 1075/60 (West 2002)), we find applicable the one-year statute of limitations

that pertained to the common-law tort."). *Accord*, *Martin v. Wendy's Intern'l., Inc.,* 2017 WL 1545684, 3 (N.D. Ill. Apr. 28, 2017) ("The one-year statute of limitations provided by 735 ILCS 5/13-201 applies to '[a]ctions for ... publication of matter violating the right of privacy," which included actions for appropriation of likeness under the common law, as well as actions for the other common law invasion of privacy torts involving wrongful publication.'").

At the time of Clark's resignation on February 20, 2020, CClaim, ¶ 64, Clark clearly knew his name was used on the most recently filed Form ADV. To the extent Clark has any cognizable claim here, the statute of limitation would have inherently begun to run the moment he submitted his resignation letter. Moreover, Clark's Right of Publicity action fails because he has alleged no facts showing any wrongful conduct within the last year. Relation back has no application to this limitations analysis because Clark's IRPA claim is a new and distinct one based on different facts than are stated in Plaintiffs' complaint. *PTS Consulting Services, LLC v. Tcode Inc.*, 2022 WL 4386682, *4 (N.D. Ill. Sep. 22, 2022) ("Both federal and Illinois law recognize that relation back will be appropriate where a party seeks to add a new theory to a set of previously alleged facts and inappropriate where the amended pleading states an entirely new and distinct claim for relief based on completely different facts."). As such, the Count II should be dismissed with prejudice as it was clearly brought well outside the applicable limitations period.

Further, in order to state a viable IRPA claim, Clark must allege conduct by GAM that both violates the IRPA and occurred after June 13, 2022, a date more than two years after his resignation from GAM. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. * * * Threadbare recitals of the elements of a cause of action, supported by mere

6

conclusory statements, do not suffice."); *Taha v. Intern'l. Brotherhood of Teamsters, Local 781*, 947 Fed.3d 464, 469 (7th Cir. 2020) (*Quoting Iqbal*: "When a complaint's facts 'do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'"); *Adams v. City of Indianapolis*, 749 F.3d 728, 729 (7th Cir. 2014) ("the point is that it is necessary to give the defendants notice of the claims against them, not that giving the defendants notice is sufficient to state a claim. By emphasizing a plausibility requirement, Twombly and Iqbal obviously require more than mere notice.").

Yet threadbare elements and conclusions are literally all that Clark offers. The supposed misappropriation of Clark's identity occurred when GAM allegedly published his name as part of a form ADV and then "used" the form at an unspecified date "as part of their pitch for additional investors." CClaim, ¶¶ 81-83. It should be noted that the Form ADV that Clark refers to is *not* a marketing document. Rather, it is a disclosure document legally required by the Securities and Exchange Commission as part of application process to be a registered investment advisor as well as for regulatory purposes. *See* 15 U.S.C. §§ 80b-3; 80b-4.[3] The IRPA only prohibits the use of a person's name for "commercial purposes," which means the "public use" or "holding out" of an individual's identity on or in connection with the offering for sale or sale of a product, merchandise, goods, or services." *Trannel*, 2013 IL App. (2d) 120725, ¶ 14. Clark claims that his name was used to as part of an effort to secure investments, not to sell products or services. CClaim, ¶ 93. He does not allege facts showing that these investments constituted the sale of

---

[3] "Sections 203 and 204 of the Advisers Act [15 U.S.C. §§ 80b-3 and 80b-4] authorize the SEC to collect the information required by Form ADV. The SEC collects the information for regulatory purposes, such as deciding whether to grant registration. Filing Form ADV is mandatory for advisers who are required to register with the SEC and for *exempt reporting advisers*. The SEC maintains the information submitted on this form and makes it publicly available." https://www.sec.gov/files/formadv.pdf (*emphasis in original*).

goods or services within the meaning of the IRPA. The IRPA specifically exempts use of his identity for "non-commercial purposes." 765 ILCS 1075/35(b)(2). As noted, the Form ADV is a legally required disclosure to the SEC, who in turn publicized the data. Clark fails to allege how this legally required document that is publicly available was used for "commercial purposes" under IRPA.[4]

Clark also does not allege facts showing his lack of consent. When Clark joined GAM as a member and was working for GAM, he was well aware that the nature of GAM's business involved raising investments regulated by the federal securities laws and that his name would have to be included by GAM in Form ADV disclosures. Clark's signature on the GAM Agreement operated as his written consent to GAM using his name in that fashion. Notably, Clark does not complain about such use of his name when he was actually associated with GAM. His sole complaint is that GAM's ADV Forms continued to identify him for some time period after he severed ties with GAM. *See* CClaim, ¶ 92 ("Clark did not provide Griffin or GAM written consent to use his name on any ADV after his departure from GAM and HASelect."). Securities disclosure documents, however, are designed to disclose historic facts. Clark alleges no facts showing that the continued inclusion of his name in GAM's ADV's for a period of time after his departure was not a disclosure statement required under the securities laws or was in any way false or misleading. These deficiencies warrant at least the dismissal of Count II.

---

[4] *Assuming arguendo* that Form ADV is a marketing document, as alleged by Clark, it should be noted that his inclusion on Tecumseh Alternative, LLC's Form ADV clearly demonstrates Clark's involvement in marketing for GAM's competitor and a violation of Clark's duties to GAM. *See* Complaint ¶¶ 63-67; Exhibit A. *See also* CClaim Exhibit 2, §VI.6 (Conflict of Interest; Non-Compete), §VI.7 (Confidentiality).

### III. CLARK'S DEFAMATION CLAIM FAILS ON BOTH TIMELINESS AND SUBSTANTIVE GROUNDS.

Clark alleges that GAM made statements impugning his "character and the circumstances surrounding his departure from HedgeACT." CClaim, ¶ 106. This allegation is wholly conclusory, and is the only one on the subject. *See* CClaim, ¶ 65 ("spread misinformation"). No allegation sets forth the substance of any single statement that Clark now claims is defamatory. No allegation establishes the number of such statements or to whom they were made. No allegation establishes whether any statements about Clark were statements of fact or opinion. No allegation establishes whether any alleged defamatory statement may constitute defamation *per se* or *per quod*. Defamation simply cannot be alleged in such generalities. *Britt Interactive, LLC v. A3 Media, LLC*, 2017 WL 2118513,*5 (S.D. Ind. May 5, 2017) (defamation claim dismissed where "Counterclaimants failed to state 'the number of speakers or statements made, to whom the statements were made, or when and in what context the statements were made.' [Citation omitted]. Without providing the literal statements or sufficient context for the statements, the Counterclaimants' defamation claim is insufficiently pled…"). *Accord*, *Flentye v. Kathrein*, 485 F.Supp.2d 903, 919 (N.D.Ill. 2007) ("To bring a defamation claim, Plaintiffs are required to plead the alleged defamatory words published or spoken by the defendant, but need not allege the defamatory language verbatim."). "Courts have continued to require that libel be pleaded with some specificity." *Betten v. Citibank, F.S.B.*, 1995 WL 387802, *3 (N.D. Ill. Jun. 28, 1995) (collecting cases: "the purpose of that requirement is to allow the defendant to respond appropriately, which includes being able to determine whether the language is defamatory."). The level of generality employed by Clark, which alleges no specific statement and complains only of "spreading misinformation" and impugning his "character and the circumstances" of his departure

from GAM is wholly insufficient for GAM to determine what statements made to whom are supposedly defamatory.

Moreover, no allegation establishes that any supposedly defamatory statement was published for the first time during the last year. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill.App.3d 62, 73 (1st Dist. 2010) ("The statute of limitations in Illinois for a claim for defamation is one year from when the cause of action accrued. 735 ILCS 5/13–201 (West 2006). Under Illinois law, the cause of action for defamation accrues, and the statute of limitations begins to run, on the date of publication of the defamatory material."). Rather, the only allegation on the matter, specifically states that Clark learned of these statements "in or around March 2020." CClaim ¶ 65. Clark's action on any prior statements is time barred. Based on these deficiencies, Count IV should, at minimum, be dismissed.

IV. **CLARK'S TORTIOUS INTERFERENCE CLAIM FAILS BECAUSE HE HAS FAILED TO ALLEGE EITHER AN ACTIONABLE EXPECTANCY OR NON-PRIVILEGED CONDUCT.**

Clark's tortious interference claim fails because it does not allege facts showing any actionable expectancy. Clark alleges that he "had a reasonable expectancy of continued business with Three Bell." CCLaim, ¶ 100. This allegation, however, is wholly conclusory. Earlier, Clark alleges that he developed a relationship with Three Bell principals that enabled him to "build an asset base for GAM." CClaim, ¶¶ 15-19. Clark does not allege that he was ever working on any business transaction with Three Bell for his own benefit. While Clark was a member of GAM and working for it, he had both a duty of loyalty and a covenant not to compete. CClaim, Ex. B., Art. 6, Sec. 6.6(b)(3).

As a matter of law, a plaintiff claiming tortious interference with a business expectancy must show actual negotiations leading towards a potential sale and not just the mere hope of receiving a future offer. *Maroon Society v. Unison Consulting, Inc.*, 2020 WL 5076688, *9 (N.D.,

Ill. Aug. 26, 2020) ("To establish an actionable expectancy, a plaintiff must allege more than that it was involved in negotiations with a third party regarding a potential business relationship."); *Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*, 947 F.Supp. 347, 358 (N.D. Ill. 1996) ("The hope of receiving a[n] ... offer is not a sufficient expectancy."). *See also Davidson v. Schneider*, 2014 WL 656780, at *6 (N.D. Ill. Feb. 20, 2014) (plaintiff did not establish sufficient business expectancy where it could not identify any individual customer with whom it had begun negotiations toward a potential sale). Because Clark has failed to allege any negotiations with Three Bell on his own behalf after his departure from GAM, he has failed to allege any business expectancy that the law would protect.

In addition, Clark's allegations about the supposedly interfering conduct all concern actions taken by Michael Griffin acting on behalf of GAM. *See* CClaim, ¶ 56 ("Michael Griffin began to undermine the relationship with Three Bell Capital"); ¶ 59 ("Michael Griffin had unilaterally increased the performance fees several times. Further straining the relationship with Three Bell."); ¶ 61 ("This grossly negligent management of the relationship led to the deterioration of the relationship with Three Bell"). The import of these allegations is that all of the conduct which allegedly poisoned the waters between GAM and Three Bell preventing Clark from later developing a personal relationship was allegedly undertaken by Michael Griffin acting in what he believed were GAM's best interests. Such actions are not tortious. "Illinois recognizes a conditional privilege for corporate officers—corporate officers may interfere with a contract where they use business judgment to act on behalf of their corporation." *Webb v. Frawley*, 906 F. 3d 569, 577 (7th Cir. 2018) (interfering actions taken in interests of corporation are privileged). *See also Nation v. Am. Cap., Ltd.,* 682 F.3d 648, 651–52 (7th Cir. 2012) *(citing HPI Health Care Servs.,* 131 Ill.2d, 145, 156 (1989)*)* (same). Clark's interference claim separately fails because he

11

has alleged no fact showing that Michael Griffin's alleged actions do not fall within the recognized privilege of acting towards Three Bell in what Griffin believed were GAM's best interests.

Finally, Clark alleges that by designating Three Bell as an "in-house account" it deprived Clark of "additional equity in GAM" as well as certain fees allegedly owed to Clark. CClaim ¶¶ 56, 102. Clark, however, has not alleged breach of any contract with GAM requiring additional compensation. Moreover, earlier Clark states that former employee Chadwick Meyer[5] "had a prior relationship" with Will Martin and Three Bell. CClaim ¶ 15. Per Clark's own allegation this "account" was not originated by Clark. Irrespective of whether Michael Griffin designated it an "in-house account" or not, it is apparent from Clark's own allegation clearly demonstrate that he joined GAM *after* the Three Bell relationship was already established. As such, Clark should not have had any expectancy to benefit from this relationship (unless he was actively seeking to usurp opportunity from GAM).

Based on the allegations now made, Clark has failed to state a tortious interference claim. Count III should be dismissed.

## Conclusion

For the above stated reasons, all five of Clark's Claims should be dismissed. Each of Clark's two fiduciary duty claims should be dismissed with prejudice. Likewise, since Counts II and IV are clearly time barred, they should be dismissed with prejudice as well.

---

[5] While Meyer is presented as a "member" of GAM, as evidenced by the Clark's own Exhibit 2, Meyer had not executed GAM's operating agreement and therefore was not a member of the company.

12

Dated: June 30, 2023

                                          Respectfully submitted,

                                          **Griffin Asset Management, LLC, Michael Griffin and Debra Griffin**
                                          *Counter and Third Party Defendants*

                                          By:  <u>/s/ *Thomas C. Cronin*</u>
                                                     One of their Attorneys

Thomas C. Cronin
Leland W. Hutchinson
CRONIN & CO., LTD.
120 North LaSalle Street, 20th Floor
Chicago, Illinois 60602
312.500.2100
tcc@cronincoltd.com
lwh@gmail.com