UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Griffin Asset Management, LLC and HASelect Medical Receivables Litigation Finance Fund International S.P., <br><br> Plaintiffs, <br><br> v. <br><br> Simon Clark, <br><br> Defendant. | Case No. 1:22-CV-4269 <br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

In this diversity case, Plaintiffs Griffin Asset Management, LLC ("GAM") and HASelect Medical Receivables Litigation Finance Fund International S.P. ("HASelect") sue HASelect's former manager, Simon Henry Clark, alleging breach of fiduciary duties (count I) and fraud (count II), *see* [1]. Clark moves under Rule 12(b)(6) to dismiss both claims, [13], and, for the reasons explained more fully below, the Court grants Clark's motion.

**I.    Factual Allegations**[1]

Plaintiff HASelect operates as a financing business, loaning money to entities who purchase medical accounts receivable typically relating to personal injury claims that get paid out when the claims settle. [1] ¶¶ 2, 4. Plaintiff GAM serves as HASelect's investment manager. *Id.* ¶ 3. Defendant Simon Clark worked at GAM

---

[1] The Court draws these facts from the parties' allegations, *see* [1], [35].

from 2017 through February 20, 2020,[2] managing HASelect's lending and other business operations and serving as the primary point of contact with HASelect's borrowers. *Id.* ¶ 10.

Beginning in February 2019, HASelect started lending money to Infinity Capital Management ("Infinity"). *Id.* ¶ 23. Operating under a Master Loan Agreement ("MLA"), HASelect advanced funds to Infinity, which Infinity agreed to use to purchase medical accounts receivable. *Id.* ¶ 26. The MLA obligated Infinity to comply with certain covenants, including an agreement to use advanced funds exclusively for the purchase of accounts receivable; and confirmation that the value of the accounts receivable purchased was at least 200 percent of purchase cost. *Id.* ¶ 28. Defendant Clark was directly responsible for HASelect's due diligence regarding Infinity prior to entering into the MLA and was personally involved in the negotiation of the terms of the MLA with Infinity. *Id.* ¶ 29.

At that same time, HASelect entered into a Sub-Advisory Agreement ("SAA") with FTM Investments, LLC ("FTM"), pursuant to which FTM would serve as a sub-advisor to HASelect and assist HASelect with its business relationship with Infinity. *Id.* ¶ 24. Defendant Clark was directly responsible for HASelect's due diligence regarding FTM prior to entering into the SAA and was personally involved in negotiating the terms of the SAA with FTM. *Id.* ¶ 30.

GAM charged Clark with the responsibility of managing and maintaining HASelect's business with Infinity and with protecting HASelect's rights and interests

---

[2] Clark resigned his position at GAM in February 2020. [1] ¶ 10.

under the MLA by, among other things, monitoring Infinity's use of loan proceeds and requiring that Infinity comply with all material terms of the MLA. *Id.* ¶ 45. According to Plaintiffs, Clark was supposed to monitor and maintain the collateral base for HASelect's loans to Infinity and ensure that such loans remained fully collateralized to protect HASelect against risk of loss in the event that Infinity defaulted on its obligations under the MLA. *Id.* ¶ 47. GAM also charged Clark with the responsibility of managing and maintaining HASelect's business with FTM and with protecting HASelect's rights and interests under the SAA by, among other things, ensuring that FTM continued to act in HASelect's best interest. *Id.* ¶ 46.

From February 2019 through April 2020, HASelect advanced approximately $13.7 million to Infinity. *Id.* ¶ 31. Thereafter, in May of 2021, Infinity began exhibiting a pattern of willful noncompliance with its reporting obligations under the MLA. *Id.* ¶ 33. Ultimately, HASelect placed Infinity in a default under the MLA and initiated legal proceedings, *id.* ¶ 34. On September 14, 2021, Infinity filed for Chapter 7 Bankruptcy protection in Nevada. *Id.* ¶ 35. Following Infinity's bankruptcy filing, HASelect learned that Infinity had breached the MLA by failing to use all loaned funds to purchase accounts receivable; instead, HASelect learned, Infinity and its principals had diverted funds for other uses and for their own uses. *Id.* ¶¶ 38–44.

Plaintiffs allege that Clark knowingly allowed HASelect to advance funds to Infinity for the purchase of accounts receivable based upon false representations by Infinity concerning the purchase cost and value of such accounts receivable. *Id.* ¶ 48. Clark's actions and inactions caused HASelect to fund the acquisition of accounts

3

receivable by Infinity based upon intentionally overstated and artificially inflated purchase costs and values, which resulted in the diversion and misuse of loan proceeds and the severe impairment of the loan's collateral base. *Id.* ¶ 49. Plaintiffs allege that Clark knew, or through the exercise of reasonable care, should have known, that Infinity and FTM were overstating the cost and value of collateral for HASelect's loan and either allowed the misconduct or failed to take appropriate action to stop it. *Id.* ¶ 50.

Clark left GAM in February 2020. But six months before he left, he formed Tecumseh Alternatives, LLC ("Tecumseh"), which was modeled after and designed to compete directly with GAM and HASelect in the same medical receivables financing business as HASelect. *Id.* ¶ 12. Plaintiffs allege that, in the weeks before he resigned from GAM, Clark forwarded confidential information to his own private email account for his own private use and that Tecumseh used such confidential information to compete with GAM for Infinity's business. Ultimately Infinity ended its relationship with HASelect. *Id.* ¶¶69–71.

Plaintiffs sued Clark on August 12, 2022, alleging breach of fiduciary duties (count I) and fraud (count II). *Id.* ¶¶ 76–87. Clark moves to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6), *see* [13].

## II. Applicable Legal Standards

To survive a Rule 12(b)(6) motion, a complaint must not only provide Defendants with fair notice of a claim's basis but must also be "facially" plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the complaint need not include detailed factual allegations, plaintiff's obligation to provide the grounds for his entitlement to relief requires more than mere labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together"; in ruling on the motion, the court asks whether these things could have happened, not whether they did happen. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

On a motion under Rule 12(b)(6), this Court accepts as true all well-pled facts in the complaint and draws all reasonable inferences from those facts in Plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

### III.  Discussion and Analysis

Clark moves to dismiss both of Plaintiffs' claims, and the Court considers the sufficiency of each claim in turn below.

#### A.  Breach of Fiduciary Duties (Count I)

To recover for a breach of fiduciary duty under Illinois law, Plaintiff must establish the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709

(7th Cir. 2010). Employees owe a fiduciary duty to their employer when acting in an official capacity on behalf of the employer. *Lawlor v. N. Am. Corp. of Illinois,* 983 N.E.2d 414, 433 (Ill. 2012). This fiduciary duty consists of three separate duties: due care, loyalty, and good faith. *See F.D.I.C. ex rel. Wheatland Bank v. Spangler*, 836 F. Supp. 2d 778, 791 (N.D. Ill. 2011).

Plaintiffs allege that Clark breached both his fiduciary duty of due care and his fiduciary duty of loyalty. Clark moves to dismiss as to both, arguing that neither is supported in the allegations.

Clark first argues that Plaintiffs' breach of fiduciary duty claim fails because any alleged breach occurred after Clark left GAM. And, to be sure, a fiduciary duty applies only during employment and thus may not be breached based solely upon conduct occurring after the employment relationship terminates. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F. 2d 1263, 1265 (7th Cir. 1992).

Plaintiffs allege that Clark breached his fiduciary duties to HASelect by "engaging in management decisions that were disloyal to HASelect" because they were in Clark's interest and not HASelect's; usurping Plaintiffs' confidential information, including information about HASelect's relationship with Infinity; and engaging in management decisions that lacked due care. [1] ¶ 79. Plaintiffs further allege that Clark breached his fiduciary duties to GAM by engaging in conduct that was disloyal to GAM's interests, including, inter alia, usurping information about HASelect's relationship with Infinity, in breach of his duty of loyalty to GAM; managing HASelect contrary to GAM's stated business plan; and becoming an owner,

6

principal, and control person in Tecumseh, for the purpose of competing with GAM. *Id.* ¶ 80.

Although the allegations lack a precise chronology, they provide the following overall timeline:

- GAM employed Clark "from 2017 through February 20, 2020,"[3] [1] ¶ 10;
- Clark, along with others, formed Tecumseh in August 2019, *id.* ¶ 12;
- Tecumseh competed with GAM after Clark resigned from GAM, *id.* ¶ 70;
- Infinity "began exhibiting a pattern of willful noncompliance" with its contractual obligations in May of 2021, *id.* ¶ 33
- HASelect placed Infinity in default and initiated legal proceedings against Infinity sometime after May of 2021, *id.* ¶ 34;
- Infinity filed for bankruptcy on September 14, 2021, *id.* ¶ 35; and
- HASelect learned that Infinity had misused and diverted loan proceeds sometime after September 14, 2021, *id.* ¶¶ 38–44.

In Illinois, "absent a valid post-employment restrictive covenant, 'once an employee leaves the service of an employer, he ceases to owe that employer a fiduciary duty and is free to compete with his former employer.'" *Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1018 (N.D. Ill. 2014), *aff'd*, 793 F.3d 748 (7th Cir. 2015) (quoting *Jostens, Inc. v. Kauffman*, 842 F.Supp. 352, 354 (C.D.Ill.1994)). The complaint does not allege that Clark actually competed with GAM or HASelect during his employment; nor does it allege that Infinity failed to comply with its contractual

---

[3] The complaint alleges that GAM employed Clark, not HASelect. Plaintiffs do not allege the source of any fiduciary duty owed to HASelect.

obligations during Clark's employment. Nor does the complaint allege that Clark signed any contract that would extend his fiduciary duties beyond his employment. What's more, the complaint alleges that Plaintiffs discovered Infinity's misconduct at least nineteen months after Clark left GAM. Absent facts showing that Clark knew or should have known of the fraud during his employment, or that Clark actually competed with GAM during his employment, the complaint fails to state a claim for breach of any fiduciary duty prior to February 20, 2020, when Clark left GAM.

Despite the allegation that Plaintiffs learned about Infinity's misconduct long after Clark left GAM, they argue that information in Infinity's bankruptcy schedules gives rise to an inference that "a good part of these receivables were purchased on Clark's watch at prices that were well outside Plaintiff's business model and highly detrimental to it." [21] at 4. Plaintiffs present no further allegations to explain this conclusion, and nothing in the complaint suggests that Infinity's misstatements were apparent during Clark's employment. Without more, Plaintiffs' conclusory inference is thus not plausible.

The complaint does not allege that Clark failed to exercise due diligence regarding Infinity or FTM prior to the execution of the loan agreement or allege other ways in which Clark's due diligence was lacking. In fact, the complaint alleges that Infinity only began acting in a wanton and obviously reckless manner in May 2021, fifteen months after Clark left GAM. The complaint does describe a single transaction that occurred in December 2019, which was during Clark's tenure at GAM, and alleges that Infinity and FTM misreported the details of this transaction

8

to Clark; but, beyond alleging in a conclusory manner that Clark "should have known," the complaint fails to allege anything Clark did wrong or what more he could have done to realize the fraud. [1] ¶ 50. Absent such supporting facts, the obvious contrary inference remains—perhaps Infinity concealed and covered its fraud from Clark, just as it did from HASelect and GAM. *See Hughes v. Nw. Univ.*, 63 F.4th 615, 629 (7th Cir. 2023) ("*Twombly* and *Iqbal* establish that an obvious alternative explanation for a defendant's conduct that precludes liability can undermine the claim's plausibility.") In fact, Plaintiffs allege that Infinity and FTM, not Clark, represented and verified the accuracy of the stated accounts. [1] ¶¶ 42–43.

Plaintiffs say it was "Clark's business to investigate, detect, and stop such misconduct by Infinity and FTM by exercising due care." [21] at 4. But nothing in the complaint suggests that the misstatements and fraud would have been discernible in the exercise of due care; the allegations on this point are entirely conclusory. Indeed, although Plaintiffs emphasize that it was Clark's responsibility to investigate the subject loans, a breach of fiduciary duty claim necessarily requires something more or such a claim would lie every time a huckster successfully defrauds a company.

*F.D.I.C. ex rel. Wheatland Bank v. Spangler,* which Plaintiffs cite, actually proves the point. There, the court determined that:

> the amended complaint sets forth each Defendant's position and tenure at Wheatland, *the loans that each Defendant personally approved*, *the reasons why those loans were imprudent at the time of approval*, and the loss suffered by Wheatland from the decision to make the loan. In sum, allegations as to the Loan Committee Defendants' repeated approval of risky loans without obtaining sufficient personal guarantees to protect

9

> Wheatland, without investigating the borrowers or guarantors' financial condition and ability to repay the loans, and without ensuring the basic underwriting required by the Bank's loan policy are sufficient . . .

836 F. Supp. 2d. at 788 (emphasis added). Plaintiffs here, in contrast to *Wheatland*, fail to allege any facts detailing how Clark's care fell short. The complaint in *Wheatland* alleged a list of specific transactions (more than just a single example), along with allegations explaining why the loans should not have been granted *at the time of approval* because of specific violations of company policy known at that time. The present complaint merely concludes that, because Infinity and FTM lied, Clark violated his duty of due care; it offers no facts from which to infer that Clark knew something was amiss when he approved the loans.

Plaintiffs come closest to stating a claim for breach of fiduciary duty when they allege that Clark downloaded "confidential information" while employed, and later used that information at Tecumseh to solicit Infinity. [1] ¶¶ 69, 70. Employees may properly plan, form, and outfit a competitor while still working for their current employer without breaching any fiduciary duty. *Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 796 (2002). But an employee in Illinois breaches his fiduciary duty of loyalty "by taking action, such as downloading or copying employer data, in order to compete with the employer after their employment has ended." *PrimeSource Bldg. Prod., Inc. v. Felten*, No. 16 CV 11468, 2017 WL 11500971, at *8 (N.D. Ill. July 6, 2017) (quoting *First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 837–38 (C.D. Ill. 2014)).

10

Even though a claim based upon downloading confidential information remains theoretically feasible, the claim pled here fails because Plaintiffs did not plead facts to support one. *See, e.g., Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006), aff'd, 521 F.3d 702 (7th Cir. 2008) ("when breach of fiduciary claims allege that defendants failed to act reasonably in light of adverse circumstances created by the fraudulent activity of others, rather than actually participated in the fraud, Rule 8(a) still applies. However, when the alleged breach of the fiduciary is the fraudulent act, Plaintiffs are required to plead with particularity.") (citations omitted). Plaintiffs generally allege that Clark usurped "Plaintiffs' confidential information, including information about HASelect's relationship with Infinity," [1] ¶¶ 79, 80, but they do not say what information Clark usurped or when he usurped it (other than alleging that he did so during his employment). They do not say what information about the relationship was confidential, and, as Clark correctly notes, GAM has not alleged that its relationship with Infinity was proprietary or confidential. The Court thus dismisses Count I.

### B.     Fraud (Count II)

To state a claim of fraud in Illinois, Plaintiffs must allege: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010). Fraud claims (and, as above, claims sounding in fraud)

11

remain subject to the heightened pleading standard prescribed in Federal Rule of Civil Procedure 9(b).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (quoting *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011)). Any "claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Clark moves to dismiss Plaintiffs' fraud claim, arguing that the complaint does not allege any false statement at all, let alone allege such statements with particularity. Just so. The complaint is wholly lacking in detail surrounding Clark's alleged collusion with Infinity and fails to describe any false statements Clark made to Plaintiffs (or, in the absence of a false statement, some other actionable "cheating" fraud). Instead, the complaint merely alleges that Clark omitted material facts about Infinity, [1] ¶¶ 48–51, 83, 85, 86, and alleges generally that Clark defrauded Plaintiff "throughout the employment period." *Id.* at ¶¶ 48, 83. But such allegations fall short of meeting Rule 9(b)'s standard; as illustrated in *AnchorBank*, the complaint must discuss the date and time the fraud occurred, the manner in which false statements were conveyed (such as email, a meeting, etc.), and the content of the statements

12

through which the fraud was perpetrated. 649 F.3d at 615–16. Such facts are absent from Plaintiffs' complaint.

Indeed, Plaintiffs' complaint is not only lacking in requisite details; it also pleads other facts that render Plaintiff's claims of fraud and collusion implausible. *See Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (upholding dismissal of fraud claim because it alleged an implausible motivation to commit fraud). For example, the complaint alleges that Clark, in his subsequent role as a principal investor at Tecumseh, negotiated a new deal with Infinity. If, as alleged, Clark was in cahoots with Infinity and knew of Infinity's duplicity, it remains implausible to think that he would nonetheless have solicited the company as a client and invested his own capital in it. *See Hughes*, 63 F.4th at 629 ("an obvious alternative explanation for a defendant's conduct that precludes liability can undermine the claim's plausibility"). Absent facts to make Plaintiffs' inference plausible, the claim fails, and the Court dismisses Count II.

## IV.    Conclusion

As explained above, the Court grants Clark's motion to dismiss [13]. If Plaintiffs can, consistent with their obligations under Rule 11, amend their complaint to cure the deficiencies discussed above, they may do so by October 21, 2023.

Dated:  September 26, 2023                    Entered:

                                              [signature]
                                              John Robert Blakey
                                              United States District Judge