**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HASELECT MEDICAL RECEIVABLES ) | | |
| LITIGATION FINANCE FUND ) | | |
| INTERNATIONAL, SP and GRIFFIN ) | | |
| ASSET MANAGEMENT, LLC, ) | | |
| ) | | |
| Plaintiffs, ) | No. 22-cv-4269 | |
| ) | | |
| v. ) | Judge Blakey | |
| ) | | |
| ) | | |
| SIMON HENRY CLARK, ) | | |
| an Individual ) | Magistrate Judge Fuentes | |
| ) | | |
| Defendant. ) | | |
| _____) | | |
| ) | | |
| SIMON HENRY CLARK, ) | | |
| ) | | |
| Counter-Plaintiff and ) | | |
| Third-Party Plaintiff, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| GRIFFIN ASSET MANAGEMENT, LLC, ) | | |
| ) | | |
| Counter-Defendant, ) | | |
| ) | | |
| and ) | | |
| ) | | |
| MICHAEL GRIFFIN, ) | | |
| DEBORAH GRIFFIN ) | | |
| ) | | |
| Third-Party Defendants. ) | | |

**DEFENDANT SIMON HENRY CLARK'S
MEMORANDUM OF LAW IN SUPPORT OF HIS
RULE 12(B)(6) MOTION TO DISMISS
<u>PLAINTIFFS' FIRST AMENDED VERIFIED COMPLAINT</u>**

> *The complaint is wholly lacking in detail surrounding Clark's alleged collusion with Infinity and fails to describe any false statements Clark made to Plaintiffs (or, in the absence of a false statement, some other actionable "cheating" fraud). Instead, the complaint merely alleges that Clark omitted material facts about Infinity and alleges generally that Clark defrauded Plaintiff "throughout the employment period." But such allegations fall short of meeting Rule 9(b)'s standard…* (Dkt. 47, pp. 12-13) (internal citations omitted).
>
> *Indeed, Plaintiffs' complaint is not only lacking in requisite details; it also pleads other facts that render Plaintiffs' claims of fraud and collusion implausible. For example, the complaint alleges that Clark, in his subsequent role as a principal investor at Tecumseh, negotiated a new deal with Infinity. If, as alleged, Clark was in cahoots with Infinity and knew of Infinity's duplicity, it remains implausible to think that he would nonetheless have solicited the company as a client and invested his own capital in it. Absent facts to make Plaintiffs' inference plausible, the claim fails . . . .* (Dkt. 47, p. 13) (internal citations omitted).

## I.    INTRODUCTION

The Amended Complaint lacks any of the requisite facts necessary to sustain the claims. As this Court recognized in its prior ruling, the facts alleged contradict Plaintiffs' legal conclusions and make their claims implausible. With a second bite at the apple, Plaintiffs do not plead any of the necessary facts that might salvage their claims – because they do not exist. Instead, this Court's prior dismissal of their Complaint inspired Plaintiffs to try again by omitting previously verified facts in the hopes that this Court might ignore the obvious contradictions in their pleadings. These efforts fail. The remaining facts are still insufficient, and the omitted facts may not be ignored. Plaintiffs' repeated failure to allege sufficient facts to sustain their claim is easy to understand: Simon Clark did nothing wrong.

## II.    FACTUAL BACKGROUND

Simon Clark ("Clark") worked for Griffin Asset Management ("GAM") from 2017 to February 20, 2020. (Dkt 1, ¶10; Dkt. 48, ¶8). During that time, he managed an GAM's HASelect

investment fund. (Dkt 1, ¶10; Dkt. 48, ¶8). On behalf of HASelect Medical Receivables Litigation Finance Fund International, SP ("HASelect") (together with GAM, "Plaintiffs"), and as part of his responsibilities for GAM, Clark negotiated a Master Loan Agreement ("MLA") and subsequent amendments with a company called Infinity. (Dkt. 1, ¶30, Dkt. 38, ¶¶8-9, 29). Under the terms of the MLA, money that HASelect loaned to Infinity could be used exclusively for Infinity to purchase medical accounts receivable. (Dkt. 1, ¶¶26, 28; Dkt. 48, ¶32). To protect HASelect, Clark forced Infinity to covenant that the value of the accounts receivable purchased with the funds were at least 200% of the purchase cost. (Dkt. 1, ¶28; Dkt. 48, ¶31). Clark additionally ensured that HASelect would hold a perfected security interest in the accounts receivable. (Dkt. 1, ¶29).

As originally pled but curiously omitted in the Amended Complaint, Clark had HASelect enter into a Sub-Advisory Agreement ("SAA") with FTM Investments ("FTM"), who would serve as a sub-advisor to HASelect and assist it in its relationship with Infinity. (Dkt. 1, ¶24). In the SAA, FTM represented that it would act in a professional manner and in the best interest of GAM and HASelect. (Dkt. 1, ¶43). As a sub-advisor, FTM verified Infinity's representations of the costs and value of the accounts receivable presented to HASelect. (Dkt. 1, ¶43). Throughout Clark's employment with GAM, FTM verified Infinity's representations, and there are no plausible allegations that Clark was reasonably aware or reasonably could have been aware of any misconduct on behalf of Infinity.

In May 2021, *fifteen months after* Clark left GAM, Infinity began exhibiting patterns of willful non-compliance with its reporting requirements under the MLA. (Dkt. 1, ¶33). As Plaintiffs themselves acknowledge, Plaintiffs had no prior knowledge that Infinity routinely misrepresented the costs and values of the accounts receivables it presented to HASelect and verified by FTM for financing until Infinity filed for bankruptcy in the United States District Court for the District of

Nevada in September 2021 – *nineteen months* after Clark resigned from GAM. (Dkt. 48, ¶¶33-34). Plaintiffs merely allege that "on information and belief," Clark was aware of Infinity's routine misrepresentations. (Dkt. 48, ¶39). Plaintiffs provide no basis for that belief, nor any explanation as to why Plaintiffs were unaware but Clark, working for GAM, would know. And Plaintiffs again ignore, as they previously verified, that while Clark worked for GAM, Clark and GAM reasonably relied on FTM to verify the accuracy of Infinity's representations. (Dkt 1, ¶43).

Plaintiffs further allege that despite knowing about and "aiding, abetting, and colluding" in Infinity's misrepresentations, Clark turned around and "aggressively solicit[ed] Infinity's business" for his new venture, Tecumseh Alternatives, LLC ("Tecumseh"). (Dkt. 48, ¶¶52-54). Assuming this is true, it demonstrates that Clark had no knowledge, belief, or even suspicion that Infinity was misrepresenting the values of its accounts receivable to defraud HASelect. As this Court already recognized, the inference that Clark was aware of Infinity's fraud but then turned around and solicited Infinity for his new business is "implausible." (Dkt. 47, p. 13).

Finally, Plaintiffs allege that Clark misappropriated certain confidential information of GAM and HASelect prior to his departure from GAM and before joining Tecumseh. (Dkt. 48, ¶¶55-59). Yet, Plaintiffs fail to allege how the information contained in these documents is Plaintiff's confidential information or trade secrets, how Clark ever used the information, or even that Clark was not entitled to that information as a member of GAM.

These facts fail to establish a breach of fiduciary duty (Count I), fraud (Count II), breach of contract (Count III), or misappropriation of trade secrets (Count IV), and the First Amended Verified Complaint should be dismissed with prejudice.

## III. LEGAL STANDARD

The Court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to adequately state a claim, it must meet two requirements. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (*citing Bell Atlantic Corp. v. Twombly*, 550 US 544, 555 (2007)). Second, the allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C.*, 496 F. 3d at 776- 77 (*citing Twombly*, 550 US at 555); *Ashcroft v. Iqbal*, 556 US 662, 679-80 (2009).

A verified complaint does not lose its character as the equivalent of an affidavit just because an amended complaint has been filed. *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017). Moreover, a court is not required "to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *City Nat'l Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir. 1994) (citations omitted).

Allegations of fraud and breach of a fiduciary duty are subject to a heightened pleading standard under Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc*., 477 F.3d 502, 507 (7th Cir. 2007); *see also, Ferenc v. Brenner*, 927 F. Supp. 2d 537, 547-48 (N.D. Ill. 2013) (applying Rule 9(b) to breach of fiduciary duty); *Bank of Am., N.A v. Knight*, 875 F. Supp. 2d 837, 851-52 (N.D. Ill. 2012) (applying Rule 9(b) to breach of fiduciary duty). Plaintiffs claiming fraud must do more pre-complaint investigation to assure responsible and supported claims, rather than defamatory and extortionate ones. *Borsellino*, 477 F.3d at 507. Claims sounding in fraud must include the identity of the person who committed the fraud, the time, the place, and content of the fraud, and

the method the fraud was communicated—who, what, when, where, and how. *Desmond v. Taxi Affiliation Services, LLC*, 344 F. Supp. 3d 915, 921-22 (N.D. Ill. 2018).

## IV. ARGUMENT

Plaintiffs' First Amended Verified Complaint is riddled with conclusory statements and speculation that do not solve the basic issues highlighted by this Court in its Memorandum Opinion and Order dismissing the initial Verified Complaint. (Dkt. 47). Try as they might, there is still no basis for the conclusion that Clark knew during his time at GAM that Infinity was in breach of the MLA. To protect Plaintiffs, Clark set up a relationship with FTM to verify the accuracy of Infinity's representations. And after Clark left, Clark continued to do business with Infinity. There is simply no evidence that *anyone* figured out that Infinity was breaching the agreement until fifteen months after Clark's relationship with GAM ended. Plaintiffs also fail to establish that the "confidential information" Clark allegedly misappropriated was a trade secret and propriety to GAM, nor that any alleged misappropriation actually caused damage to GAM.

### A. PLAINTIFFS FAILED TO CURE THE DEFICIENCIES OF THEIR DISMISSED COMPLAINT.

Plaintiffs' initial claims of fraud and breach of fiduciary duty continue to be deficient despite Plaintiffs' attempts (and failure) to remedy their conclusory nature.

#### 1. Plaintiffs Again Fail to State a Claim for Fraud.

Plaintiffs cannot establish fraud because there are no alleged false statements of fact and no knowledge by Clark that Infinity would breach the MLA until over a year after he left GAM. Under Illinois law, the elements of fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting

from reliance on the statement. *Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860 (N.D. Ill. 2010). A plaintiff must describe the "who, what, when, where, and how" of the fraud which is the first paragraph of any newspaper story." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). Clark's inability to discover that Infinity misrepresented material facts, particularly in light of the fact he took an affirmative step of contractually requiring another third party, FTM, to verify the accuracy of Infinity's facts, is simply not fraud.

Plaintiffs allegations related to Clark's alleged fraud are based "on information and belief," which are not sufficient to establish a fraud claim unless they are facts inaccessible to the plaintiff. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992). When such necessary facts are inaccessible to the plaintiff, the plaintiff must provide grounds for their suspicion. *Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 948 (7th Cir. 2013). Plaintiffs do not allege any basis for Clark's knowledge, nor any viable grounds for a suspicion that Clark knew of the fraud. On this basis alone, counts I and II should be dismissed.

In *Cohn v. Guaranteed Rate Inc.,* the court dismissed a fraud claim for failure to plead the claims with sufficient particularity. 130 F. Supp. 3d 1198, 1211 (N.D. Ill. 2015). The court held that to plead fraud, a plaintiff must set forth "with particularity the circumstances constituting fraud" and that the "'circumstances constituting fraud" include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Id.* (citations omitted.) Here, Plaintiffs again fail to assert that Clark made any specific, false statement of material fact. Nor have Plaintiffs provided the circumstances regarding the alleged fraud. Plaintiffs again have not set forth the time, place, or content of any misrepresentation. Like its initial Verified Complaint, Plaintiffs have not set forth the first paragraph of a newspaper story regarding the alleged fraud.

Plaintiffs, and accordingly, have not alleged that Clark knew any such statement was false. Plaintiffs still fail to allege that Clark intended for any statement to induce Plaintiffs to act. Nor are there any allegations that Plaintiffs relied upon the truth of any statement made by Clark. Finally, Plaintiffs have not alleged that they suffered any damages from Plaintiff's reliance upon any particular statement made by Clark.

The sole addition in this Amended Complaint is an out of context quote from Oliver Hemmers. Plaintiffs allege that Oliver Hemmers admitted in his trial testimony in Infinity's bankruptcy proceedings that Clark was aware of Infinity's practice of inflating the cost and value of its accounts receivable that it presented to HASelect.[1] (Dkt. 48, ¶40). The full quote, however, makes it clear that this alleged "inflation" was to cover costs and fees, such as operating costs, and that all of this was disclosed to HASelect at the beginning of the relationship with Infinity. See Oliver Hemmers August 8, 2023 trial testimony, attached hereto as **Exhibit C**, at 30:17-25 – 31:1-22.[2] In other words, Hemmers testified about the mutual understanding of what the contract meant, not about the subsequent misstatements or fraud by Infinity.

Just as this Court noted while dismissing the initial Verified Complaint, the First Amended Verified Complaint is wholly lacking in detail regarding Clark's alleged aiding, abetting, and collusion with Infinity and fails to describe any false statements Clark made to Plaintiffs or some other actionable fraud. Plaintiffs again have not met any of the five elements of establishing a fraud

---

[1] In fact, this assertion that Clark was aware of and approved of any nefarious inflation is completely undermined by Hemmers' deposition in the bankruptcy proceedings, where he repeatedly stated that Clark did not did not directly handle Infinity's draws. See Oliver Hemmers March 27, 2023 deposition testimony, attached hereto as **Exhibit A**, at pages 40, 61, 73, 78, and 79.

[2] Documents attached to a motion to dismiss are considered a part of the pleadings if they are referred to in Plaintiffs' Complaint and are central to their claim. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

claim and do not meet the pleading requirements of Rule 9(b). As such, Count II should be dismissed with prejudice.

   2. **Plaintiffs Fail to Plead a Breach of Fiduciary Duty.**

Plaintiffs' breach of fiduciary duty claim arises in fraud. Yet Plaintiffs failed to meet the heightened standard of Rule 9(b). To properly plead a breach of a fiduciary duty, the plaintiff must establish (1) a fiduciary duty existing on defendant's part; (2) the defendant breaching that fiduciary duty; and (3) damages proximately resulting from the breach. *Autotech Technology Ltd. Partnership v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006); *Lucini Italia Co. v. Grappolini*, 231 F. Supp. 2d 764, 770 (N.D. Ill. 2002). Here, Plaintiffs have not and cannot establish that Clark breached any fiduciary duty during his employment period, and therefore this claim should be dismissed.

A duty of fidelity and loyalty is only owed while acting as an agent or employee of another. *ABC Trans Nat. Transport, Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 683 (1st Dist. 1978). Once employment has ended, there is no more duty of loyalty owed and the employee is free to compete with their former employer, so long as there is no demonstrable business activity before termination of employment. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160 (1st Dist. 1993); *Jostens, Inc. v. Kauffman*, 842 F.Supp. 352, 354 (C.D. Ill. 1994).

Rule 9(b) applies to any breach of fiduciary duty claim arising out of an alleged fraud. *Robinson v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966). Again, Plaintiffs' allegations do not come close to alleging the "who, what, when, where, and how" that is required to satisfy Rule 9(b). *See Desmond v. Taxi Affiliation Serv., Inc.* 344 F. Supp. 3d 915, 921-22 (N.D. Ill. 2018). Despite artful omissions from the Verified Complaint, Plaintiffs concede that it was unaware of any misdeeds by Infinity until well after Clark had left GAM. The Verified Complaint alleges that Clark entered

into enforceable contracts to protect HASelect regarding its relationship with Infinity, including the aforementioned agreement with FTM. However, Plaintiffs wholly fail to allege how Clark discovered or should have discovered any of Infinity's misconduct. *See Ferenc v. Brenner*, 927 F. Supp. 2d 537, 548 (N.D. Ill 2013) (dismissing breach of fiduciary duty claim because vague allegations of defendants' impropriety did not pass muster under Rule 9(b)).

Not only are Plaintiffs claims insufficiently pled, they do not provide any plausible basis for intent that GAM and HASelect rely on Infinity's misrepresentations,. Further, Plaintiffs ignore the established fact that Clark did not receive an ownership interest in Tecumseh until after he had resigned from GAM, an allegation Plaintiffs previously hung their hat on, knowing that they are unable to allege any cognizable misconduct prior to his departure. Plaintiffs must provide defendants with fair notice of a claim's basis and be "facially" plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This requires more than mere labels, conclusions, and "formulaic recitations" of a claims elements. *Twombly*, 550 U.S. at 555. The Court is not required to accept statements of law or unsupported conclusory factual allegations as true. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). Based on Plaintiffs allegations, Clark knew that it was misrepresenting material facts to GAM and HASelect, yet turned around and "aggressively solicit[ed] Infinity's business." (Dkt. 48, ¶54). Plaintiffs again provide no plausible allegations that Clark had knowledge of Infinity's fraud during his employment. Other than conclusory statements, Plaintiffs fail to allege anything Clark did wrong or what he could have done to realize Infinity's fraud.

### B. PLAINTIFFS ARE UNABLE TO SUSTAIN THEIR BREACH OF CONTRACT AND MISAPPROPRIATION OF TRADE SECRETS CLAIMS.

Plaintiffs allege violations of the Illinois Trade Secrets Act and that the use of the same confidential information constituted a breach of contract. These claims fail because Plaintiffs do not allege that their customer's data was Plaintiff's trade secrets, and because Clark had a right to this information under the Operating Agreement.

To establish a violation of the Trade Secrets Act, Plaintiffs must establish that the information was (1) a trade secret; (2) misappropriated; and (3) used in Clark's business. *System Development Services, Inc. v. Haarmaan*, 389 Ill. App. 3d 561 , 571 (5th Dist. 2009). A trade secret is information that (1) is sufficiently secret to derive economic value from not being generally known to others who can obtain economic value from its disclosure; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality. 765 ILCS 1065/2. A "trade secret" must be "defined in terms of the facts of a particular case, with the following factors to be considered: (1) the extent to which the information is known outside of the employer's business; (2) the extent to which information is known by employees and others involved in the business; (3) the extent of the measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and his competitors; (5) the effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Total Staffing Solutions, Inc. v. Staffing, Inc.*, 2023 IL App (1st) 220533, ¶34 (*quoting Smith Oil Corp. v. Viking Chemical Co.*, 127 Ill. App. 3d 423, 427 (2d 1984)).

#### 1. Plaintiffs Do Not Establish that a Third Party's Data is Their Trade Secret.

Plaintiff's plead none of the facts necessary to suggest that the <u>client's</u> assets under management is <u>Plaintiffs'</u> confidential or trade secret information. Applying the factors in *Total*

*Staffing*, the clients AUM is simply not Plaintiffs' trade secret. Afterall, the information is known outside of the employer's business: the client is aware of its investments. There are no facts alleged related to the extent to which this information was known within the business, or the extent of measures taken to guard the secrecy of the information. There are no facts alleged suggesting this is valuable information. Indeed, Plaintiffs simply note that Clark's next employer ended up with some of the same clients. This does not imply, however, that information about those entities assets under management at Plaintiffs was germane to the solicitation. And even if it were, the information would be easy to come by because Clark could simply ask for the information from the clients, thereby easily duplicating the information.

### 2. Plaintiffs never allege that Clark or Tecumseh used the information.

Even if the clients' assets under management were Plaintiff's trade secrets, Plaintiffs do not and are not able to allege that they have sustained any harm from Clark possessing this information. Setting aside the rather obvious reason for keeping this information, Clark needed to know the value of his interests in GAM, Plaintiffs do not provide a factual basis for the legal conclusion that these actions harmed them.

Investing in HASelect and/or Tecumseh is not mutually exclusive. While there are investors in both funds, There is no allegation or indication that that any investors left HASelect to invest in Tecumseh or that the withdrew some funds from one company to the other. Nor is there any allegations Clark or Tecumseh actually used the documents Clark allegedly kept. There is not even a suggestion that this information had value or that knowing a client's assets under management helped Tecumseh. Plaintiffs know that this information is not useful to obtain business.

As another court already held, Tecumseh-Infinity was structured to avoid interfering with Infinity's pre-existing contractual obligations with HASelect. HASelect loans money to Infinity to purchase medical receivables. Tecumseh-Infinity is not a lender; it purchases the receivables itself. Therefore, Tecumseh's structure does not run afoul of the MLA's provision prohibiting Infinity borrowing money from another entity other than HASelect.[3] As a result, there is simply no basis for assuming the assets a company places for one type of investment with HASelect has any bearing on the amount of assets they might place with Tecumseh.

Quite simply, Plaintiffs have not alleged any actual use by Clark or Tecumseh, a necessary element of the Illinois Trade Secrets Act, and the claim must be dismissed.

Nor have Plaintiffs alleged damages from the use of this information. Absent harm, Plaintiffs fail to establish the fourth element of a breach of contract claim, damage, and the breach of contract claim must be dismissed. *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 540-41 (7th Cir. 2008) (showing a contract was breached without demonstrating actual damages does not create a claim for breach of contract).

### 3. Plaintiffs' Breach of Contract Claim is Preempted by The Trade Secrets Claim.

Clark's breach of contract claim hinges on interpretation of the Operating Agreement. Under the Operating Agreement, Clark has a right to the financial information regarding clients' assets under management because that information is exactly the type of information Clark was entitled to under Section IX.2 of the Operating Agreement, which permits members to keep copies

---

[3] February 17, 2021 Order denying preliminary injunction at p. 3, *Griffin Asset Management, LLC, and HASelect-FTM Medical Receivables Litigation Finance Fund SP v. Chadwick Meyer, Tecumseh-Infinity Medical Receivables Fund, LP, Alternative Investment Specialists Limited, and FTM Limited*, Cook County No. 2020 CH 4427, attached hereto as **Exhibit B**.

of books and records reasonably related to the Members' Interests. (Dkt. 48-1 §IX.2). The same provision, however, makes it impermissible for Clark to keep that information if it is a trade secret.

The Illinois Trade Secrets Act preempts state law causes of action premised on the misappropriation of trade secrets. *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 905 (N.D. Ill. Mar. 4, 2019). The inquiry is straightforward. If the claim rises or falls based on establishing the existence of a trade secret, then it is preempted. *Id.* at 905-06. Here, Plaintiffs must establish that the information is a trade secret, otherwise Clark had a right to copy the information. Therefore, the breach of contract claim is preempted.

## V. CONCLUSION

WHEREFORE, Defendant, SIMON HENRY CLARK, respectfully requests that this Honorable Court dismiss Plaintiffs, HASELECT MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL, SP and GRIFFIN ASSET MANAGEMENT, LLC's First Amended Verified Complaint with prejudice, and for any such further relief as this Court deems just and appropriate.

Respectfully submitted,

By:     */s/ Amanda J. Alasauskas*
      One of the Attorneys for Defendant,
      **Simon Henry Clark**

William D. Patterson (ARDC: 6294533)
Troy M. Sphar (ARDC: 6278497)
Amanda J. Alasauskas (ARDC: 6326529)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Ave., Suite 3300
Chicago, IL 60611
T: (312) 321-9100
F: (312) 321-0990
wpatterson@smbtrials.com
tsphar@smbtrials.com
aalasauskas@smbtrials.com