# EXHIBIT A

**In the Matter Of:**

# Infinity Capital Management, Inc., Debtor

---

## OLIVER HEMMERS

*March 27, 2023*

---



```
              UNITED STATES BANKRUPTCY COURT

                    DISTRICT OF NEVADA

                      * * * * * *

In re:

INFINITY CAPITAL
MANAGEMENT, INC.,

     Debtor,
                                    Case No. 21-14486-ABL
_____     Chapter 7


HASELECT-MEDICAL RECEIVABLES
LITIGATION FINANCE FUND
INTERNATIONAL SP,


Plaintiff/Counter-Defendant,

v.

TECUMSEH-INFINITY MEDICAL
RECEIVABLES FUND, LP,


Defendant/Counter-Claimant.


_____


      DEPOSITION OF OLIVER ANDREAS HEMMERS, PH.D.

                        VOLUME I

                Taken on March 27, 2023

                     At 9:00 a.m.

          At 7251 Amigo Street, Suite 210

                  Las Vegas, Nevada

Reported by: Kimberly A. Farkas, RPR, CCR #741

RTR Job No. 1459
```

1              Deposition of OLIVER ANDREAS HEMMERS, PH.D.,

2    VOLUME I taken at 7251 Amigo Street, Suite 210, Las

3    Vegas, Nevada, on Monday, March 27, 2023, at 9:00 a.m.,

4    before Kimberly A. Farkas, Certified Court Reporter in

5    and for the State of Nevada.

6

7    APPEARANCES

8

9    For the Defendants/Counterclaimants:

10

11          MICHAEL D. NAPOLI, ESQ.
            Akerman, LLP
12          2001 Ross Avenue, Suite 3600
            Dallas, Texas 75201
13          (214)720-4360
            michael.napoli@akerman.com
14

15

16   For the Claimants/Counterdefendants:

17

18          BART K. LARSEN, ESQ.
            Shea Larsen
19          1731 Village Center Circle, Suite 150
            Las Vegas, Nevada 89134
20          (702)255-0098
            blarsen@shea.law
21

22

23

24

25

```
 1   APPEARANCES (Continued)

 2


 3   For the Debtor:

 4


 5         ECKLEY KEACH, ESQ.
           Lewis Roca
 6         3993 Howard Hughes Parkway, Suite 600
           Las Vegas, Nevada 89169
 7         (702)949-8200


 8


 9
     Also present:    Chad Meyer (via videoconference)
10                    Michael Griffin (via videoconference)
                      James Gallagher (via videoconference)
11                    Igor Shleypak (via videoconference)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              (Exhibit 3 was marked.)
2    BY MR. NAPOLI:
3         Q.   Do you have Exhibit 3 in front of you?
4         A.   Yes, I do.
5         Q.   What is Exhibit 3?
6         A.   There is an email to Debbie about the
7    mid-month's draw request in the amount of $704,000.
8    And I am not sure if the attachment is just what's
9    shown here, the draw request itself, but it shows an
10   attachment which says "draw request" at the top to
11   HASelect-FTM Medical Receivable Litigation Finance
12   Fund.
13        Q.   And the draw request on the second page of
14   Exhibit 3 is signed by who?
15        A.   I signed it.
16        Q.   And what's the date of the draw request?
17        A.   October 17th, 2019.
18        Q.   Which is the same date as the date of the
19   email from you to Debbie Griffin; is that correct?
20        A.   That's correct.
21        Q.   Were the draw requests typically addressed to
22   Debbie Griffin?
23        A.   Yes.
24        Q.   Were they ever addressed to Simon Clark?
25        A.   No, never.  As far as I recall, no.  Debbie

1    A.   Yeah, that's correct.  That's -- it got
2 complicated after we started working with Tecumseh.
3 But just saying, in general, that was -- that was the
4 purpose of the account.
5    Q.   So in order -- but in order to transfer money
6 from the collection account at FSB for Infinity's
7 purposes, you had to have HASelect's approval; correct?
8    A.   That's correct.
9    Q.   And that approval -- who did you ask for that
10 approval?
11    A.   Debbie Griffin.
12    Q.   Was it always Debbie Griffin?
13    A.   Yes.
14    Q.   Was it ever Simon Clark?
15    A.   No, never.
16    Q.   Were you the one who asked for the approvals
17 or was it your wife's department?
18    A.   I think it was always me.  Yeah.
19    Q.   I want to show you -- actually.
20         What information did you provide
21 Debbie Griffin with when you were seeking her
22 permission to transfer funds out of the collection
23 account?
24    A.   Well, it was a process.  It was not just
25 information.  So, effectively, we generated reports at

1   business volume, funding needs, new opportunities.  I
2   think, you know, around those issues.
3        Q.   You've mentioned that you had communications
4   with Debbie Griffin.  What was the frequency of your
5   communications with Debbie Griffin?
6        A.   Several times a day.
7        Q.   And what subjects did you communicate with
8   Ms. Griffin about?
9        A.   It was, effectively, mostly about those
10  receivables.  These reports, as I said, eventually, we
11  had weekly reports and summaries.  And there was a lot
12  of back and forth mostly regarding those reports,
13  numbers, all that.
14       Q.   Was Debbie Griffin the person at HASelect you
15  communicated the most?
16       A.   Yes.
17       Q.   When Simon Clark was at HASelect, how often
18  did you communicate with him?
19       A.   Quite a bit in the beginning, I will say, in
20  2019 for the first six to 12 months regularly, at least
21  weekly, probably more often.
22       Q.   On kind of the day-to-day operational issues
23  of the loan, did you communicate with Debbie, with
24  Michael, or with Simon Clark?
25       A.   With Debbie.

1  March of 2020 and Endre Dobozy.
2  BY MR. NAPOLI:
3      Q.   So I understand your testimony, this was a
4  suggestion made to you, to Infinity, by FTM?
5      A.   Yes.
6      Q.   When did you begin discussions with Tecumseh.
7      A.   Probably April.  Months later.  I don't know,
8  March.  Late March, April.  Don't nail me on that date.
9  It was in the spring of 2020.
10     Q.   And who did you deal with at Tecumseh?
11     A.   It was Chad Meyer and -- mostly Chad, I
12 think.  Then Mike Belotz might have been involved too
13 already.  I mostly recall talking with Chad.
14     Q.   And by the time that you were talking with
15 Chad, he had already left HASelect; is that correct?
16     A.   Yes.
17     Q.   Had Mike Belotz ever worked with HASelect?
18     A.   I believe so.
19     Q.   At the time you were talking with Mr. Belotz,
20 he had also left HASelect?
21     A.   That was my understanding.
22     Q.   The discussions that led to the June 18, 2020
23 sub-advisory agreement, did any of those involve
24 Simon Clark?
25     A.   No.  Not -- not initially.  Maybe towards the

1   end in June.  Most of the -- I mean, I don't really --
2   you know, if Simon was involved, I didn't say anything
3   or didn't do anything as far as I can recall something.
4       Q.   So you don't recall any particular
5   conversation with Simon Clark about Tecumseh prior to
6   June of 2020?
7       A.   No, not really.
8       Q.   All right.  As of the time Infinity is having
9   discussions with Tecumseh that led to this June 18
10  sub-advisory agreement, you guys understood that you
11  still had a lending relationship with HASelect;
12  correct?
13      A.   Well, we had -- yeah, we had a funding
14  relationship with HASelect, which was still ongoing.
15  We thought it's nothing wrong for business development,
16  new opportunities, and as long as we don't harm the or
17  violate the loan agreement, there should be nothing
18  wrong with us pursuing them.
19      Q.   And when Infinity drafted or participated in
20  the negotiation of the sub-advisory agreement and
21  agreed to the services it would provide under that
22  agreement, it did so with HASelect's -- with its
23  obligations to HASelect in mind; is that correct?
24          MR. KEACH:  Objection as to form.  Leading.
25          MR. LARSEN:  Join.

1  myself for Mr. Hemmers.  So we're going to confer off
2  the record on a date in which we can continue the
3  deposition in the future.
4          MR. NAPOLI:  I think with that, we're
5  recessed.
6          (Whereupon, the deposition was adjourned at
7  5:23 p.m.)
8                  *   *   *   *   *