# EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

Griffin Asset Management, LLC, and
HASelect-FTM Medical Receivables
Litigation Finance Fund SP,

Case No. 2020 CH 4427

Plaintiffs,

Calendar 2

v.

Chadwick Meyer, Tecumseh-Infinity
Medical Receivables Fund, LP,
Alternative Investment Specialists
Limited, and FTM Limited,

Defendants.

## ORDER

RAYMOND W. MITCHELL, Circuit Judge.

Plaintiffs Griffin Asset Management, LLC and HASelect-FTM Medical Receivables Litigation Finance Fund SP move for a preliminary injunction against Defendants Chadwick Meyer, Tecumseh-Infinity Medical Receivables Fund, LP, Alternative Investment Specialists Limited, and FTM, Limited. Plaintiffs seek to enjoin AIS-FTM from providing Defendants Meyer and Techumseh-Infinity with access to assets that Plaintiffs assert should be provided exclusively to Plaintiffs. They also seek to enjoin Defendants from doing business with nonparty Infinity Capital Management, Inc., which has contractual relations with both Plaintiffs and Defendants. After a two-day hearing in which testimony was taken, various documents were admitted into evidence, and having heard the arguments of counsel, I make the following determination.

I.

HASelect-FTM is a hedge fund that invests in medical receivables, and Griffin Asset Management serves as its investment manager. Specifically, HASelect-FTM lends money to Infinity Capital Management and other entities for the purchase of medical receivables.

*Sub-Advisory Agreement.* Defendant FTM Limited entered into a sub-advisory agreement with GAM to serve as a sub-advisor for HASelect-FTM. FTM later assigned its rights to its manager company, Defendant Alternative Investment

Specialists Limited. Section 1(c) of the Sub-Advisory Agreement provides that AIS-FTM's services to GAM and HASelect-FTM "will be exclusive and [AIS-FTM] will not render any similar services to any other pooled investment vehicle without GAM's prior written consent." Section 2(g) provides that AIS-FTM "shall use best efforts to act at all times in a professional manner and in the best interest of GAM and the Fund." AIS purported to terminate the Sub-Advisory Agreement in June 2020.

*Master Loan Agreement.* HASelect-FTM entered into a Master Loan and Security Agreement with Infinity. Under the agreement, Infinity submits draw requests and HASelect-FTM loans money to Infinity to purchase medical receivables. The discounted receivables serve as collateral for repayment of the loans under the MLA. Section 7.1 of the MLA provides that Infinity shall not: "(1) Engage in any business activities substantially different than those in which Infinity is presently engaged; (2) cease operations, liquidate, merge, transfer, acquire, or consolidate with any other entity, change its name, dissolve, or transfer or sell Collateral out of the ordinary course of business; (3) Borrower shall not declare or pay any dividend or other distribution (whether in cash or in kind) on any class of its stock." Section 7.4 of the MLA provides that Infinity "shall not incur any indebtedness of any kind" other than from HASelect-FTM fund.

Defendant Meyer worked for GAM until May 2019. Subsequently, Meyer formed Tecumseh-Infinity to purchase medical receivables in connection with personal injury cases. Tecumseh-Infinity and Infinity entered into a sub-advisory agreement under which Infinity provides portfolio management and administrative services, including negotiating the purchase price of receivables. Tecumseh-Infinity purchases medical receivables for itself and secures a lien on proceeds from the receivable.

II.

The party seeking a preliminary injunction must establish (1) that he possesses clearly ascertainable rights in need of protection; (2) that there is no adequate remedy at law; (3) that he will suffer irreparable harm without an injunction; and (4) that he will likely be successful on the merits. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry.*, 195 Ill. 2d 356, 366 (2001). The purpose of a preliminary injunction is to preserve the status quo until a court can resolve the dispute on the merits, but importantly, a preliminary injunction hearing does not determine controverted rights or disputed facts. *Franz v. Calaco Development Corp.*, 322 Ill. App. 3d 941, 946 (2d Dist. 2001).

Related to the first and fourth requirements, Plaintiffs assert that they raised a fair question as to the existence of claimed rights: (a) AIS-FTM's breach of the Sub-Advisory Agreement, including the exclusivity and fiduciary provisions; and

(b) Defendants' tortious interference with the Infinity Master Loan Agreement. But as to the AIS-FTM claim, the Sub-Advisory Agreement was cancelled by AIS in June 2020. An interlocutory injunction is a preventive remedy concerned with avoiding future harm, not punishing a prior breach. *Kalven v. City of Chicago*, 2014 IL App (1st) 121846, ¶10. Given that the agreement has been terminated, it could not properly be the subject of enforcement by injunction.

As to the interference claim related to Infinity, it seems that the Defendants structured Tecumseh-Infinity to avoid interfering with Infinity's pre-existing contractual obligations with HASelect-FTM. Significantly, unlike HASelect-FTM which loans money to Infinity to purchase the medical receivables, Tecumseh-Infinity is not a lender. It purchases the receivables itself. Thus, the structure does not run afoul of the MLA's prohibition on Infinity borrowing from anyone other than HASelect-FTM. Plaintiffs claim that the net effect of Tecumseh-Infinity's activity is to reduce receivable opportunities for HASelect-FTM, while at the same time causing confusion in the marketplace and reputational damage to Plaintiffs. That, however, does not demonstrate that Infinity breached a specific contractual obligation to Plaintiffs. In closing argument, Plaintiffs pointed to a potential impairment of its collateral (the receivables purchased by Infinity), but there was no evidence of this. Finally, Infinity is not a party to the action, and yet the relief that Plaintiffs seek would impair Infinity's sub-agreement with Techumseh-Infinity. *Cf. Mid-Town Petroleum, Inc. v. Dine*, 114 Ill. App 3d 112, 119 (1st Dist. 1983) (equitable remedy inappropriate where the rights of innocent third parties have intervened).

Plaintiffs have an adequate remedy at law. The damage to their business, if wrongful, can be quantified and reduced to a money judgment. *See, e.g., Delcon Group, Inc. v. Northern Trust Corp.*, 159 Ill. App. 2d 275, 280 (2nd Dist. 1987) (reversing grant of a preliminary injunction involving accounts receivable because plaintiff "can find adequate relief through money damages"). And there has been no showing that such a judgment would be uncollectable. Likewise, they have not demonstrated an irreparable injury. Related to AIS-FTM, damages from the supposed breach would be limited to the duration of the contract and readily calculated. The damages are not "continuing" in nature. Similarly, with regard to Infinity, the harm is speculative (as to the collateral).

In weighing these factors, as well as balancing the equities, I am left with the firm conclusion that a preliminary injunction is not warranted in this case.

3

III.

It is therefore ORDERED:

Plaintiffs' motion for a preliminary injunction is DENIED.[1]

ENTERED,

*[signature]*

Raymond W. Mitchell, Judge No. 1992

Judge Raymond W. Mitchell
FEB 17 ENT'D 2021
Circuit Court – 1992

---

[1] Plaintiffs' motion to strike a "Prefatory Remark" in Defendant AIS-FTM's Pre-Trial Disclosure is denied. I am not in the business of editing counsel's filings.

4