UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HASELECT MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL, SP and GRIFFIN ASSET MANAGEMENT, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> SIMON HENRY CLARK, <br><br> Defendant. <br> ———————————————— <br> SIMON HENRY CLARK, <br><br> Counterclaimant/Third-Party Plaintiff, <br><br> v. <br><br> GRIFFIN ASSET MANAGEMENT, LLC, MICHAEL GRIFFIN, and DEBORAH GRIFFIN, <br><br> Counterclaim Defendants/ Third-Party Defendants. | Case No. 22-cv-04269 <br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Griffin Asset Management, LLC ("GAM") and HASelect Medical Receivables Litigation Finance Fund International S.P. ("HASelect") sued HASelect's former manager, Simon Henry Clark, for breach of fiduciary duty, fraud, breach of contract, and misappropriation of trade secrets. *See* [1], [48].[1] In response to

---

[1] This Court has addressed the sufficiency of Plaintiffs' claims contemporaneously in a separate order, and assumes familiarity with that decision.

Plaintiffs' initial claims, Clark filed a counterclaim/third-party complaint against GAM, its manager, Michael Griffin, and Griffin's wife, Deborah Griffin, *see* [35]. Clark too claims breach of fiduciary duty (Counts I and V), as well as violation of the right of publicity (Count II); tortious interference with business expectancy (Count III); and business defamation (Count IV). *Id.* GAM and the Griffins move to dismiss all of the claims asserted by Clark, *see* [36]. For the reasons explained below, the Court grants their motion.

I.  **Clark's Allegations**

Clark alleges that Michael Griffin was the CEO of GAM, HASelect and several related entities, including Griffin Capital Management, LLC ("GCM"), HedgeACT, and other subsidiaries. *Id.* ¶ 35. He further alleges that Michael's wife, Deborah Griffin, handled all accounting and administrative tasks relative to GAM, GCM, HASelect, and HedgeACT. *Id.* ¶ 36. Clark alleges that he started working with HASelect as an independent contractor in 2017, [35] ¶ 13. With respect to Infinity, an entity that features prominently in Plaintiffs' claims, Clark alleges that he, Michael Griffin, Chad Meyer, and James Gallagher met with Infinity, and GAM and HASelect decided to enter into a business relationship with Infinity. *Id.* ¶ 23. Clark alleges that "Infinity would locate opportunities to provide financing to individuals with medical malpractice claims, then provide litigation financing to those individuals"; Infinity also determined "the value of the receivables on the litigation finance deals," which sub-advisor FTM would then verify and confirm. *Id.* ¶¶ 24, 25. Clark claims Deborah Griffin, who had "considerable experience as a forensic

2

accountant," approved or rejected the distribution of funds to Infinity after FTM confirmed the value of the receivables. *Id.* ¶¶ 26–29.

With regard to the Operating Agreement GAM claims in its complaint that Clark breached, Clark alleges that the Agreement granted him Class B and Class C Interests in GAM and GCM, and he continues to retain economic interests in those entities. *Id.* ¶ 38. Clark alleges that the Operating Agreement established GAM as a "manager-managed LLC" with Michael Griffin as its "sole Manager." *Id.* ¶ 39. He further alleges that the Agreement precluded Griffin from engaging in "grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law which results or shall have resulted in material loss or injury to the Property or operations of the Company." *Id.* ¶ 40. But, despite this, Griffin made intentional misrepresentations to clients and intentionally damaged business relationships, causing Clark financial and reputational damage. *Id.* ¶¶ 62, 63. As a result, Clark resigned from GAM and HASelect on February 20, 2020. *Id.* ¶ 64.

Clark alleges that GAM and Griffin managed ten known hedge funds, all of which are either closed or in bankruptcy. [35] ¶ 5. He casts aspersions on both Michael Griffin and Deborah Griffin, personally and professionally. *See, e.g.,* [35] ¶¶ 62–65; 72–78. Clark alleges that Michael Griffin breached the fiduciary duty he owed to Clark by "intentionally and fraudulently misstating the earnings of client investments so as to charge fraudulent performance fees on loans and to induce additional investors"; "intentionally mishandling relationships with FTM, Three Bell, and MSP, leading to diminished earnings of Clark"; and "engaging in otherwise

grossly negligent conduct, intentional misconduct, or knowing violation of the law." *Id.* ¶ 88. And he alleges that Deborah Griffin breached her fiduciary duty by "intentionally and fraudulently misstating the earnings of client investments so as to charge fraudulent performance fees on loans and to induce additional investors"; "carelessly and recklessly failing to investigate how Infinity used the funds she authorized"; and "engaging in otherwise grossly negligent conduct, intentional misconduct, or knowing violation of the law." *Id.* ¶ 115.

Clark also alleges that GAM, by listing Clark in its ADV[2] without Clark's authorization, implied that Clark remained part of GAM even after he left. *Id.* ¶ 94. He alleges that he notified GAM and Griffin that they were misusing his name, yet they continued to willfully list Clark on GAM's ADV in an effort to solicit customers. *Id.* ¶ 95.

In his tortious interference claim, Count III, Clark alleges that GAM and Griffin intentionally and fraudulently mishandled the business relationship with Three Bell and also misclassified Three Bell as a "house account" to cheat Clark out of fees and profits and damage his professional reputation. *Id.* ¶¶ 101–104. Relatedly, he claims GAM and Griffin have "knowingly made several negative, misleading, and false misrepresentations regarding Clark's character and circumstances surrounding his departure from HedgeACT to numerous third parties," which have damaged Clark. *Id.* ¶¶ 106–109.

---

[2] Based on the allegations, the term "ADV" appears to refer to GAM's Uniform Application for Investment Adviser Registration.

GAM and the Griffins move to dismiss all of Clark's claims under Rule 12(b)(6), [36].

## II. Applicable Legal Standards

To survive a Rule 12(b)(6) motion, Clark's claims must not only provide GAM and the Griffins with fair notice of their bases but must also be "facially" plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim has facial plausibility when the pleading party pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although his complaint need not include detailed factual allegations, Clark's obligation to provide the grounds for his entitlement to relief requires more than mere labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, Clark "must give enough details about the subject-matter of the case to present a story that holds together" and, in ruling on the motion to dismiss, this Court asks "*could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

For purposes of the present Rule 12(b)(6) motion, this Court accepts as true all well-pled facts and draws all reasonable inferences from those facts in Clark's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). But the Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

5

### III. Discussion and Analysis

GAM and the Griffins move to dismiss Clark's breach of fiduciary duty claims, arguing that he fails to allege any facts giving rise to any duty the Griffins owed Clark; they seek to dismiss Clark's right of publicity claim as untimely, his defamation claim for failure to allege any defamatory statements or conduct, and his tortious interference claim for failure to allege facts establishing any viable business expectancy. The Court considers the sufficiency of each of Clark's claims below.

#### A. Clark's Breach of Fiduciary Duty Claims (Counts I and V)

Clark alleges in Count I that Michael Griffin, as the sole manager of GAM and pursuant to the GAM Operating Agreement, owed Clark a fiduciary duty of loyalty, care, and good faith to not engage in gross negligence or reckless or intentional misconduct or to knowingly break the law. [35] ¶ 87. Clark further claims, Michael Griffin breached that duty when he: intentionally and fraudulently misstated the earnings of client investments so that he could charge fraudulent performance fees; intentionally mishandled relationships with some of Clark's clients (FTM, Three Bell and MSP, which diminished Clark's earnings); and engaged in "otherwise grossly negligent conduct, intentional misconduct, or knowing violation of the law." *Id*. ¶ 88.

In Count V, Clark also alleges that Deborah Griffin, whom Michael Griffin charged with the key managerial responsibility of overseeing the relationship with Infinity (including the financial audit of their accounts and requests for additional money), owed a duty of loyalty, care, and good faith to refrain from engaging in gross negligence, reckless conduct, intentional misconduct, and knowing violations of the

6

law. [35] ¶¶ 111–14. Clark further claims, Deborah breached that duty when she: intentionally and fraudulently misstated the earnings of client investments so GAM could charge fraudulent performance fees; carelessly and recklessly failed to investigate how Infinity used the funds she authorized; and engaged in "otherwise grossly negligent conduct, intentional misconduct, or knowing violation of the law." *Id.* ¶ 115.

In response, the Griffins attack Clark's "duty" allegations. As to Deborah Griffin, Clark's claim does not allege that she owed him a fiduciary duty; rather, he simply alleges that she owed a duty based upon her role as an accountant with GAM. [35] ¶ 111. That duty, however, flows to GAM, not to Clark, and Clark does not allege any other basis to impose a fiduciary duty upon Deborah flowing to Clark.

With respect to his claim against Michael, Clark alleges that this Defendant did owe him a fiduciary duty, and he alleges that the duty springs from the GAM Operating Agreement. *See* [35] ¶ 87. But the Agreement, attached to Clark's counterclaim/third-party complaint, undermines his allegation. Article VIII of the Agreement includes a "limitation of liability" providing that:

> A Manager's and officers' duty of care in the discharge of his or her duties to the Company is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law which results or shall have resulted in material loss or injury to the Property or operations of the Company. A Manager and officer shall be fully protected in discharging his or her duties in relying in good faith upon the records required to be maintained by the Company and upon the information, opinions, reports or statements by any other manager, officer, or agents, or by any other Person, as to matters a Manager or officer reasonably believes are within the other Person's professional or expert competence and who has been selected with reasonable care by, or on behalf of, the Company, including

7

> information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits or losses of the Company or any other facts pertinent to the existence and amount of assets from which Distributions to Members might properly be paid. Each of the Members . . . hereby holds harmless . . . and waives any claim against the Manager . . . for any and all losses, damages, liability claims, cause of action, omissions, demands and expenses or any other act or failure to act arising from or out of a manager's duties provided the action or failure to act complies with the standard of conduct set forth in the first sentence of this Section 8.1. The Members hereby acknowledge and agree that the Managers and officers shall have no fiduciary duty of care except as to obligations expressly set forth in this Agreement.

[35-2] at 13–14. Based upon this provision, Griffin owed a fiduciary duty to GAM, not to Clark, and, Clark, by signing the Agreement, specifically agreed to hold Griffin harmless for his decisions concerning valuations and distributions.[3]

As a result, his fiduciary duty claim fails. *See, e.g., Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) ("To the extent that the contracts contradict the Complaint, the contracts trump the facts or allegations presented in the Complaint."); *McCartney v. Platte River Ins. Co.*, 631 F. Supp. 3d 561, 568 (N.D. Ill. 2022) ("if the Agreement contradicts Plaintiffs' allegations, the Agreement controls.").

### B. Clark's Right of Publicity Claim (Count II)

In Count II, Clark alleges that GAM and Michael Griffin used his name on GAM's ADV after Clark left GAM, holding Clark out as a part of GAM without his authorization. [35] ¶¶ 92–95. The Illinois Right of Publicity Act provides that a

---

[3] To the extent Clark alleges that the nature of Griffin's conduct somehow invalidates this agreement, the allegations remain conclusory; he alleges no facts to make plausible his claim that Griffin acted in a grossly negligent or reckless manner. And, other than the Operating Agreement, Clark does not allege any other basis for imposing a fiduciary duty upon Michael Griffin.

8

person "may not use an individual's identity for commercial purposes . . . without having obtained previous written consent." 765 ILCS 1075/30(a). To state a claim for violation of the IRPA, a plaintiff must set forth three elements: "(1) an appropriation of one's name or likeness; (2) without one's consent; and (3) for another's commercial benefit." *Life After Hate, Inc. v. Free Radicals Project, Inc.*, No. 18 C 6967, 2020 WL 1903956, at *5 (N.D. Ill. Apr. 16, 2020) (citing *Jordan v. Jewel Food Stores, Inc.*, 83 F. Supp. 3d 761, 767 (N.D. Ill 2015); *Blair v. Nev. Landing P'Ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006)). A one-year statute of limitations applies to claims brought under the IRPA, and the clock begins to run "when the allegedly infringing publication was first published." *Bonilla v. Ancestry.com Operations Inc.,* 628 F. Supp. 3d 812, 817 (N.D. Ill. 2022), reconsideration denied, No. 20 C 7390, 2023 WL 3602801 (N.D. Ill. May 23, 2023); *Toth-Gray v. Lamp Liter, Inc.*, No. 19-cv-1327, 2019 WL 3555179, at *4 (N.D. Ill. July 31, 2019).

In his counterclaim, Clark alleges that, "despite the fact that Clark left GAM and HASelect, Michael Griffin and GAM continued to represent that Simon Clark was associated with GAM by using his name on their ADV." [35] ¶ 82. He alleges that he "made multiple inquiries requesting that GAM remove Clark from its ADVs, and ultimately GAM removed Clark's name from the ADVs." *Id.* ¶ 83. Clark does not say when GAM and Griffin first published his name in ADVs. But he alleges that he left GAM on February 20, 2020, *id.* ¶ 64, and he alleges the existence of falsehoods in the ADV forms filed in March 2020, June 2021, and October 2021. *Id.* ¶¶ 79, 80. Because Clark filed his counterclaim on June 13, 2023, more than a year after even

9

the most recent form, he has pled himself out of court. The Court accordingly dismisses Clark's right of publicity claim as time barred.

    **C.    Clark's Tortious Interference Claim (Count III)**

Clark alleges in Count III that he had a reasonable expectancy of continued business with Three Bell, and that Michael Griffin's intentional and fraudulent mishandling of the relationship and assets of Three Bell interfered with that expectancy. [35] ¶¶ 100–104. Under Illinois law, the elements of a claim for tortious interference with a business expectancy are: "(1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009) (citing *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991)).

Here, Clark's claim fails at step one. He alleges that "Chadwick Meyer a member of GAM and of its senior leadership, had a prior relationship with Will Martin, who operated Altos Investments and subleased space from Three Bell"; he alleges that, as Martin became more involved with Three Bell, Clark was able to "build an asset base for GAM when Martin became interested in setting up a medical fund with HASelect." [35] ¶¶ 15–19. Clark alleges that Three Bell "provided a significant source of funds allowing HASelect and the other entities operated by GAM and GCM to make investments" and that HASelect charged Three Bell fees at both

10

the fund and the fund of funds levels. *Id.* ¶¶ 20, 55. He also alleges that, when Three Bell wanted to discuss the fees HASelect was charging it, Three Bell went to Griffin, not Clark, *id.* ¶ 57, and he alleges that Griffin seemed to think he could take all of Three Bell's assets, *id.* ¶ 60. All of these allegations suggest that Griffin or Meyer ran point on the Three Bell relationship. Yet, Clark alleges, in conclusory fashion that he was "responsible for the Three Bell relationship," *id.* ¶ 59, and that he (not GAM) "had a reasonable expectancy of continued business with Three Bell." *Id.* ¶ 100. These statements remain belied by the other allegations demonstrating that any relationship Clark had with Three Bell ran to GAM, not to him personally.

### D. Clark's Defamation Claim (Count IV)

Finally, Clark alleges that GAM and Griffin knowingly made several negative, misleading, and false misrepresentations to numerous third parties regarding Clark's character and the circumstances surrounding his departure from GAM's HedgeACT. [35] ¶ 106. Defamation is the publication of a false statement that "tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (citing *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006)).

To win on a defamation claim in Illinois, a plaintiff must show "that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 459 F. Supp. 3d 1058, 1108 (N.D. Ill. 2020). Illinois recognizes four categories of statements that are

11

considered defamatory per se: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Id.* (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992)). But a statement that falls into one of these categories "will not be found defamatory per se if it is true or is reasonably capable of an innocent construction." *Id.* Moreover, "opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment," and this remains true "even when the opinions concern one of the five defamation per se categories under Illinois law." *Levin v. Abramson*, No. 18-CV-1723, 2020 WL 2494649, at *16 (N.D. Ill. May 13, 2020).

Here, Clark alleges that GAM and Griffin "knowingly made several negative, misleading, and false misrepresentations regarding Clark's character and circumstances surrounding his departure from HedgeACT to numerous third parties." [35] ¶ 106. But he does not quote or otherwise describe or identify the statements. In assessing whether allegedly defamatory statements are susceptible to an "innocent construction" or whether they may constitute matters of opinion, this Court must give "the defendant's words their natural and obvious meaning," considering "both the substance of defendant's alleged statements and the context in which they allegedly were made." *Malec v. City of Joliet*, No. 22 C 5312, 2023 WL 3200098, at *7 (N.D. Ill. May 2, 2023) (citing *Huon v. Denton*, 841 F.3d 733, 738 (7th

Cir. 2016)). Because Clark fails to quote or describe the allegedly defamatory misrepresentations in any way, his claim precludes even a cursory assessment of whether the statements can plausibly support a defamation claim. As a result, his defamation claim fails.[4]

## IV. Conclusion

For the reasons explained above, the Court grants GAM and the Griffins' motion to dismiss Clark's claims [36]. To the extent Clark can, consistent with his obligations under Rule 11, amend his defamation or tortious interference claims to cure the deficiencies discussed above, he may file an amended counterclaim/third-party complaint by April 19, 2024.

Dated: March 28, 2024              Entered:

                                   _____
                                   John Robert Blakey
                                   United States District Judge

---

[4] Although Clark does not say when GAM and Griffin made the allegedly defamatory misrepresentations, he does allege that the statements related to his departure from HedgeACT, which ostensibly occurred in February 2020. *See* [35] ¶¶ 64, 106. As a result, his defamation claim may also be time barred. *See Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 923 (7th Cir. 2003) ("Illinois imposes a one-year statute of limitations on all defamation actions that begins to run when the defamatory statement was published.") (citing *Buechele v. St. Mary's Hosp.*, 509 N.E.2d 744, 745–46 (Ill.App.Ct. 1987)).