UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRIFFIN ASSET MANAGEMENT, LLC AND HASELECT MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL S.P., | Case No. 1:22-CV-4269 |
| Plaintiffs, | |
| v. | Judge John Robert Blakey |
| SIMON HENRY CLARK, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Griffin Asset Management, LLC ("GAM") and HASelect Medical Receivables Litigation Finance Fund International S.P. ("HASelect") sued HASelect's former manager, Simon Henry Clark, for breach of fiduciary duties and fraud, *see* [1]. On Clark's motion, the Court dismissed the initial claims based upon Plaintiffs' failure to allege facts to support them, *see* [46], [47]. Plaintiffs have now amended their complaint, again asserting the same claims, plus two additional claims: one for breach of contract (Count III) and one for misappropriation of trade secrets (Count IV), *see* [48]. Clark has again moved to dismiss all of the asserted claims, *see* [49], and, for the reasons explained below, the Court again grants Clark's motion.

I. **The Amended Complaint's Factual Allegations**

Plaintiff HASelect operates as a financing business, loaning money to entities who purchase medical accounts receivable typically relating to personal injury claims that get paid out when the claims settle. [48] ¶¶ 3, 4. Plaintiff GAM apparently

managed HASelect's fund, and GAM employed Simon Clark to manage HASelect's fund from December 2016 to February 20, 2020. *Id.* ¶ 8. Clark's charge was to ensure that HASelect financed the purchase of only those accounts receivables having a value, on average, of 200% their acquisition cost. *Id.* ¶ 31. As part of his employment with GAM, Clark signed an Operating Agreement, pursuant to which he agreed not to "disclose to any third party or use for his or her gain" and to "treat as confidential" all "non-public and confidential information regarding the Company, the Managers, Members, and each of their respective Affiliates" during his employment and for three years thereafter. *Id.* ¶ 56.

Beginning March 5, 2019 and continuing through February 20, 2020, HASelect made a series of loans to Infinity Capital Management ("Infinity"),[1] which the parties documented in various written loan agreements and promissory notes. *Id.* ¶ 22. During his employment, Clark managed and maintained HASelect's relationship with Infinity, including supervising Infinity's use of loan proceeds advanced by HASelect and monitoring Infinity's business operations and financial status. *Id.* ¶ 23.

On December 18, 2019, HASelect and Infinity executed a Second Amended & Restated Loan and Security Agreement and Promissory Note, which the parties refer to as the MLA, for Master Loan Agreement. *Id.* ¶ 29. Clark negotiated the MLA agreement, which, by its terms, required Infinity to "use all loan proceeds advanced

---

[1] The allegations make clear that Infinity received loans from Plaintiffs and was not an investor, an important distinction for purposes of Plaintiffs' claims.

2

to it by HASelect to purchase accounts receivable from medical providers." *Id.* ¶¶ 30, 32.

On September 14, 2021, Infinity declared bankruptcy. *Id.* ¶ 33. Through discovery in that case, Plaintiffs learned that Infinity had actually routinely misrepresented both the cost and value of accounts receivable, with the fraudulent intent to induce HASelect to advance excess loan proceeds to Infinity. *Id.* ¶ 34. Plaintiffs allege, on information and belief, that Clark was aware that Infinity routinely misrepresented both the actual purchase price and the actual value of receivables presented to HASelect for financing but failed to warn Plaintiffs or otherwise take any actions to ensure that Infinity complied with its contractual obligations. *Id.* ¶ 39. In fact, when questioned during the bankruptcy proceedings, Infinity's principal admitted that Infinity had a practice of inflating the cost and value of accounts receivable and had personally discussed such practice with Clark. *Id.* ¶ 40. Plaintiffs thus allege, on information and belief, that Clark knew or, through the exercise of reasonable care, should have known, of Infinity's wrongful diversions of funds and either permitted such conduct or failed to stop it; they also allege that Clark aided, abetted, and colluded with Infinity to cause the diversions of HASelect's loan funds. *Id.* ¶¶ 45–46.

Clark left GAM in February 2020, nineteen months before Infinity declared bankruptcy and long before Plaintiffs learned anything about Infinity's deception. Plaintiffs allege that, on the eve of his departure, he sent emails from his work account to what appears to be his personal account. *Id.* ¶¶ 57, 58. Among the

3

documents Clark forwarded to himself were several spreadsheets that pertained to Plaintiffs' funds' assets under management ("AUM"); the spreadsheets listed investors, along with the amounts each investor had invested with Plaintiffs. *Id.* ¶¶ 60–61.

Approximately six months before Clark left GAM, in August 2019, former GAM employee Chadwick Meyer formed Tecumseh Alternatives, LLC ("Tecumseh") to compete directly with Plaintiffs. *Id.* ¶ 52. Clark joined Tecumseh and became an owner of that entity (Plaintiffs do not say when). *Id.* ¶ 53. Beginning in late February or early March of 2020, Tecumseh began competing with HASelect by aggressively soliciting Infinity's business. *Id.* ¶ 54. In June 2020, Infinity entered into a funding relationship with Tecumseh that replaced the HASelect loan as Infinity's primary source of financing. *Id.* ¶ 65.

Plaintiffs allege, on information and belief, that Clark used Plaintiffs' AUM spreadsheets to benefit Tecumseh and himself indirectly, as an owner of Tecumseh. *Id.* ¶ 62. And, in fact, during Infinity's bankruptcy proceeding, Plaintiffs learned that investors whose information appeared in Plaintiffs' AUM spreadsheets later became Tecumseh investors (Plaintiffs do not allege that investors left Plaintiffs or stopped investing in Plaintiffs' funds). *Id.* ¶ 63.

Plaintiffs sued Clark on August 12, 2022, alleging breach of fiduciary duties and fraud, and, on Clark's motion, the Court dismissed the claims without prejudice. Plaintiffs amended their complaint on October 23, 2023, alleging the same claims, breach of fiduciary duties (count I) and fraud (count II), along with claims for breach

4

of the Operating Agreement (count III) and misappropriation of trade secrets, based upon the documents Clark emailed himself, including the AUM spreadsheets (count IV). *Id.* ¶¶ 67–94. Clark again moves to dismiss all of the asserted claims under Federal Rule of Civil Procedure 12(b)(6), *see* [49].

## II. Applicable Legal Standards

To survive a Rule 12(b)(6) motion, a complaint must not only provide Defendants with fair notice of a claim's basis but must also be "facially" plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the complaint need not include detailed factual allegations, plaintiff's obligation to provide the grounds for his entitlement to relief requires more than mere labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together"; in ruling on the motion, the court asks whether these things could have happened, not whether they did happen. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

On a motion under Rule 12(b)(6), this Court accepts as true all well-pled facts in the complaint and draws all reasonable inferences from those facts in Plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The Court "need

5

not accept as true statements of law or unsupported conclusory factual allegations." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

### III. Discussion and Analysis

Clark moves to dismiss Plaintiffs' amended claims, as well as the newly added claims. The Court considers the sufficiency of the claims below.

#### A. Plaintiffs' Breach of Fiduciary Duties Claim (Count I)

To recover for a breach of fiduciary duty under Illinois law, Plaintiff must establish the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010). Employees owe a fiduciary duty to their employer when acting in an official capacity on behalf of the employer. *Lawlor v. N. Am. Corp. of Illinois*, 983 N.E.2d 414, 433 (Ill. 2012). This fiduciary duty consists of three separate duties: due care, loyalty, and good faith. *See F.D.I.C. ex rel. Wheatland Bank v. Spangler*, 836 F. Supp. 2d 778, 791 (N.D. Ill. 2011).

Plaintiffs again allege that Clark breached both his fiduciary duty of due care and his fiduciary duty of loyalty, and Clark again moves to dismiss as to both, arguing that neither is supported in the allegations.

When it dismissed Plaintiffs' initial breach of fiduciary duties claims, this Court noted that the complaint alleged that Plaintiffs discovered Infinity's misconduct at least nineteen months after Clark left GAM, during discovery in Infinity's bankruptcy proceedings, and held that, absent facts showing that Clark

6

knew or should have known of the fraud during his employment, or that Clark actually competed with GAM during his employment, the complaint failed to state a claim for breach of any fiduciary duty prior to February 20, 2020, when Clark left GAM. [47] at 8. That remains true with today's complaint. Although the amended complaint adds allegations concerning Infinity's admissions, none of those admissions plausibly suggest knowledge by Clark during the relevant employment period.

Plaintiffs allege in their amended claim, on information and belief, that Clark "was aware that Infinity had routinely misrepresented both the actual purchase price and the actual value of receivables presented to HASelect for financing, including the HealthPlus receivables, but did not warn Plaintiffs or otherwise take any actions to ensure that Infinity followed the requirements of the MLA." [48] ¶ 39. The allegation remain conclusory, however, and Plaintiffs allege no facts to support it. Plaintiffs allege that, at some point after September 14, 2021, Infinity's principal, Oliver Hemmers, "admitted that Infinity had a practice of inflating the cost and value of accounts receivable that it presented to HASelect as part of loan draw requests and claimed that he had personally discussed such practice with Defendant Clark." *Id.* ¶ 40.[2] But they do not say *when* Infinity implemented this policy and do not say *when*

---

[2] Clark's motion attaches an excerpt from Hemmers' deposition, [50-3], which claims that any inflation constituted an accounting issue, meant to capture fees and commissions paid to Plaintiffs, not to defraud Plaintiffs about the value of the accounts receivables; it also suggests that the inflation stemmed from instructions from Debbie Griffin, the wife of GAM's Manager, not Clark. Because Plaintiffs reference the deposition in their amended complaint, the Court may properly consider the exhibit. *See, e.g., Love v. Simmons, et al.*, No. 23-CV-2392, 2024 WL 809107, at *4 (N.D. Ill. Feb. 27, 2024) ("When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider 'the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.' When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a

Hemmers discussed the policy with Clark. The Court thus possesses no factual basis in the allegations to infer that Clark breached any duty to HASelect by not sharing that information. The absence of such allegations remains particularly telling because the Court has already dismissed this claim based upon the failure to demonstrate knowledge or misconduct by Clark during his term of employment. If Plaintiffs could, consistent with their obligations under Rule 11, allege facts showing that Hemmers told Clark about Infinity's scam while Clark was employed by Plaintiffs, or that Clark otherwise knew about Infinity's scam during his employment, they would presumably have done so given the Court's prior ruling.

When the Court dismissed Plaintiffs' duty of care claim last time, it relied in part upon *F.D.I.C. ex rel. Wheatland Bank v. Spangler,* 836 F.Supp. 2d 778, 788 (N.D. Ill. 2011). In that case, the complaint's allegations detailed the specific loans that each defendant personally approved, the reasons why those loans were imprudent at the time of approval, and the loss suffered by the bank as a result of the decision to make the loan. *Id.* The complaint in *Wheatland* alleged a list of specific transactions (more than just a single example), along with allegations explaining why the loans should not have been granted *at the time of approval* because of specific violations of company policy known at that time. As before, the present complaint merely concludes that, because Infinity lied, Clark violated his duty of due care; it offers no facts from which to infer that Clark knew something was amiss while he was monitoring the MLA.

---

motion to dismiss.")(quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)).

With regard to the duty of loyalty, the Court previously dismissed Plaintiffs' claim because Plaintiffs failed to say what information Clark usurped or when he usurped it; similarly, to the extent Plaintiffs' claim was predicated upon an allegation that Clark usurped information about Plaintiffs relationship with Infinity, they failed to allege that the relationship was confidential. In the amended complaint, Plaintiffs include additional factual allegations about certain spreadsheets Clark allegedly misappropriated, which contained information concerning Plaintiffs' Assets Under Management. *See* [48] ¶¶ 13, 60–61, 63. But, even though they incorporate all allegations by reference into their fiduciary duty claim, they do not specifically mention the AUM spreadsheets in the claim, instead again grounding the claim in Clark's usurping information about "HASelect's relationship with Infinity" and his failure to stop Infinity from operating in violation of the MLA, [48] ¶ 70. And, as before, Plaintiffs still fail to allege that the relationship with Infinity was proprietary or confidential, and the claim does not otherwise allege facts to allow the Court to reasonably infer damages as a result of any such breach. For these reasons, the claim remains deficient, and the Court again dismisses it.

### B.  Plaintiffs' Fraud Claim (Count II)

Plaintiffs' amended fraud claim similarly fails to cure the deficiencies discussed in the Court's prior decision. In Illinois, to state a claim of fraud involving a misrepresentation, Plaintiffs must allege: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the

9

statement; and (5) plaintiff's damages resulting from reliance on the statement. *Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010). Such fraud claims (and, as above, claims sounding in fraud) remain subject to the heightened pleading standard prescribed in Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (quoting *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011)).

The Court previously dismissed this claim because Plaintiffs failed to allege any false statements at all, let alone with particularity. The amended complaint attempts to save the claim by alleging that Clark omitted or concealed from Plaintiffs material facts. [48] ¶ 74. But the complaint still fails to allege that Clark knew anything about Infinity's deception while he was employed by GAM. Plaintiff alleges that Infinity's principal admitted that Infinity had a practice of inflating the cost and value of accounts and personally discussed such practices with Clark, [48] ¶ 40, but they do not say when such discussions took place and thus fail to support a reasonable inference that Clark knew about Infinity's practice before February 2020. Indeed, to the extent Infinity's principal disclosed any deception, he did not do so until the bankruptcy proceeding, at least nineteen months after Clark left GAM. As before,

10

such allegations fall short of meeting Rule 9(b)'s standard. The Court thus dismisses Plaintiffs' fraud claim.

## C. Plaintiffs' New Claims (Counts III and IV)

In Count III, Plaintiffs allege that Clark breached the Operating Agreement he signed with GAM by forwarding confidential information to his private email account and by disclosing and using such confidential information to benefit Tecumseh and himself, as a Tecumseh owner. *See* [48] ¶¶ 79–82. Additionally, in Count IV, Plaintiffs allege that many of the items Clark emailed himself "constitute trade secrets because each of those items of information derives value from not being generally known." [48] ¶ 85. For example, Plaintiffs allege, "the AUM spreadsheets showing the identities and amounts invested by Plaintiffs' investors would be valuable to someone like Tecumseh intending to compete with Plaintiffs in the same line of business because it would disclose to Tecumseh the investment patterns of the Plaintiffs' investors." *Id.* ¶ 86. Plaintiffs also allege that Clark misappropriated the trade secret information by taking it in violation of the Operating Agreement. *Id.* ¶ 88.

Clark argues that, because the misappropriation and breach claims both stem from the alleged taking of the same information, the breach claim is preempted. State law causes of action that are "based upon the misappropriation of confidential business information are preempted by [the Illinois Trade Secrets Act] even when the information does not rise to the level of a trade secret." *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 905 (N.D. Ill. 2019). The Seventh Circuit has recognized that the ITSA "preempts claims that are essentially claims of trade secret misappropriation, even when the alleged trade secret does not fall within the Act's

12

definition." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014). But the preemption provision itself explains that it "does not affect . . . contractual remedies, whether or not based upon misappropriation of a trade secret . . . ." 765 Ill. Comp. Stat. 1065/8. The Court thus rejects Clark's preemption argument.

To state a claim for breach of contract in Illinois, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) the plaintiff's performance of the contract; (3) the defendant's breach of the contract; and (4) resulting injury. *E.g., Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 819–20 (N.D. Ill. 2014) (citing *Sherman v. Ryan*, 911 N.E.2d 378, 397 (Ill. App. Ct. 2009)).[3]

To state a claim for misappropriation of a trade secret under the Illinois Trade Secrets Act (ITSA), a plaintiff must allege that: (1) a trade secret existed (that is, the information was not generally known in the industry); (2) the trade secret was misappropriated (that is, stolen, rather than developed independently or obtained from a third source); and (3) the owner of the trade secret was damaged by the misappropriation. *Covenant Aviation Sec., LLC,* 15 F. Supp. 3d at 817; *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265–66 (7th Cir. 1992)). *See also Parus Holdings, Inc. v. Banner & Witcoff, Ltd.,* 585 F. Supp. 2d 995, 1005 (N.D. Ill. 2008) (the elements of trade secret misappropriation under ITSA are: "(1) a trade secret existed; (2) the secret was misappropriated through improper acquisition, disclosure, or use; and (3) the owner of the trade secret was damaged by

---

[3] HASelect is not a signatory or party to the Operating Agreement, see [48-1] and the claim thus inures to GAM only, not HASelect.

the misappropriation.") (citing *Liebert Corp. v. Mazur*, 827 N.E.2d 909, 924–25 (Ill. App. Ct. 2005)).

Both claims thus require Plaintiffs to allege resulting damages. And, to the extent their claims might satisfy the other elements, they fail on damages. For their breach of contract claim, Plaintiffs allege that Clark forwarded Plaintiffs' confidential information to his private email, in violation of the Operating Agreement, and used that information to benefit Tecumseh, causing "significant damages in an amount to be shown at trial." [48] ¶ 82. But they allege no facts to plausibly suggest how or why Clark's use of such information (whether it was AUM information or information relating to Plaintiffs' relationship with Infinity) damaged them.

For their misappropriation claim, Plaintiffs allege that Clark forwarded himself information showing "the identities and amounts invested by Plaintiffs' investors," which "would be valuable to someone like Tecumseh intending to compete with Plaintiffs in the same line of business because it would disclose to Tecumseh the investment patterns of the Plaintiffs' investors." [48] ¶ 86. But they allege no facts concerning whether or how Clark or Tecumseh, in fact, used the AUM information to GAM's detriment. GAM simply alleges that it *was* damaged, it does not allege facts to support the conclusory allegation. GAM does not allege that it lost any investors to Tecumseh; nor does GAM allege that Clark's misappropriation of the investor spreadsheets otherwise damaged GAM. As noted above, Plaintiffs allege that Infinity left HASelect for Tecumseh, but Infinity was not an investor, and Plaintiffs do not allege that the AUM spreadsheets said anything about Infinity, or any other alleged

14

causation theory of damages. Moreover, in light of Plaintiffs' allegations concerning Infinity's deception and misconduct, it remains implausible, without more, for Plaintiffs to allege damages based upon the loss of that loan recipient, whose business allegedly cost Plaintiffs money.

For these reasons, Plaintiffs' claims based upon the misappropriation of confidential information and trade secrets fail. Because this is the first time GAM has attempted to allege these claims, however, the Court will grant GAM leave to amend, to the extent GAM can, consistent with its obligations under Rule 11, allege such sufficient facts.

### IV. Conclusion

For the reasons explained above, the Court grants Clark's motion to dismiss the amended complaint [49].

The Court declines to allow further amendment of the fiduciary duty and fraud claims; Plaintiffs have had ample opportunity to state these claims, and the record presents no basis to find that further amendment might be productive. *See, e.g., Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (dismissal with prejudice is proper when "it is clear that the defect cannot be corrected so that amendment is futile"); *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (leave to amend is futile if a new claim would be unable to survive a Rule 12(b)(6) motion to dismiss); *Kozlov v. City of Chicago*, No. 21 C 6904, 2022 WL 602221, at *8 (N.D. Ill. Feb. 28, 2022) ("Although

courts typically grant leave to amend liberally, the Court may divert from this general rule where amendment would be futile."). These claims are dismissed with prejudice.

The Court dismisses Plaintiffs' breach and misappropriation claims without prejudice, however, because this is the first time Plaintiffs have asserted these claims, and because the Court cannot say that Plaintiffs stand no chance of being able to cure the deficiencies in their allegations. To the extent Plaintiffs can, consistent with their obligations under Rule 11, amend their allegations to state breach and misappropriation claims that support the exercise of federal subject matter jurisdiction, they may file an amended complaint on or before April 19, 2024.

Dated:  March 28, 2024  Entered:

_____
John Robert Blakey
United States District Judge