UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HASELECT MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL, SP and GRIFFIN ASSET MANAGEMENT, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 22-cv-4269 |
| v. | ) ) ) | Judge Blakey |
| SIMON HENRY CLARK, an Individual | ) ) ) | Magistrate Judge Fuentes |
| Defendant. | ) ) ) | |
| SIMON HENRY CLARK, | ) ) | |
| Counter-Plaintiff and Third-Party Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| GRIFFIN ASSET MANAGEMENT, LLC, | ) ) | |
| Counter-Defendant, | ) ) | |
| and | ) ) | |
| MICHAEL GRIFFIN, DEBORAH GRIFFIN | ) ) ) | |
| Third-Party Defendants. | ) | |

**SIMON HENRY CLARK'S
AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

NOW COMES Counter-Plaintiff/Third-Party Plaintiff, SIMON HENRY CLARK ("Clark"), by and through his attorneys, SWANSON, MARTIN & BELL, LLP, and for his Amended Counterclaim and Third-Party Complaint against GRIFFIN ASSET MANAGEMENT,

1

LLC ("GAM"), MICHAEL GRIFFIN ("Michael Griffin"), and DEBORAH GRIFFIN ("Debbie Griffin"), and states as follows:

## INTRODUCTION

1. For almost a decade, Michael Griffin misled and lied. Michael Griffin first misled his business partners as they helped him build the eponymously named Griffin Asset Management. Then, after his business partners, including Simon Clark, left GAM, he began lying to his investors. The house of cards fell, and now all of the funds set up by GAM are shuttered, with rumors of SEC investigations swirling around them.

2. In his efforts to avoid the inevitable, Michael Griffin caused GAM to breach its contract with Clark, then when he left, Michael Griffin and GAM, together with Debbie Griffin defamed Clark in an effort to ruin his reputation. As a result, Clark has incurred considerable reputational and monetary damages.

## THE PARTIES

3. Simon Clark has spent the last forty years developing a well-earned reputation as an honest and reliable international wealth manager. Clark has managed wealth in the United States, Europe, Asia, and South America, and held leadership positions with S.G. Warburg, Deutsche Bank, and Bank of America. Starting in the 1980s, Clark assisted with the transition of English Merchant bank into an industry leading investment firm known as Mercury Securities. That same decade, he assisted S.G. Warburg in its merger with Deutsche Bank to create a global financial institution. In the 1990s, Clark worked with the NationsBank acquisition team, which led to work involving the purchase of Montgomery Securities in 1997 and Bank of America in 1998. With the Bank of America acquisition, he moved to the west coast where he built out wealth management and private banking capabilities for the burgeoning IBank.

4. From 2002 to 2007, Clark ran Private Bank and Wealth Management Group for First Republic Bank prior to its acquisition by Merrill Lynch. In 2007, Lloyds Bank recruited him to oversee the merger of that company's Private Bank with the Bank of Scotland, thereby creating a $27 billion investment, trust, and credit wealth management group. Clark is a resident of the state of North Carolina.

5. GAM is an Illinois Limited Liability Company with its principal place of business in La Grange, Illinois. GAM manages numerous hedge funds which are subsidiaries of GAM and for which GAM receives a performance fee. Of the ten known funds managed by GAM, all ten are closed or currently in bankruptcy.

6. Michael Griffin, upon information and belief, is an individual and a citizen of the state of Illinois. Griffin is the sole manager of GAM.

7. Debbie Griffin, upon information and belief, is an individual and a resident of the state of Illinois.

## JURISDICTION

8. This Court has ancillary jurisdiction herein pursuant to 28 U.S.C. § 1367.

## FACTS RELEVANT TO ALL COUNTS

**Clark Joins GAM**

9. On December 16, 2016, Chadwick Meyer, as President of GCM, offered Clark a position to join the senior leadership team at HedgeACT Select, LLC ("HedgeACT"). (Exhibit 1).

10. As compensation for accepting the December 16, 2016 offer, Clark was to be compensated with equity and cash compensation. This compensation was associated with the performance of HedgeACT and HASelect-FTM Medical Receivables Litigation Finance Fund International, SP ("HASelect"). (Exhibit 1).

11. Clark's role included the development of an international fund, which became HASelect.

12. Clark's responsibilities included "utiliz[ing his] talents, experience, and network to pursue all aspects of increasing assets: direct selling, hiring and managing sales associates, recruiting fund managers, and developing strategic partnerships . . . .". (Exhibit 1).

13. Clark accepted this offer and began working with HASelect as an independent contractor in 2017.

14. Clark performed all of his responsibilities under the terms of the independent contractor agreement.

**GAM Controlled HASelect At All Times**

15. GAM received management fees from its investment funds, which included investments managed by HASelect, while a separate entity, Griffin Capital Management, LLC ("GCM") collected performance fees.

16. GCM was the managing member of HedgeACT.

17. Griffin was the CEO of GAM, GCM, HASelect, HedgeACT and other similarly situated subsidiaries.

**Clark Becomes a Member of GAM**

18. Clark performed under the terms of the 2016 Agreement, but only after considerable delay did Michael Griffin and GAM partially fulfill its obligations to Clark by providing some of the promised equity interest in GAM and GCM to Clark in 2019. (Exhibit 2).

19. Under the terms of the Operating Agreement executed by Clark and Michael Griffin, Clark obtained Class B and Class C Interests in GAM and GCM, and continues to retain Economic Interests in the same. (Exhibit 2).

20. Pursuant to the Operating Agreement, GAM is a manager-managed LLC and Michael Griffin is the sole Manager. (Exhibit 2, VII.1).

21. As Manager of GAM, Michael Griffin was to "refrain[] from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law which results or shall have resulted in material loss or injury to the Property or operations of the Company." (Exhibit 2, VIII.1).

**Clark Develops Investors for HASelect**

22. Chadwick Meyer a member of GAM and of its senior leadership, had introduced Clark to Will Martin ("Martin"), who operated Altos Investments and subleased space from another company, Three Bell Capital ("Three Bell").

23. When Clark began working for HedgeACT, he was in charge of business development for HASelect, and took it upon himself to build a relationship with Three Bell and got to know Martin.

24. In or around March 2017, Clark met with Martin, who stated that he was able to work with HASelect, but that John Porter ("Porter") of Three Bell had another relationship at that time.

25. Clark continued to communicate more frequently with Porter and Eric Patterson ("Patterson") of Three Bell, and ultimately befriended them.

26. Clark cultivated a personal and professional relationship with Porter and Patterson prior to Three Bell ever becoming a client of GAM.

27. Over the time Clark spent building the relationship with Three Bell, Three Bell became interested in setting up a medical fund with HASelect.

28. Because of the trust, relationship, and friendship Clark developed with Martin and

Porter, Clark brought Three Bell on as a client and build an asset base for GAM.

29. Three Bell's fund structure with HASelect included a fund and a fund of funds. The fund of funds charged a platform fee and a management fee, causing Three Bell to be charged at both the fund level and the fund of fund level.

**Michael Griffin's Reckless Mismanagement Causes Clark's Departure**

30. Because of its relationship with Clark, Three Bell became interested in a relationship with HASelect and ultimately provided a significant source of funds allowing HASelect and the other entities operated by GAM and GCM to make investments.

31. Michael Griffin began to undermine the relationship between GAM and Three Bell Capital, and declared the Three Bell account an in-house account.

32. Michael Griffin's decision breached the contract between GAM and Griffin, and deprived Clark of additional equity in GAM that he was entitled to from the development of his relationship with Three Bell.

33. Griffin then took additional steps to undermine Clark's relationship with Three Bell, for example on or about January 28, 2020, Three Bell approached Griffin, as CEO of GAM, to discuss putting the associated fees in line with the market rates.

34. Three Bell was the primary source of assets for HedgeAct and yet Griffin unilaterally, and without any consultation with or input from Clark, insisted on charging Three Bell fees in excess of market standards.

35. In fact, without notifying Clark, who had brought on Three Bell and was responsible for the Three Bell relationship, Michael Griffin, as CEO of GAM, had unilaterally increased the performance fees several times, further straining the relationship with Three Bell.

36. Michael Griffin also threatened Three Bell that he would take all of their assets if

he desired.

37. This grossly negligent management of the relationship led to the deterioration of the relationship with Three Bell, a major client of GAM.

**Clark Leaves**

38. Michael Griffin's intentional misrepresentations to the clients and the deterioration of these business relationships due to Michael Griffin's actions caused Clark to be damaged financially and by reputation.

39. Because of Michael Griffin's intentional damage to these business relationships, Clark lost his earning capacity as a member of GAM and President of HASelect.

40. As such, Clark was left with no other option but to resign from his position and did so on February 20, 2020.

41. After Clark's departure, Michael Griffin and Debbie Griffin began telling people that they had requested his resignation because Clark refused to adhere to GAM's corporate policies, including its expense policies. Debbie Griffin also defamed Clark by stating that he had failed to perform his obligations at GAM.

## COUNT I
## BREACH OF CONTRACT
## (AGAINST GRIFFIN ASSET MANAGEMENT)

42. Clark repeats and realleges Paragraphs 1-41 as Paragraph 42 of Count I.

43. GAM and Clark entered into a binding agreement under which Clark was entitled to additional compensation based on performance.

44. The agreement between GAM and Clark included a mutual understanding that Clark would receive additional equity in GAM for bringing in new clients.

45. Clark developed a relationship with Three Bell that led to additional assets for

GAM, therefore Clark performed under the agreement.

46. GAM breached the agreement by denying that Clark was responsible for the additional assets.

47. GAM further breached the agreement by violating the contractual duty of good faith and fair dealing by failing to take reasonable measures to maintain the relationship with Three Bell.

48. By denying Clark the additional compensation and then mishandling the relationship and assets of Three Bell, GAM purposely and intentionally interfered damaged Clark's earnings capacity in breach of their agreement.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT
### (AGAINST MICHAEL GRIFFIN)

49. Clark repeats and realleges Paragraphs 1-48 as Paragraph 49 of Count II.

50. Upon information and belief, Three Bell was the largest contributor of assets to HASelect.

51. Michael Griffin was aware of Clark's relationship with Three Bell, Clark's responsibility for bringing the Three Bell relationship to GAM, and GAM's agreement with Clark for additional compensation.

52. Despite this knowledge, Michael Griffin purposely and intentionally interfered with Clark's contract with GAM by attempting to destroy Clark's reputation and business relationship with Three Bell.

53. Not only did Michael Griffin interfere with this relationship as set out above, upon information and belief, GAM and Griffin classified Three Bell as a house account so that Clark would not be owed an additional 2% fee that he was entitled to for bringing Three Bell on as a

client.

54. The misconduct of GAM and Michael Griffin was fraudulent and intentional in nature, or at least with such gross negligence as to indicate a wanton disregard for the rights of Clark and his contract with GAM.

55. As a result of Michael Griffin's actions, GAM did not award Clark the agreed to additional compensation.

56. As a result of Michael Griffin's actions, Clark has suffered economic damages through the loss of compensation from GAM, as well as damage to his personal professional reputation.

## COUNT III
## BUSINESS DEFAMATION
### (AGAINST DEFENDANT GRIFFIN ASSET MANAGEMENT)

57. Clark repeats and realleges Paragraphs 1-56 as Paragraph 57 of Count III.

58. GAM and Griffin have knowingly made several negative, misleading, and false misrepresentations regarding Clark's character and circumstances surrounding his departure from HedgeACT to numerous third parties.

59. GAM and Griffin knew or should have known that their statements would injure Clark's reputation, business, and standing within the industry.

60. The misconduct of GAM and Griffin was fraudulent and intentional in nature, or at least with such gross negligence as to indicate a wanton disregard for the rights of Clark.

61. GAM and Griffin's misrepresentations have injured Clark and caused him damages in an amount to be proven at trial.

WHEREFORE, Counter-Plaintiff/Third-Party Plaintiff, SIMON HENRY CLARK, respectfully requests this Court find in his favor and against Counter-Defendant, GRIFFIN ASSET

MANAGEMENT, LLC, and Third-Party Defendant, MICHAEL GRIFFIN, and enter an order providing the following:

    a.    Entering a judgment against GRIFFIN ASSET MANAGEMENT, LLC for punitive and compensatory damages arising from its defamation of SIMON HENRY CLARK in an amount to be established at trial;

    b.    Awarding punitive damages against GRIFFIN ASSET MANAGEMENT, LLC and MICHAEL GRIFFIN, individually, to deter them and others from committing similar acts;

    c.    Awarding SIMON HENRY CLARK the costs of this action, including but not limited to attorneys' fees, expert fees, and any other reasonable expenses incurred in the litigation as a result of the wrongful conduct of GRIFFIN ASSET MANAGEMENT, LLC and MICHAEL GRIFFIN, individually; and

    d.    Awarding all other relief this Court deems just and proper.

## JURY DEMAND

Counter-Plaintiff/Third-Party Plaintiff, SIMON HENRY CLARK, demands trial by jury.

Respectfully submitted,

By: _____
Counsel for Counter-Plaintiff/
Third-Party Plaintiff,
Simon Henry Clark

William D. Patterson
Troy M. Sphar
SWANSON, MARTIN & BELL, LLP
330 North Wabash Ave, Suite 3300
Chicago, Illinois 60611
wpatterson@smbtrials.com
tsphar@smbtrials.com
T: (312) 321-9100/F: (312) 321-0990

## VERIFICATION BY CERTIFICATION

Pursuant to 28 USC § 1746, the undersigned certifies under penalty of perjury that the foregoing is true and correct, except as to matters therein stated to be on information and belief, and to such matters the undersigned certifies that he verily believes the same to be true.

April 19, 2024

Simon Clark

4/19/24

6.45 am EDT.

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing Counterclaim and Third-Party Complaint was served upon all counsel of record via the Court ECF system this 19th day of April 2024.

[✓]  Under penalties as provided by law, the undersigned certifies that the statements set forth in this Certificate of Service are true and correct.

                                             */s/ William D. Patterson*